D. MICHAEL SCHOENFELD - California State Bar No. 102332
MURPHY AUSTIN ADAMS SCHOENFELD LLP
1000 G St., Third Floor
P. O. Box 1319
Sacramento, California 95812-1319
Telephone: (916) 446-2300
Facsimile: (916) 503-4000

Attorneys for Plaintiff
REMEDIATION CONSTRUCTORS, INC.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| REMEDIATION CONSTRUCTORS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | DOCKET NO. 03-2478C<br><br>**DECLARATION OF D. MICHAEL SCHOENFELD IN SUPPORT OF MOTION TO COMPEL**<br><br>(Judge Susan G. Braden)<br><br>Hearing Date: TBD |

I, D. Michael Schoenfeld, declare as follows:

1. I am an attorney at law licensed to practice in the Court of Federal Claims, and am a partner with the law firm of Murphy Austin Adams Schoenfeld LLP, attorneys of record for plaintiff REMEDIATION CONSTRUCTORS, INC. ("Remcon"). I have personal knowledge of the following and if called to testify could and would competently testify thereto. I make this declaration in support of Remcon's Motion to Compel Production of Documents.

2. Between October 21, 2003 and March 2, 2004, I, on behalf of Remcon, repeatedly sought to obtain the defendant United States of America's ("USA") production of key project documents on an informal basis. These requests were made via telephone calls and letters, and I repeatedly explained to government counsel, Richard Schroeder, that our client had incurred certain unreimbursed construction costs in calendar years 2001 and 2002, that it had lost its bonding capacity to pursue further work, and therefore had effectively been put out of business pending the disposition of this action. I further informed Mr. Schroeder that I sought

his cooperation to expedite this action and, barring our ability to accommodate each counsel's needs, would seek assistance from the Court.

3. I am informed and believe and personally observed that in response to the government's independent request, that Remcon provided access to its project records to the USA's auditors in February 2004 without the need for formal discovery.

4. On March 2, 2004, I sent a letter to Mr. Schroeder which requested that the USA provide Remcon access to the government project files in Denver, Colorado. Enclosed with the letter was a copy of Remcon's Request for Production of Documents that it intended to serve on USA once formal discovery was permitted. A true and correct copy of my March 2, 2004 letter to Mr. Schroeder and its enclosure is attached as Exhibit A to this declaration.

5. On or about March 10, 2004, Mr. Schroeder informed me that the USA would produce the requested documents without the need for Remcon to travel to Denver. In response to his representation, I sent him a letter on March 11, 2004 requesting that USA produce the documents by the end of the month and that he advise us if he intended to fulfill my request. A true and correct copy of my March 11, 2004 letter to Mr. Schroeder is attached as Exhibit B to this declaration.

6. During the March 25, 2004 mandated early meeting of counsel (during which Mr. Schroeder and Mr. Gerald D. O'Nan, counsel for the National Park Service ("NPS"), were on the phone for the government), the USA's attorneys informed me that the USA's document production could not take place until the end of May 2004, at the earliest, and that, during the summer months, the USA will not be able to fully litigate this matter since the NPS the underlying governmental agency, would be working on construction/active operations, and cannot make its key people available for depositions. I personally commented that such a position was inconsistent with USA's legal duties and the rules of this Court, and represented that absent a change in position, we would seek judicial intervention. USA's counsel acknowledged our position. A true and correct copy of my March 26, 2004 letter to Mr. Schroeder and Mr. O'Nan memorializing our discussion regarding the production of documents is attached as Exhibit C to this declaration.

7. On March 26, 2004, Remcon served the USA with a Request for Production of Documents requiring production of the responsive documents at my office within 30 days of service. A true and correct copy of Remcon's Request for Production of Documents is attached hereto as Exhibit D.

8. On or about April 28, 2004, USA served Remcon with Defendant's Responses to Plaintiff's First Request for Production of Documents ("Responses"). The USA did not produce any documents with its responses and asserted various privileges as a basis for withholding documents from production. The USA did **not** provide a privilege log identifying the documents that it was withholding from production on the basis of privilege. A true and correct copy of the USA's April 28, 2004 discovery Responses are attached as Exhibit E to this declaration.

9. On or about April 30, 2004, Mr. Schroeder, Kenneth I. Schumaker (my associate) and I participated in telephone conversation in which Mr. Schroeder disclosed to us that government documents responsive to Remcon's requests would not be produced as requested, but instead had been shipped to his office in Washington. We also discussed Mr. Schroeder's request for a protective order for documents containing proprietary information. Mr. Schroeder also stated that he would advise me or Mr. Schumaker of the number of documents in the project files, the cost of copying and shipping the documents, when Remcon could expect to receive the documents and when Remcon could expect to receive a privilege log.

10. On May 5, 2004, Mr. Schumaker sent Mr. Schroeder an email attaching a draft of a protective order and requested that Mr. Schroeder advise us of the number of documents in the project files, the cost of copying and shipping the documents, when Remcon could expect to receive the documents and when Remcon could expect to receive a privilege log as he had stated he would during our April 30, 2004 telephone conference. A true and correct copy of Mr. Schumaker's email on which I was a copied as a recipient is attached hereto as Exhibit F.

