D. MICHAEL SCHOENFELD - California State Bar No. 102332
MURPHY AUSTIN ADAMS SCHOENFELD LLP
1000 G St., Third Floor
P. O. Box 1319
Sacramento, California 95812-1319
Telephone: (916) 446-2300
Facsimile: (916) 503-4000

Attorneys for Plaintiff
REMEDIATION CONSTRUCTORS, INC.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| REMEDIATION CONSTRUCTORS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | DOCKET NO. 03-2478C<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL**<br><br>(Judge Susan G. Braden)<br><br>Hearing Date: TBD |

Plaintiff REMEDIATION CONSTRUCTORS, INC. ("Remcon") respectfully requests that this Court set this motion for hearing on an expedited basis. Defendant UNITED STATES OF AMERICA ("USA") has improperly delayed complying with its discovery obligation to provide Remcon with a privilege log that identifies all discoverable documents that it has withheld from production on the basis of privilege or protection. With this matter's November 30, 2004, fact discovery cut-off less than four months away, the USA's continuing delay in providing Remcon with a privilege log has prejudiced Remcon's ability to prosecute its action. Therefore, for the reasons set forth below, Remcon respectfully requests that this Court set this motion for hearing on or before August 17, 2004.

# I.

# INTRODUCTION

Plaintiff, REMEDIATION CONSTRUCTORS, INC.'S ("Remcon"), lost its bonding capacity when defendant, the UNITED STATES OF AMERICA ("USA"), refused to reimburse it for over $3,000,000 in construction costs Remcon incurred working on the government construction project that is the subject matter of this litigation. As such, Remcon was effectively put out of business pending the outcome of this litigation. Remcon's counsel has repeatedly explained Remcon's predicament to the USA's counsel and urged him to help expedite the adjudication of this matter. To that end, Remcon gave the USA unfettered access to its project documents in February 2004 without the need of a formal document demand and before formal discovery commenced expecting that the USA would, as a matter of fairness, respond in kind.

However, as detailed below, the USA's counsel has not only refused to cooperate with Remcon's informal discovery requests, but has failed to timely comply with the legal requirements for formal discovery by not producing documents responsive to Remcon's documents demands until two months after they were due, and its continuing failure to provide a privilege log accounting for documents withheld from production. With the fact discovery cutoff less than four months away, the USA's continuing failure to fulfill its discovery obligations in a timely manner violates of the letter and spirit of the Rules of the United States Court of Federal Claims ("Rules"). Whether because of gamesmanship or simple indifference to Remcon's plight, the USA's attorney's conduct prejudices Remcon's ability to prepare its case for trial. Therefore, for the reasons set forth below, Remcon respectfully requests that this Court order the USA to: 1) provide a comprehensive privilege log that describes all discoverable documents withheld from production within five days of the issuance of the order (which log details all of the reasonable data requested, including accounting for large gaps in the bates stamped numbers on the documents it did produce), and 2) reimburse Remcon for all its reasonable expenses, including attorney's fees, incurred in bringing this motion.

## II.

## STATEMENT OF FACTS

### A. Background Facts

On or about May 15, 2001, the National Park Service ("NPS") awarded Contract No. 1443C8000010903 (the "Contract") to Remcon for a construction project located at Sequoia and Kings Canyon National Parks, Tulare County, California and known as "Giant Forest, Sherman Tree Parking Area, SEKI 200Q" ("the Project"). The Project concerned building new trails, roadways, parking lots and rock revetments in the national park, while concurrently saving certain designated trees, rock formations and natural features. The original amount of the Contract was $7,121,636.00. Pursuant to written amendments to the Contract, the adjusted contract value was $7,917,604.28.

As set forth in its complaint, Remcon asserts that it was compelled to (a) incur additional costs in performing extra work and changes in the work beyond that required by the Contract; (b) perform its Contract work in a manner more costly; and (c) suffer delays and loss of productivity in completing its work. In addition, Remcon also contends it was forced by government action to change its means and methods of construction in such a manner that rendered its performance much more costly than Remcon reasonably anticipated.

