IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC.<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | ) | DOCKET NO. 03-2478C<br>**REMEDIATION CONSTRUCTORS, INC.'S REPLY TO USA'S RESPONSE TO MOTION TO COMPEL**<br>(Judge Susan G. Braden)<br>Hearing Date: TBD |

## I.

## INTRODUCTION

In its Response to Plaintiff's Motion to Compel, Defendant the United States of America's ("USA") contends that Plaintiff REMEDIATION CONSTRUCTORS, INC. ("Remcon") "rushed to the courthouse to file its motion" without having met and conferred in good faith with the USA before doing so. This contention is belied by the fact that Remcon met and conferred with the USA ***five times over a three month period of time*** in an effort to get the USA to produce a privilege log. As set forth more fully in Remcon's moving papers, the USA consistently refused to cooperate with Remcon's discovery efforts. Indeed, but for the USA's non-responsiveness to Remcon's meet and confer efforts, broken promises, and pattern of delay despite Remcon's numerous good faith attempts to induce the USA to comply with its discovery obligations, the instant motion would not have been filed.

Therefore, for the reasons set forth below and its moving papers, Remcon respectfully requests that this Court order the USA to: (1) produce all documents identified on its privilege log that the Court deems to be improperly withheld from production within 5 days of the issuance of said order; (2) review *in camera* all documents that the USA has not described in a manner that enables Remcon to adequately assess the applicability of the privilege or protection asserted and make a determination as to whether the asserted privilege applies; and (3) reimburse Remcon for its attorney's fees and costs incurred in bringing this motion.

## II.

## STATEMENT OF FACTS[1]

On March 26, 2004, Remcon served the USA with a Request for Production of Documents which requested production of the documents within 30 days of service of the request. (Schoenfeld Decl., ¶ 7; Exhibit D.)[2] On or about April 28, 2004, the USA served Remcon with Defendant's Responses to Plaintiff's Request for Production of Documents ("Response") (Schoenfeld Decl., ¶ 8; Exhibit E .) The Response stated that ***"[d]efendant will prepare a list of documents withheld upon the basis of privilege," but did not provide a privilege log with the Response.*** (Schoenfeld Decl., ¶ 8; Exhibit E [emphasis added].)

On or about April 30, 2004, the USA's counsel, Mr. Richard Schroeder, advised Remcon's counsel that he would let them know when Remcon could expect to receive the privilege log referenced in the USA's Response. (Schoenfeld Decl., ¶ 9.) On May 5, 2004, Mr. Schumaker sent Mr. Schroeder an email asking Mr. Schroeder to advise him ***when Remcon could expect to receive a privilege log as Mr. Schroeder had stated he would during the April 30, 2004, telephone conference.*** (Schoenfeld Decl., ¶ 10; Exhibit F.) On or about May 9, 2004, Mr. Schumaker received a letter dated May 7, 2004 from Mr. Schroeder regarding a proposed protective order being discussed by the parties, ***but was silent as to when Remcon could expect to receive a privilege log.*** (Schoenfeld Decl., ¶ 11, Exhibit G.)

On May 11, 2004, Mr. Schoenfeld sent another letter to Mr. Schroeder and Mr. O'Nan reminding them that ***"[w]e also need to receive your privilege log referenced in your document***

---

[1] Remcon's motion describes in greater detail the USA's pattern of promising to accommodate Remcon's document requests and/or comply with its discovery obligations and then repeatedly failing to fulfill its promises. This Reply reiterates only those facts pertinent to Remcon's repeated attempts to obtain from the USA a privilege log and the additional issues raised therein when the log was provided after this motion was filed.

[2] Many of the documents relevant to this Reply are attached as Exhibits to the Declaration of D. Michael Schoenfeld filed with the initial motion. The USA's privilege log, which was provided to Remcon **after** the motion was filed, raised additional issues. Documents pertinent those issues are attached to the Declaration of D. Michael Schoenfeld in Support of Remcon's Reply to the USA's Response to Motion to Compel ("Schoenfeld Reply Decl.").

***response."*** (Schoenfeld Decl., ¶ 12; Exhibit H.) On May 19, 2004, Mr. Schumaker received a letter dated May 19, 2004, from Mr. Schroeder responding to Mr. Schoenfeld's May 11, 2004 letter referenced above. Mr. Schroeder's letter discussed various matters related to the document production, ***but was again silent as to when Remcon could expect to receive a privilege log.*** (Schoenfeld Decl., ¶ 13; Exhibit I.)

