MURPHY AUSTIN
ADAMS SCHOENFELD LLP

**D. MICHAEL SCHOENFELD**
**DIRECT (916) 503-4005 Ext 281**
**mschoenfeld@murphyaustin.com**

August 13, 2004

***Sent Via Facsimile and Federal Express***

Richard P. Schroeder
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

Re: Remediation Constructors, Inc. v. United States of America
Docket No. 03-2478C
Our File No: 1918.001

Dear Mr. Schroeder:

Please treat this letter as our sincere effort to meet and confer with you concerning the problems and deficiencies in your recently provided privilege log. It is our hope that we can resolve these matters with you and avoid making a motion to compel.

We are in receipt of the United States of America's ("USA") privilege log identifying the documents withheld from production that are responsive to Remcon Constructors, Inc.'s ("Remcon") document demands. The government's log identifies the following reasons as grounds for withholding responsive documents: source selection information, proprietary, deliberative process, relevancy, post-termination, attorney-client privilege, attorney work product privilege and anticipation of litigation. For many of the documents withheld, the USA's reliance on a particular privilege or objection is clearly misplaced. Moreover, to the extent that certain privileges *may* be applicable to other documents, the USA's privilege log does not describe the documents withheld in a manner that enables Remcon to adequately assess the applicability of the privilege or protection asserted as required by the Rules of the Court of Federal Claims ("Rules"). (See RCFC 26(b)(5).)

Set forth below are the reasons why documents identified on the USA's privilege log must either be produced, or the privilege log augmented, so that Remcon has sufficient information with which to assess the applicability of the privileges or protections asserted.



EXHIBIT B
Pages 1-7

**Source Selection Information**

The USA has withheld from production source selection files, abstracts of offers, proposals for additional services and other documents claiming that they are protected from disclosure because they contain source selection information. Pursuant to the Procurement Integrity Act ("Act"), persons acting on behalf of the government with respect to a Federal agency procurement "shall not, other than as provided by law, knowingly disclose contractor bid or proposal information or source selection information **before** the award of a Federal procurement contract to which the information relates." (41 U.S.C. § 423(a)(b)[emphasis added].) Section 423, "properly understood, is obviously directed at situations in which a present or former government procurement officer secretly leaks information concerning a pending solicitation to an offeror participating therein, in the hopes of securing post-government employment or other compensation from said offeror." (*Pikes Peak Family Housing, LLC v. United States,* 40 Fed. Cl. 673, 681 (1998).) The contract for the project at issue in this litigation ("Project") was awarded in 2001 therefore the source selection protection no longer applies. All source selection documents in the USA's Project files must be produced immediately without redactions.

**Proprietary**

The USA has withheld from production documents it claims are "proprietary" without any further explanation of why this alleged privilege applies. The Rules require the producing party to describe documents withheld in a manner that enables the propounding party to adequately assess the applicability of the privilege or protection asserted. (See RCFC 26(b)(5).) Something more that the word "proprietary" is required if the USA intends to stand behind this assertion of privilege. If the USA will not voluntarily withdraw this objection and produce these documents without redaction or provide a privilege log with which Remcon can assess the validity of the USA's assertions of privilege, Remcon will be compelled to request that the Court determine whether or not the privilege applies after *in camera* review.

As we have previously discussed with you, we are willing to enter into a protective order pertaining to documents you claim contain proprietary information obviating the need for presenting this issue to the Court. However, our client must be allowed to review these documents because it is its knowledge of the Project upon which we rely in presenting its case. As noted by the Court of Federal Claims, "[o]nly if the Government carries its burden under RCFC 26(c) will this court enter a protective order barring plaintiff's representatives, counsel aside, from access to information otherwise properly discoverable." (*Pikes Peak, supra*, at 681.) Therefore, absent a showing that the documents contain trade secrets or

some other form of sensitive proprietary information, a protective order barring our client from reviewing these documents is unwarranted and contrary to the Rules.

**Deliberative Process**

The USA has withheld from production a document entitled "Spending Plan for Construction Appropriation" (Item No. 14; Bates Numbers 021044-021073) based on its claim that this document is subject to the "deliberative process" privilege and irrelevant. The deliberative process doctrine serves to protect inter agency and intra-agency "deliberative communications or official information [and other] documents comprising part of a process by which governmental decisions and polices are formulated." (*Marriot International Resorts v. United States*, 2004 WL 1708972 (Fed. Cl.); *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985) [the principal rationale underlying the privilege is to "promote frank discussions of legal or policy matters in the decision-making process"].)