11. On or about May 9, 2004, Mr. Schumaker received a letter dated May 7, 2004 from Mr. Schroeder stating that the draft of the protective order was "unacceptable."

However, Mr. Schroeder's letter did not address when Remcon could expect to receive a privilege log. A true and correct copy of Mr. Schroeder's May 7, 2004 letter to Mr. Schumaker is attached hereto as Exhibit G.

12. On May 11, 2004, I sent another letter to Mr. Schroeder and Mr. O'Nan inquiring into the status of the document production, including the number of documents, the copying costs, whether the documents received by his office were responsive to Remcon's requests, and the estimated cost and time for shipping the documents to us. I also advised Mr. Schroeder and Mr. O'Nan that if we did not receive the documents by May 19, 2004, we would file a motion to compel production of documents. My letter also reminded Mr.Schroeder that "[w]e also need to receive your privilege log referenced in your document response." A true and correct of my May 11, 2003, letter is attached hereto as Exhibit H.

13. On May 19, 2004, Mr. Schumaker received a letter dated May 19, 2004 from Mr. Schroeder responding to my May 11, 2004, letter referenced in paragraph 12 above. Mr. Schroeder's letter discussed various matters related to the document production and the preparation of a protective order, but made no mention of when, if at all, Remcon could expect to receive a privilege log. A true and correct of Mr. Schroeder's May 19, 2004, letter is attached hereto as Exhibit I.

14. On May 23, 2004, Mr. Schumaker sent Mr. Schroder an email again inquiring about number of documents, the copying costs, whether the documents received by Mr. Schroeder office were responsive to Remcon's requests, and the estimated cost and time for shipping the documents to his office, as well as "whether any documents are being withheld due to privilege." Mr. Schumaker also advised Mr. Schroeder that if Remcon did not receive this information as soon as possible, Remcon would file a motion to compel. A true and correct copy of Mr. Schumaker's email of which I was a recipient is attached hereto as Exhibit J.

15. On or about May 24, 2004, our office received a letter dated May 24, 2004 from Mr. Schroeder stating that approximately 79,000 pages of documents had been copied and that there were 18 boxes of documents not protected from disclosure, and that he would forward copies of the responsive documents. Mr. Schroeder's letter also stated that a "privilege

list will be provided to your office as soon as reasonably possible." A true and correct copy of Mr. Schroeder's letter is attached hereto as Exhibit K.

16. Mr. Schumaker sent Mr. Schroeder an email that same day requesting that the USA send the documents to his office as it had offered to do. A true and correct copy of the email of which I was a recipient is attached hereto as Exhibit L.

17. As of June 18, 2004, our office had received only two boxes of documents containing approximately 8,000 pages (about 10% of the represented volume of documents) which consisted primarily of Remcon's own certified claims and contract documents - documents already in Remcon's possession. I sent Mr. Schroeder a letter on June 18, 2004, asking why we had not received the rest of the documents and requesting that he confirm by June 21, 2004 that the rest of the boxes of documents would be shipped to our office to be received no later than June 23, 2004. I advised him that if we did not receive the documents by that date, we would file a motion to compel and seek sanctions. My letter also reminded him, yet again, that we had not received a privilege log. A true and correct copy of my June 18, 2004 letter to Mr. Schroeder is attached hereto as Exhibit M.

18. Later on Friday, June 18, 2004, Mr. Schroeder, having received my letter, called me regarding the status of the document production. He stated that he had received my June 18, 2004 letter and apologized for the delay in production. He also stated that he would ensure that we receive many, if not all, of the unproduced documents by June 23, 2004. The documents arrived at my office on June 24 and 25, 2004. However, the USA did not provide a privilege log identifying which documents it had withheld from production.

19. On July 26, 2004, over a month after receiving the USA's document production and four months after receiving the USA's Response to Remcon's document demands, I sent Mr. Schroeder a letter demanding that the USA provide Remcon with a privilege log by July 30, 2004, or we would file a motion to compel. As of the date of Remcon's filing this motion, we have not received a privilege log from the USA's counsel. A true and correct copy of my July 28, 2004, letter is attached hereto as Exhibit N.

20. On August 2, 2004, our office received a letter from Mr. Schroeder dated

July 28, 2004 stating that the USA would advise us as to the status of the privilege log as soon as he had the opportunity to speak with the "agency attorney" who was preparing it. Having still not received a privilege log as of August 3, 2004, Remcon filed the instant motion. A true and correct copy of Mr. Schroeder's July 28, 2004, letter is attached hereto as Exhibit O.

21. I have in good faith conferred with the USA's counsel on numerous occasions in my attempt to secure disclosure of the privilege log at issue in this motion without court action. However, it has been four months since Remcon's production request was served on the USA. Given the Scheduling Order re: discovery and pre-trial conduct issued by the Court, the continuing delaying conduct by the government harms our client and our ability to prepare the case.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed at Sacramento, California on August 4, 2004.

/S/ D. Michael Schoenfeld

D. MICHAEL SCHOENFELD



162875/1918.001