On June 28, 2003, Remcon submitted to the Contracting Officer a certified omnibus claim for an equitable adjustment of the Contract price in the total amount of $3,091,799.60 (inclusive of outstanding contract balance owed to Remcon). In addition to the damages sought by Remcon through its certified omnibus claim for an equitable adjustment of the Contract price, the NPS is alleged to have wrongfully failed and refused to remit to Remcon its retention despite Remcon's written demands.

On July 15, 2003, Remcon received from the Contracting Officer his final decision denying a portion of Remcon's certified omnibus claim for differing site conditions (rock blasting), excavation, grading, and storm water pollution prevention. The Contracting Officer

did not address any other portions of Remcon's certified omnibus claim. On August 13, 2003, the USA terminated Remcon for default because Remcon was unable to finance further work due to the USA's nonpayment for work already performed. On October 21, 2003, Remcon filed suit against USA in this Court for breach of contract.

## B. Remcon Attempts to Obtain Documents From the USA

### 1. Remcon's Attempts To Informally Obtain Project Documents From the USA

Between October 21, 2003 and March 2, 2004, Remcon's counsel, Mr. D. Michael Schoenfeld, sought to obtain USA's production of key project documents on an informal basis based on section II.3.(c) of Appendix A of this Court's Local Rules, which encourages informal discovery and cooperation. (Declaration of D. Michael Schoenfeld (hereinafter "Schoenfeld Decl.") ¶ 4.) These requests were made via telephone calls and letters in which Remcon's counsel repeatedly explained to the USA's counsel that Remcon had not been reimbursed by the USA for certain construction costs it incurred during the calendar years 2001 and 2002 performing work on the Project, that it had lost its bonding capacity to pursue further work, and therefore had effectively been put out of business pending the disposition of this action. (Schoenfeld Decl. ¶¶ 2 and 4, Exhibit A.)

That being the case, Remcon's counsel sought the USA's counsel's cooperation in expediting this action. (Schoenfeld Decl. ¶ 2.) To that end, Remcon provided the USA's auditors with access to its Project records in February 2004, without the need for formal document demands expecting that the USA would, as a matter of fairness, reciprocate by cooperating with Remcon's informal requests to review the USA's Project documents. (Schoenfeld Decl., ¶¶ 3, 4, Exhibit A.)

On March 2, 2004, Remcon's counsel sent a letter to Mr. Schroeder, counsel for USA, that requested that the USA provide Remcon access to its Project files then located in Denver, Colorado. (Schoenfeld Decl. ¶ 4; Exhibit A. ) Enclosed with the letter was a copy of Remcon's Request for Production of Documents that it intended to serve on USA once formal discovery was permitted. (Schoenfeld Decl. ¶ 4; Exhibit A)

On or about March 10, 2004, Mr. Schroeder informed Mr. Schoenfeld that the USA would produce the requested documents without the need for Remcon to travel to Denver. (Schoenfeld Decl. ¶ 5.) In response to Mr. Schroeder's representation, Mr. Schoenfeld sent Mr. Schroeder a letter on March 11, 2004 requesting that USA produce the documents by the end of the month and that he advise Remcon if he intended to fulfill the request. (Schoenfeld Decl. ¶ 5; Exhibit B.)

During the March 25, 2004 early meeting of counsel (during which Mr. Schroeder and Mr. Gerald D. O'Nan (a solicitor for the NPS) were on the phone for the government), the USA's attorneys informed Mr. Schoenfeld that the USA's document production could not take place until the end of May 2004, at the earliest, and that during the summer months the USA would not be able to fully litigate this matter since the NPS, the underlying governmental agency, will be working on construction operations, and could not make its key people available for depositions. (Schoenfeld Decl. ¶ 6.) Mr. Schoenfeld commented that such a position was inconsistent with USA's legal duties and the rules of this Court, and represented that absent a change in position, Remcon would seek judicial intervention. (Schoenfeld Decl. ¶ 6; Exhibit C.) USA's counsel acknowledged Remcon's position. (Schoenfeld Decl. ¶ 6; Exhibit C.)