On May 23, 2004, Mr. Schumaker sent Mr. Schroder an email which, in part, asked ***"whether any documents are being withheld due to privilege."*** (Schoenfeld Decl., ¶ 14; Exhibit J.) On May 24, 2004, Mr. Schumaker received a letter dated May 24, 2004, from Mr. Schroeder addressing issues regarding the document production, and ***stated that a "privilege list will be provided to your office as soon as reasonably possible."*** (Schoenfeld Decl., ¶ 16; Exhibit K.)

Mr. Schoenfeld faxed Mr. Schroeder a letter on June 18, 2004, which again reminded ***Mr. Schroeder that Remcon had not received a privilege log.*** (Schoenfeld Decl., ¶ 17; Exhibit M.) On July 26, 2004, over a month after receiving the USA's document production and three months after receiving its response to Remcon's document demands, Remcon's counsel demanded that the USA provide it with a privilege log by July 30, 2004, or it would file a motion to compel. (Schoenfeld Decl., ¶ 19; Exhibit N.)

On August 2, 2004, Mr. Schumaker received a letter from Mr. Schroeder dated July 28, 2004, stating that the attorney preparing the log was out of the office that week and that he would advise Mr. Schumaker as to the status of the privilege log as soon as he had the opportunity to speak with the "agency attorney" who was preparing the log. (Schoenfeld Decl., ¶ 20; Exhibit O.) Having still not received a privilege log as of August 3, 2004, or heard further from the USA's counsel a date by which the privilege log would be provided, Remcon filed the instant motion on August 3, 2004.

On or about August 10, 2004, Remcon received the USA's privilege log. (Declaration of D. Michael Schoenfeld in Support of Remcon's Reply to the USA's Response to Motion to Compel ("Reply"). ("Schoenfeld Reply Decl."), ¶ 2; Exhibit A.) On August 13, 2004, Remcon sent Mr. Schroeder a letter contesting the validity of the legal bases asserted by the USA as grounds for withholding certain documents. (Schoenfeld Reply Decl., ¶ 3; Exhibit B.) The letter

also asserted that the USA had not described various documents identified on the log in a manner that enabled Remcon to adequately assess the applicability of the privilege or protection asserted as required by the Rule 26(b)(5). (Schoenfeld Reply Decl., ¶ 3; Exhibit B.) The letter enclosed an attachment that identified each document that Remcon contended was improperly withheld or inadequately described. (Schoenfeld Reply Decl., ¶ 3; Exhibit B.) Remcon's counsel advised Mr. Schroeder that if the documents improperly withheld were not produced or further descriptions of the inadequately described documents were not provided, Remcon would move to compel their production. (Schoenfeld Reply Decl., ¶ 3; Exhibit B.)

On August 16, 2004, the USA filed its first Motion for an Enlargement of Time to Respond Plaintiff's Motion to Compel requesting that the Court enlarge its time to respond from August 23 to September 15, 2004. Remcon did not oppose the motion hoping that by allowing the USA additional time to respond, the USA would produce the improperly withheld documents and/or augment its privilege log to describe the documents in a manner that would allow Remcon to properly assess the validity of the privileges asserted.

On September 15, 2004, the USA filed Defendant's Second Motion for an Enlargement of Time to Respond To Motion to Compel requesting that the Court enlarge its time to respond from September 15, 2004 to September 22, 2004. Remcon did not oppose the motion. On September 22, 2004, the USA filed its Third Motion for an Enlargement of Time to Respond to Motion to Compel requesting that the Court enlarge its time to respond to Remcon's motion from September 22, 2004 until September 29, 2004. Again, Remcon did not oppose the motion.

On or about September 17, 2004, Remcon received from the USA an augmented privilege log. (Schoenfeld Reply Decl., ¶ 4; Exhibit C.) On September 27, 2004, Mr. Schoenfeld sent

Mr. Schroeder a letter stating that for 69 of the 134 documents withheld from production, Remcon would not continue to seek their production. (Schoenfeld Reply Decl., ¶ 5; Exhibit D.)

For the 65 other documents, however, the USA reasserted the privileges and/or protections asserted on its initial log without responding to the arguments set forth in Remcon's August 13, 2004 "meet and confer" letter which provides the legal bases upon which it relied in

demanding their production. (Schoenfeld Reply Decl., ¶ 5; Exhibit D.) Moreover, the USA still did not describe many documents in a manner that would enable Remcon to assess the validity of various privileges asserted. (Schoenfeld Reply Decl., ¶ 5; Exhibit D.) The September 27, 2004 letter enclosed an attachment that identified each document that Remcon still contends was improperly withheld or inadequately described. (Schoenfeld Reply Decl., ¶ 5; Exhibit D.)