As its title reflects, the Spending Plan for Construction Appropriation appears to be the *outcome* of the deliberative process. Therefore, the USA's spending plan as it relates to the Project cannot reasonably be deemed to be part of the deliberative process by which the National Parks Service formulated policy. Therefore, the USA's assertion of this privilege is improper.

Additionally, "[t]o assert the privilege, the Government must follow a three-step process. First, the head of the agency that has control over the requested document must assert the privilege after personal consideration." (*Walsky Construction Co. v. United States*, 20 Cl. Ct. 317, 320 (1990).) This must be done in the "in the form of a declaration or affidavit." (*Walsky*, *supra*, at 320 fn. 3.) "Second, the head of the agency must state with particularity what information is subject to the privilege. Third, the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." (*Walsky, supra*, at 320.) These requirements have not been fulfilled. Therefore, this document must be produced.

**Relevancy**

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant evidence need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." (RCFC 26(b)(1).) Relevant evidence is defined as "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or

less probable than it would be without the evidence." (Fed. Rule of Evid. 401.) "For discovery purposes 'relevancy' is a broad term." (*Liew v. Breen*, 640 F.2d 1040, 1049 (9th Cir. 1981).)

All the documents withheld by the USA on relevancy grounds were in its Project files therefore in some manner related to the Project and presumably relevant, irrespective their admissibility at trial. Thus, the USA must produce all non-privileged Project documents. The burden of proof is on the USA to demonstrate the lack of relevancy. Either do so immediately or withdraw the objection.

**Post-Termination**

The USA's privilege log asserts that the documents generated after the USA removed Remcon from the Project such as Item No. 128 ("Letter to GAIC related to project schedule") and Item No. 129 ("Letter to GAIC related to conduct of operations") are "post termination" and therefore irrelevant. It is self-evident that the contractor who is completing the Project may encounter the same site conditions encountered by Remcon. Documents that pertain to the manner in which the completion contractor dealt with these conditions and the government's post-Remcon administration of the Project are expected to corroborate Remcon's claims identified in its complaint. Therefore, these documents are clearly relevant and must be produced. The fact that Remcon is not on site is irrelevant to the permissible discovery of these documents.

**Attorney-Client and Attorney Work Product**

The USA has withheld documents based on the attorney-client privilege and/or attorney work product doctrine. As noted above, the USA's discovery obligations require it to describe the documents withheld from production in a manner that enables Remcon to adequately assess the applicability of the privilege or protection asserted. (RCFC 26(b)(5).) Remcon's meet and confer letter sent prior to its filing its pending motion to compel, and the motion to compel itself, requested that the USA provide a privilege log that, *inter alia*, lists the authors of the documents and the documents' addressees (including those "carbon-copied" or "cc'ed"). However, the USA's privilege log does not identify the authors and recipients of the documents it claims fall within the attorney-client or work product privileges.

It is axiomatic that "the voluntary disclosure of work product or an attorney-client communication constitutes a waiver of the immunity and privilege as to all other communications on the same subject." (*Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 589 (S.D.W.Va. 2002); *Hawkins v. Stables,* 148 F.3d 379, 384 fn. 4 ["As a general rule, implied

waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege. [citations] Such a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege"].)

Without knowing who sent and received the documents which the USA claims fall within the attorney-client and work product privileges, it is impossible to determine if they were sent or received by persons outside the attorney-client relationship thereby waiving the privilege or places the documents outside the privileges to begin with. Thus, the identities of the authors and recipients of the documents the USA claims are protected by the attorney-client and work product privileges are essential to Remcon's assessing the applicability of these privileges and must be provided in an augmented privilege log.

**Anticipation of Litigation**

"The work product doctrine affords a qualified privilege to materials prepared in anticipation of litigation." (*First Heights Bank, FSB v. U.S.*, 46 Fed.Cl. 312, 320 (2000); RCFC 26(b)(3).) "If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated." (*Energy Capital Corp. v. U.S.*, 45 Fed.Cl. 481, 485 (2000) [citing *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Emer.App. 1985)].) "To invoke the protection of the rule, the party resisting discovery bears the burden of establishing that the documents in question were 'prepared principally or exclusively to assist in anticipated or ongoing litigation.'" (*In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459, 462 (S.D.N.Y.,1996) [citing *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)].)