C. **Remcon Initiates Formal Discovery to Obtain Project Documents**

Unable to secure the USA's counsel's cooperation with its informal discovery requests, on March 26, 2004, the earliest date Remcon could serve formal discovery, Remcon served the USA with a Request for Production of Documents requiring production of responsive documents within 30 days of service.[1] (Schoenfeld Decl. 7; Exhibit D.) On or about April 28, 2004, the USA served Remcon with Defendant's Responses to Plaintiff's First Request for Production of Documents ("Response") (Schoenfeld Decl. ¶ 8; Exhibit E .) The USA did not produce any documents with its Response and asserted various privileges as a basis for withholding documents from production. (Schoenfeld Decl. ¶ 8; Exhibit E .) The Response also stated that

[1] As noted above, the USA's counsel knew precisely which documents Remcon were going to seek almost a month before it was served with Remcon's document demands as Remcon's counsel had provided him with a copy of the document demands on March 2, 2004.

***"[d]efendant will prepare a list of documents withheld upon the basis of privilege," but did not provide a privilege log with the Response.*** (Schoenfeld Decl. ¶ 8; Exhibit E [emphasis added] .)

On or about April 30, 2004, Mr. Schroeder informed Mr. Schoenfeld and his associate, Mr. Kenneth I. Schumaker, that the government documents responsive to Remcon's requests had been shipped to his office in Washington. (Schoenfeld Decl.¶ 9.) Counsel discussed a number of matters related to the production, including Mr. Schroeder's request for a protective order for documents that he asserted contain proprietary information. Mr. Schroeder also advised Remcon's counsel that he would let them know when Remcon could expect to receive the privilege log referenced in the USA's Response. (Schoenfeld Decl.¶ 9.)

On May 5, 2004, Mr. Schumaker sent Mr. Schroeder an email attaching a draft of a protective order and asking Mr. Schroeder advise him of the number of documents in the project files, the cost of copying and shipping the documents, *when Remcon could expect to receive the documents and, again, when Remcon could expect to receive a privilege log as Mr. Schroeder had stated he would during the April 30, 2004, telephone conference.* (Schoenfeld Decl.¶ 10; Exhibit F.)

On or about May 9, 2004, Mr. Schumaker received a letter dated May 7, 2004 from Mr. Schroeder to Mr. Schumaker stating that the draft of the protective order was "unacceptable." (Schoenfeld Decl. ¶ 11; Exhibit G.) *However, the letter was silent as to when Remcon could expect to receive a privilege log.* (Schoenfeld Decl., ¶ 11, Exhibit G.)

On May 11, 2004, Mr. Schoenfeld sent another letter to Mr. Schroeder and Mr. O'Nan asking about the status of the document production and advised them that if Remcon did not receive the documents by May 19, 2004, Remcon would file a motion to compel production of documents. (Schoenfeld Decl. ¶ 12; Exhibit H.) Mr. Schoenfeld's letter also reminded Mr.Schroeder that ***"[w]e also need to receive your privilege log referenced in your document response."*** (Schoenfeld Decl. ¶ 12; Exhibit H.)

On May 19, 2004, Mr. Schumaker received a letter dated May 19, 2004, from Mr. Schroeder responding to Mr. Schoenfeld's May 11, 2004, letter referenced above. Mr. Schroeder's letter discussed various matters related to the document production and the

preparation of a protective order, ***but was again silent as to when Remcon could expect to receive a privilege log.*** (Schoenfeld Decl. ¶ 13; Exhibit I.)

On May 23, 2004, Mr. Schumaker sent Mr. Schroder an email again inquiring about the number of documents, the copying costs, whether the Project documents retrieved by Mr. Schroeder from the NPS' Denver office were responsive to Remcon's requests, and the estimated cost and time for shipping the documents to his office, as well as "*whether any documents are being withheld due to privilege.*" (Schoenfeld Decl. ¶ 14; Exhibit J.) Mr. Schumaker also advised Mr. Schroeder that if Remcon did not receive this information as soon as possible, Remcon would file a motion to compel. (Schoenfeld Decl., ¶ 14; Exhibit J.)