## III.

## ARGUMENT

### A. Remcon's Motion to Compel the USA to Provide a Privilege Log is Not Moot Because the USA's Privilege Log is Inadequate

As set forth in Remcon's August 13, 2004, meet and confer letter, the privilege log produced by the USA identified documents that Remcon contends were improperly withheld from production, and/or failed to describe the documents in a manner that enabled Remcon to assess the validity of the privileges or protections asserted as it is required to do pursuant to Rule 26(b)(5). Remcon received from the USA an augmented privilege log on September 17, 2004 that described 69 of the 134 documents listed on its privilege log in a manner that enabled Remcon to conclude these documents were privileged and properly withheld. However, as noted in Remcon's second meet and confer letter dated September 27, 2004, the USA simply ignored the legal authorities cited by Remcon (and addressed herein below) in support of its arguments that certain documents identified on the log must be produced or described in greater detail.

#### 1. Source Selection Information

The USA withheld from production source selection files, abstracts of offers, proposals for additional services and other documents claiming that they are protected from disclosure because they contain source selection information. Pursuant to the Procurement Integrity Act ("Act"), persons acting on behalf of the government with respect to a Federal agency procurement "shall not, other than as provided by law, knowingly disclose contractor bid or proposal information or source selection information **<u>before</u>** the award of a Federal procurement contract to which the information relates." (41 U.S.C. § 423(a)(b)[emphasis added].) Section 423, "properly understood, is obviously directed at situations in which a present or former government

procurement officer secretly leaks information concerning a pending solicitation to an offeror participating therein, in the hopes of securing post-government employment or other compensation from said offeror." (*Pikes Peak Family Housing, LLC v. United States*, 40 Fed. Cl. 673, 681 (1998).) The contract for the project at issue in this litigation ("Project") was awarded in 2001 therefore the source selection protection no longer applies.

The USA has provided no legal authority supporting its contention that the source selection documents for the Project are protected from disclosure despite the procurement process ending in 2001. Thus, Remcon requests that the Court order the USA to produce these relevant documents.

**2. Proprietary**

The USA withheld from production documents it claims are "proprietary" without any further explanation of why this alleged privilege or protection applies. The Rules require the producing party to describe documents withheld in a manner that enables the propounding party to adequately assess the applicability of the privilege or protection asserted. (See RCFC 26(b)(5).) Something more that the word "proprietary" is required. Remcon requests that the Court order the USA to produce these documents or review them and order their production as the Court deems appropriate.

**3. Deliberative Process**

The USA withheld from production a document entitled "Spending Plan for Construction Appropriation" (Item No. 14; Bates Numbers 021044-021073) based on its claim that this document is subject to the "deliberative process" privilege and irrelevant. The deliberative process doctrine serves to protect inter agency and intra-agency "deliberative communications or official information [and other] documents comprising part of a process by which governmental decisions and polices are formulated." (*Marriot International Resorts v. United States*, 2004 WL 1708972 (Fed. Cl.); *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985) [the principal rationale underlying the privilege is to "promote frank discussions of legal or policy matters in the decision-making process"].)

As its title reflects, the Spending Plan for Construction Appropriation appears to be the

*outcome* of the deliberative process. Therefore, the USA's spending plan as it relates to the Project cannot reasonably be deemed to be part of the deliberative process by which the National Park Service formulated policy. Therefore, the USA's assertion of this privilege is improper.

Additionally, "[t]o assert the privilege, the Government must follow a three-step process. First, the head of the agency that has control over the requested document must assert the privilege after personal consideration." (*Walsky Construction Co. v. United States*, 20 Cl. Ct. 317, 320 (1990).) This must be done in the "in the form of a declaration or affidavit." (*Walsky, supra*, at 320 fn. 3.) "Second, the head of the agency must state with particularity what information is subject to the privilege. Third, the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." (*Walsky, supra*, at 320.) These requirements have not been fulfilled.

The USA's augmented privilege log agreed to produce only that part of the document that contains "Information Related to 200Q." However, the USA ignored the issues set forth above which were raised in Remcon's August 13, 2004, letter. Because the USA has not complied with the three-step process necessary to assert this privilege, Remcon requests that the Court order the USA to produce this document in its entirety.

**4. Relevancy**

The USA continues to insist that some of its Project files are irrelevant. As a matter of law, evidence is relevant even if it is not admissible so long as it is "reasonably calculated to lead to the discovery of admissible evidence." (Rule 26(b)(1).) As such, it is well recognized that "[f]or discovery purposes 'relevancy' is a broad term." (*Liew v. Breen*, 640 F.2d 1040, 1049 (9th Cir. 1981).)