The USA's privilege log identifies various documents that it asserts were prepared in anticipation of litigation. Again, the privilege log's inadequate description of the documents makes it impossible for Remcon or the Court to determine whether the primary motivating purpose for the creation of the document was to assist with litigation. For example, Item No. 23 includes an "Attachment containing M. Giller's phone logs" which the USA claims were specifically prepared in anticipation of litigation. Without further description of what information is contained in the telephone logs such as when they were created, why they were prepared exclusively for litigation purposes, and who was being communicated with, Remcon cannot assess the validity of this claim of privilege. Moreover, as noted by the legal authorities cited above, if M. Giller was motivated to create the telephone logs for some other purpose, they do not fall within the privilege even if he thought the logs would be helpful to the USA's case when they were created.

Another example is Item No. 36 which refers to photographs that the USA asserts were created specifically for its attorneys in anticipation of litigation. However, without knowing when the photographs were taken, who took them, who directed the person taking the pictures to do so, or some other information that explains why these photographs fall within the privilege, it is impossible to determine the validity of the USA's assertion of privilege. The USA has not met its burden of establishing that the anticipation of litigation protection applies. Thus, more information must be provided for these and other items for which the USA asserts this privilege if it is to comply with RCFC 26(b)(5).

**USA's Log of Documents Reviewed and Released**

We have reviewed the documents we received on August 11, 2004 that were attached to the USA's Log of Documents Reviewed and Released. However, the documents within what you have identified as Item Nos. 2R, 13R, and 14R were **omitted** from this supplemental production. These documents must be provided by **August 19, 2004**, or Remcon will move the Court to compel their production.

Additionally, the bates numbers for Item No. 16R, as identified on the USA's supplemental log, are 0518767 - 0158751. By failing to correctly identify this item's correct bates numbers, we have no way of telling if the documents have been produced in their entirety. Therefore, please provide us with an amended supplemental log which correctly identifies these documents and the documents themselves.

**Protective Order**

Enclosed is a draft of a protective order which if executed by both parties will significantly reduce the need for Court assistance in resolving the parties' discovery dispute, provided the documents subject to the protective order are received by us in a timely manner, i.e., by **August 19, 2004.** However, as noted above, it is imperative to the prosecution of Remcon's case that our client be allowed to review these documents. Unless the USA can demonstrate they contain trade secrets or other sensitive proprietary information, we will insist on an *in camera* review by the Court to determine if such a restriction is warranted.

We have prepared an attachment enclosed with this meet and confer letter that identifies which documents must be produced without redaction and which descriptions of the documents provided in the USA's privilege log must be augmented and why. The November 30, 2004, fact discovery cutoff is fast approaching therefore we must have the documents identified on this attachment and an augmented privilege log no later than **August 19, 2004.**

If we do not, Remcon will file a motion to compel production of the documents improperly withheld and a privilege log that will enable Remcon to assess the validity of the privileges asserted therein. We will also seek appropriate sanctions.

Finally, you have requested that Remcon take its pending motion to compel off calendar because the USA has provided a privilege log thereby mooting the motion. However, the motion is not moot because the USA's privilege log is woefully inadequate. Until you timely comply, we must continue to request that the Court order the USA to provide a log that complies with the Rules. Moreover, because the privilege log was provided over four months after it was due and after Remcon was compelled to file the motion, Remcon will continue to seek to recover its expenses, including attorney's fees, incurred in bringing its motion pursuant to RCFC 37(a)(4).

Please contact me as soon as possible so we can finalize a protective order and determine which discovery issues can be resolved without Court assistance. If we are not provided with the documents to which Remcon is entitled and a privilege log that complies with the Rules by **August 19, 2003**, we will file another motion to compel and seek appropriate sanctions.

Thank you for your prompt attention to this matter.

Very truly yours,

D. MICHAEL SCHOENFELD

Enclosure

DMS:dli
cc: Steve Christensen
Thomas Casamassima
Kenneth I. Schumaker
James J. Ison