On May 24, 2004, Mr. Schumaker received a letter dated May 24, 2004, from Mr. Schroeder stating that approximately 79,000 pages of documents had been copied and that there were 18 boxes of documents not protected from disclosure, and that he would forward copies of responsive documents if Remcon so requested. (Schoenfeld Decl. ¶ 15; Exhibit K.) ***Mr. Schroeder's letter also stated that a "privilege list will be provided to your office as soon as reasonably possible."*** (Schoenfeld Decl. ¶ 16; Exhibit K.) Mr. Schumaker sent Mr. Schroeder an email that same day requesting that the USA send the documents to his office as it had offered to do. (Schoenfeld Decl. ¶ 16; Exhibit L.)

However, as of June 18, 2004, Remcon's counsel office had received only 2 of the 18 boxes that were promised. (Schoenfeld Decl. ¶ 17; Exhibit M.) The two boxes contained approximately 8,000 pages (about 10% of the volume of documents promised) and consisted primarily of Remcon's own certified claims and contract documents - documents already in Remcon's possession. (Schoenfeld Decl. ¶ 17; Exhibit M.)

Mr. Schoenfeld faxed Mr. Schroeder a letter on June 18, 2004, asking why Remcon had not received the rest of the documents and requesting that he confirm that the remaining 16 boxes of documents would be received no later than June 23, 2004. (Schoenfeld Decl. ¶ 17; Exhibit M.) ***In the letter, Mr. Schoenfeld again reminded Mr. Schroeder that Remcon had not received a privilege log.*** (Schoenfeld Decl. ¶ 17; Exhibit M.) Mr. Schoenfeld advised him that if the documents were not received by that date, Remcon would file a motion to compel and seek

sanctions. (Schoenfeld Decl., ¶ 17; Exhibit M.)

After receiving Mr. Schoenfeld's letter, Mr. Schroeder called Mr. Schoenfeld by telephone and apologized for the delay and promised Mr. Schoenfeld that his office would receive many, if not all, of the unproduced documents by June 23, 2004. (Schoenfeld Decl., ¶ 18.) The 16 boxes of documents finally arrived at Mr. Schoenfeld's office on June 24 and 25, 2004, ***but still without a privilege log.*** (Schoenfeld Decl., ¶ 18.)

On July 26, 2004, over a month after receiving the USA's document production and four months after receiving its response to Remcon's document demands, Remcon's counsel demanded that the USA provide it with a privilege log by July 30, 2004, or it would file a motion to compel. (Schoenfeld Decl., ¶ 19; Exhibit N.)

On August 2, 2004, Mr. Schumaker received a letter from Mr. Schroeder dated July 28, 2004, stating that the USA would advise him as to the status of the privilege log as soon as he had the opportunity to speak with the "agency attorney" who was preparing the log. (Schoenfeld Decl., ¶ 20; Exhibit O.) Having still not received a privilege log as of August 3, 2004, or heard further from the USA's counsel a date by which the privilege log would be provided, Remcon filed the instant motion.

## III.

## ARGUMENT

### A. Pursuant to RCFC 26(b)(5), the USA Must Provide Remcon with a Privilege Log Identifying The Documents Responsive to Remcon's Documents Demands Withheld from Production on the Basis of Privilege

Appendix A ¶ 3 to the RCFC requires plaintiff's and defense counsel to meet and confer to discuss issues that must be set forth in the Joint Preliminary Status Report. "A party may not seek discovery from any source before the parties have conferred as required by Appendix A ¶ 3." (RCFC 26(d).) Once this conference occurs, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." (RCFC 26(b)(1).) Relevant evidence is broadly defined as "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Fed. Rule of Evid. 401.)

"When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . . the party shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege protection." (RCFC 26(b)(5).) Moreover, if an objection is made to "part of an item or category, the part shall be specified and inspection permitted of the remaining parts." (RCFC 34(b).)