Remcon does not accept the USA's unilateral determination that these documents are not relevant. All the documents withheld by the USA on relevancy grounds were in its Project files therefore in some manner related to the Project. Their production is reasonably calculated to lead to the discovery of admissible evidence and could very likely do so. As such, the Rules require the USA to produce them. Rather than pose this objection in an attempt to obstruct Remcon's discovery efforts, the USA should simply produce documents it believes are irrelevant

and give Remcon the opportunity to make its own assessment of the documents' relevancy. Remcon requests that the Court order the USA to produce these documents unless they are otherwise protected from disclosure.

**5. Attorney-Client and Attorney Work Product**

The USA withheld documents from production based on the attorney-client privilege and/or attorney work product doctrine. Based on the documents' descriptions provided on the USA's augmented privilege log, Remcon is satisfied that many of these documents qualify as attorney-client communications and/or work product privilege.

However, for the reasons set forth in the attachment to Remcon’s September 27, 2004 letter (entitled "Attachment to Remcon's September 27, 2004, meet and confer letter"), there are certain documents that Remcon contends fall outside the attorney-client and work-product privileges, or still require greater description for it to assess the validity of the privileges asserted. Remcon requests that the Court order the USA to produce these documents or review them and order their production as it deems appropriate.

**6. Anticipation of Litigation**

“The work product doctrine affords a qualified privilege to materials prepared in anticipation of litigation.” (*First Heights Bank, FSB v. U.S.,* 46 Fed. Cl. 312, 320 (2000).) “If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated.” (*Energy Capital Corp. v. U.S.*, 45 Fed.Cl. 481, 485 (2000) [citing *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Emer.App. 1985)].) “To invoke the protection of the rule, the party resisting discovery bears the burden of establishing that the documents in question were ‘prepared principally or exclusively to assist in anticipated or ongoing litigation.’” (*In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459, 462 (S.D.N.Y.,1996) [citing *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)].)

The USA’s privilege log identifies various documents that it asserts were prepared in anticipation of litigation. Again, the privilege log’s inadequate description of the documents makes it impossible for Remcon or the Court to determine whether the primary motivating

purpose for the creation of the document was to assist with litigation. For example, Item No. 23 includes an "Attachment containing M. Giller's phone logs" which the USA claims were specifically prepared in anticipation of litigation. Without further description of what information is contained in the telephone logs such as when they were created, why they were prepared exclusively for litigation purposes, and who was being communicated with, Remcon cannot assess the validity of this claim of privilege. Moreover, as noted by the legal authorities cited above, if M. Giller was motivated to create the telephone logs for some other purpose, they do not fall within the privilege even if he thought the logs would be helpful to the USA's case when they were created.[3]

Another example is Item No. 36 which refers to photographs that the USA asserts were created specifically for its attorneys in anticipation of litigation. However, without knowing when the photographs were taken, who took them, who directed the person taking the pictures to do so, or some other information that explains why these photographs fall within the privilege, it is impossible to determine the validity of the USA's assertion of privilege. The USA has not met its burden of establishing that the anticipation of litigation protection applies. Thus, Remcon requests that the Court order the USA to produce the documents or review them and order their production as it deems appropriate.

### B. Remcon Met and Conferred in Good Faith With the USA's Counsel at Least Five Times Before Filing the Instant Motion to Compel

In Defendant's Response to Plaintiff's Motion to Compel ("Response"), the USA argued that Remcon failed to meet and confer with it prior to filing the instant motion therefore the motion should be denied. (Response, pp. 5-9, section II.) According to the USA, Remcon "raced to file the motion before we could serve the log." (Response, p. 9.)

The USA was required to provide a privilege log on April 30, 2004. It did not do so. ***On five separate occasions*** between April 30, 2004 and July 26, 2004, Remcon's counsel asked the USA's counsel when it could expect to receive the privilege log. The USA either ignored

---

[3] "M. Giller" refers to Mike Giller, a National Park Service employee assigned to work on the Project. It is seriously doubted that his telephone logs can fit the protection asserted.

Remcon's inquiries completely or gave Remcon non-committal promises which gave Remcon no indication of when the log would actually be produced.[4] Finally, Remcon gave the USA a deadline (which amounted to a three month extension) by which it either complied with its discovery obligations, or it would face a motion to compel.