In the present case, the USA refused to cooperate with Remcon's informal requests to gain access to Project documents and would not produce those documents pursuant to formal document demands until Remcon was on the brink of filing a motion to compel. Although Remcon finally received documents responsive to its requests in late June, ***two months*** after they were due (and ***eight months*** after Remcon began requesting access to the USA's Project documents and ***four months*** after Remcon gave the USA access to its Project documents), the USA still has not provided a privilege log despite Remcon's counsel's frequent requests.

The November 30, 2004, fact discovery cutoff is fast approaching and Remcon must be able to assess which documents withheld from production by the USA are essential to its claims and determine what further measures must be taken to procure those documents. With less than four months remaining for fact discovery, Remcon must, ***without further delay***, be provided with a privilege log that describes all discoverable documents the USA has withheld from production so Remcon can assess the applicability of the privilege or protection asserted. Further, because there are vast gaps in the ranges of bates numbered documents actually provided, Remcon anticipates that thousands of pages of documents are being withheld. (See Declaration of James J. Ison.)

As detailed above, the USA forestalled Remcon's filing a motion to compel at earlier dates by promising to produce documents and a privilege log and then failing to fulfill its promise until prodded by Remcon's counsel into producing the documents, but only after Remcon was deprived of valuable time in which to review them. By using such tactics, the USA has already deprived Remcon of valuable discovery time and Remcon can ill-afford additional

delays. Therefore, despite the USA's counsel's professing to be able to provide a privilege log by the week of August 2, 2004, Remcon, based on its experience trying to gain access to the USA's Project documents, anticipates the USA will continue to delay providing Remcon with a privilege log unless ordered to do so by the Court or will provide an inadequate log that will not enable Remcon to assess the applicability of the privilege or protection asserted as required by RCFC 26(b)(5).

To avoid further delays, Remcon respectfully requests that this Court order the USA to provide a privilege log within 5 days of the issuance of said order that identifies the following: (1) the name, title and type of document (e.g., letter, memorandum, etc.); (2) the reason for non-production and, if privilege or other protection is cited with reason for non-production, a statement of the privilege or protection asserted; (3) the author of the document; (4) the date of the document; and (5) the document's addressees.

**B. Monetary Sanctions Should Be Imposed Against the USA Because its Conduct Necessitated Remcon's Filing This Motion**

Rule 37(a)(4) states that if a motion compelling discovery is granted or the requested discovery is provided after the motion is filed, the "court shall **. . .** require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees" unless the moving party failed to make a good faith effort to obtain discovery without court action or the opposing party's failure to provide the requested discovery was substantially justified.

In the present matter, the facts compel the conclusion that the USA has refused to cooperate with Remcon's discovery efforts and on previous occasions forestalled Remcon's seeking court intervention at an earlier date by promising to produce documents and/or a privilege log and then failing to fulfill its promises (let alone in a timely manner). As the declarations submitted in support demonstrate, Remcon has already incurred considerable attorney's fees and costs in its good faith efforts to induce the USA into complying with its discovery obligations. There is no justification for the USA's conduct. Remcon respectfully

requests that this Court order the USA to pay Remcon's attorney's fees and costs incurred in filing this motion. Said fees and costs will be provided via a cost bill upon receipt of an Order requiring that the same be provided.

## CONCLUSION

For the reasons set forth above, Remcon respectfully requests that this Court order USA to provide a privilege log within 5 days of the issuance of said order that identifies the following: (1) the name, title and type of document (e.g., letter, memorandum, etc.); (2) the reason for non-production and, if privilege or other protection is cited with reason for non-production, a statement of the privilege or protection asserted; (3) the author of the document; (4) the date of the document; and (5) the document's addressees. Remcon also requests that the USA reimburse Remcon for its attorney's fees and costs incurred in bringing this motion.

DATED: August 4, 2004

MURPHY AUSTIN ADAMS SCHOENFELD LLP

/S/ D. Michael Schoenfeld

D. MICHAEL SCHOENFELD
Attorneys for Plaintiff
REMEDIATION CONSTRUCTORS, INC.

MURPHY AUSTIN ADAMS SCHOENFELD LLP
1000 G St., Third Floor
P. O. Box 1319
Sacramento, California 95812-1319
Telephone: (916) 446-2300
Facsimile: (916) 503-4000