On July 28, 2004, the USA's counsel sent Remcon's counsel another letter that told Remcon that the privilege log would be forthcoming at an indefinite time in the future, without committing to do so by a particular date. Having been strung along for three months already and become familiar with the USA's pattern of staving off discovery motions by making promises it did not keep, Remcon finally filed the instant motion, but only after ***five good faith meet and confer efforts over a three month period of time***.[5]

The USA compares the present matter to *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.* (339 F.3d 180 (2003)), in which the United States Court of Appeals held that the party moving to compel to discovery did not meet and confer in a good faith effort to resolve the parties' discovery dispute. In that case, the propounding party (Naviant) moved to compel further responses one day after they were due and after denying the responding party's (Tucker) request for an extension of time to respond. (*Naviant*, *supra*, 339 F.3d at 182.)

After hearing the motion, the District Court gave Tucker a 10 day extension to answer. After Tucker provided responses, at 4:30 p.m. on a Tuesday, Naviant's counsel faxed Tucker a twenty-page letter demanding written confirmation within 24 hours that Tucker would provide more complete answers by that Friday. When Tucker did not provide the written confirmation Naviant demanded, Naviant filed its motion two days later. (*Naviant*, *supra*, 339 F.3d at 182.)

---

[4] For example, rather than committing to a date by which USA would produce the privilege log, the USA at one time told Remcon's counsel that the ***"the privilege list will be provided to your office as soon as reasonably possible."*** (Schoenfeld Decl., ¶ 16; Exhibit K)

[5] The USA's contention that Remcon did not meet and confer in good faith begs the question, how many times must a party ask the other party to comply with its discovery obligations to fulfill its the good faith meet and confer requirement? Ten times? Fifteen times? Twenty times? Certainly this cannot be so as the USA's counsel suggests. Good faith did not require Remcon to delay filing a motion each time the USA's counsel represented it would produce the privilege log after having failed to fulfill so many of its past promises.

Because in each instance Naviant gave Tucker only one or two days to comply with its discovery demands, the Court held that Naviant failed to meet and confer in good faith.

In the present matter, ***Remcon's counsel's asked the USA to provide the privilege log that it was obligated to provide over <u>five separate times over a three month period</u> before finally filing a motion.*** The USA either ignored Remcon's inquiries completely or gave non-committal responses that gave Remcon no indication as to when it could expect to receive the log, other than "as soon as reasonably possible." After three months of fruitless attempts to persuade, induce and cajole the USA into producing the log, Remcon was finally forced to file the instant motion. The USA's assertion that *Naviant* is comparable to the present case does not withstand scrutiny. Indeed, it manifests that no published authority with comparable facts exists that has an outcome that the USA asserts is proper.

**C. Monetary Sanctions Should Be Imposed Against the USA Because its Conduct Necessitated Remcon's Filing This Motion**

Rule 37(a)(4) states that if a motion compelling discovery is "granted or if ***disclosure of requested discovery is provided after the motion was filed, the court <u>shall</u> . . . require the party*** . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees" unless the moving party failed to make a good faith effort to obtain discovery without court action or the opposing party's failure to provide the requested discovery was substantially justified. (Emphasis added)

The USA argues that the award of fees and costs are not warranted because Remcon did not meet and confer in good faith before filing the instant motion. As set forth above and in Remcon's moving papers, the facts compel the conclusion that the USA consistently refused to cooperate with Remcon's discovery efforts. Indeed, but for the USA's non-responsiveness to Remcon's meet and confer efforts, stalling, broken promises, and habitual delay in fulfilling its discovery obligations despite Remcon's numerous good faith attempts to induce the USA to comply, the instant motion would not have been filed. Thus, the award of sanctions in the present case is appropriate and just. Remcon respectfully requests that this Court order the USA

to pay Remcon's attorney's fees and costs incurred in filing this motion. Said fees and costs will be provided via a cost bill upon receipt of an Order requiring that the same be provided.

**CONCLUSION**

For the reasons set forth above, Remcon respectfully requests that this Court order the USA to do the following:

(1) produce all documents identified on its privilege log that the Court deems to be improperly withheld from production within 5 days of the issuance of said order;

(2) review *in camera* all documents that the USA has not described in a manner that enables Remcon to adequately assess the applicability of the privilege or protection asserted and make a determination as to whether the asserted privilege applies; and

(3) reimburse Remcon for its attorney's fees and costs incurred in bringing this motion.

DATED: October 12, 2004 MURPHY AUSTIN ADAMS SCHOENFELD LLP

/S/ D. Michael Schoenfeld

D. MICHAEL SCHOENFELD
Attorneys for Plaintiff
REMEDIATION CONSTRUCTORS, INC.

MURPHY AUSTIN ADAMS SCHOENFELD LLP
1000 G St., Third Floor
P. O. Box 1319
Sacramento, California 95812-1319
Telephone: (916) 446-2300
Facsimile: (916) 503-4000