IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| REMEDIATION CONSTRUCTORS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | DOCKET NO. 03-2478C<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT**<br><br>(Judge Susan G. Braden)<br><br>Hearing Date: TBD |

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . -1-

II. ARGUMENT . . . . . -3-

A. PLAINTIFF'S PROPOSED AMENDMENT IS NOT FUTILE, AND DEFENDANT IMPROPERLY SEEKS TO ARGUE A MOTION FOR SUMMARY JUDGMENT IN LIEU OF RESPONDING TO A MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT . . . . . -3-

B. DEFENDANT WILL NOT SUFFER ANY PREJUDICE BY THE COURT GRANTING THIS MOTION . . . . . -6-

C. PLAINTIFF'S CLAIM IS NOT ONE FOR INDEMNIFICATION, BUT FOR DAMAGES THAT FLOW FROM THE DEFENDANT'S ALLEGED BREACH OF CONTRACT . . . . . -7-

D. JUDICIAL ECONOMY WILL BE SERVED IF THIS MOTION IS GRANTED . . . . . -9-

E. PLAINTIFF DID NOT DELAY IN FILING ITS MOTION FOR LEAVE . . . . . -10-

III. CONCLUSION . . . . . -11-

# TABLE OF AUTHORITIES

## CASES

*A.V. by Versace, Inc. v. Gianni Versace, S.p.a.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001) . . . . . . . . . . . . . . . . -4-

*Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) . . . . . . . . . . . . . . . . -4-

*Dale Construction Co. v. United States*, 168 Ct.Cl. 692 (1964) . . . . . . . . . . . . . . . . -8-, -9-

*Foman v. Davis*, 371 U.S. 178, 182 (1962) . . . . . . . . . . . . . . . . -3-

*G.L. Christian and Associates v. United States*, 160 Ct.Cl. 1, 11 (1963)] . . . . . . . . . . . . . . . . -8-

*Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003) . . . . . . . . . . -4-

*Intrepid v. Pollack*, 907 F.2d 1125, 1129 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . -3-

*J.D. Hedin Construction Co. v. United States*, 456 F.2d 1315 (Cl.Ct. 1972) . . . . . . . . . . . -8-, -9-

*J.F. Shea Company, Inc. v. United States*, 4 Cl. Ct. 46, 54 (1983) . . . . . . . . . . . . . . . . -9-

*Johnson Controls World Services, Inc. v. United States*, 43 Fed.Cl. 589, 593 (1999) . . . . . . . -9-

*Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999) . . . . . . . . -4-

*Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.*, No. 96-1829, 2001 WL 1286989, at *5, 2001 U.S. Dist. LEXIS 17625, at * 15 (S.D.N.Y. Oct. 24, 2001) . . . . . . . . . . . . . . . . -4-

*St. Paul Fire and Marine Ins. Co. v. U.S.*, 31 Fed.Cl. 151, 155 (1994) . . . . . . . . . . . . . . . . -3-, -4-

*Travelers Cas. & Sur. Co. Of America v. Telstar Const. Co. Inc.*, 252 F.Supp.2d 917, 922 (D. AZ 2003) . . . . . . . . . . . . . . . . -5-

## STATUTES

41 U.S.C.A. §609 . . . . . . . . . . . . . . . . -2-

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . -4-

# I.

# INTRODUCTION

Plaintiff REMEDIATION CONSTRUCTORS, INC. ("Plaintiff") respectfully submits this reply brief in support of its Motion for Leave to file its First Supplemental Complaint. In preparing this reply, Plaintiff notes that the outset that it is lengthier than it would have preferred, but such length is caused by the factual mis-statements, improper legal standards and argument, vague and broad accusations, and irrelevant and improper legal argument and evidentiary submissions set forth in Defendant's response.

The legal standard regarding this motion is as follows: courts liberally allow supplemental pleadings, Defendant faces a herculean task in convincing the court that the motion should not be granted. Defendant's response fails to clear this hurdle.

Given that the discovery cut-offs for this matter have been extended until June 30, 2005 (fact discovery) and August 30, 2005 (expert discovery), and that Plaintiff has met and conferred with Defendant to establish a reasonable discovery schedule relating to the proposed supplemental damage claim (and will continue to do so), Defendant will <u>not</u> suffer any prejudice if the court grants the instant motion. Also, Plaintiff's supplemental claim is limited solely to a damage claim, and will not require any further discovery on liability, causation, or entitlement.

Defendant's response fails on the following grounds:

1) Motions to file supplemental pleadings are liberally granted, and the "futile" standard for analyzing whether or not allow a supplemental pleadings (as asserted by Defendant in pages five through seven in its response) is incorrect. Defendant improperly seeks in the body of its response to ostensibly argue a motion for summary judgment, based on unauthenticated and factually unsupported factual contentions. While these arguments may be appropriate at the time of filing of a dispositive motion (which the court has extended the deadline for this matter until July 15, 2005), similar argument in opposition to a motion for leave is improper and is properly disregarded.

2) Defendant will <u>not</u> be prejudiced by the court granting this motion. Defendant has already conducted extensive written and oral discovery regarding the issues raised above (based

on three extensions of the fact witness discovery cut-off requested by Defendant), and any discovery regarding the amount of post-termination/ excess completion damages will be limited. Further, given the June 30, 2005 discovery cut-off, Plaintiff and its surety, Great American Insurance Company ("GAIC") have committed to work with Defendant to determine what additional discovery is necessary.[1]

3) Plaintiff's supplemental pleading merely asserts additional damages which flow from a **breach of contract** action, and is not a claim for indemnification against Defendant. Defendant has already conducted extensive discovery regarding the underlying breach of contract action. Also, Defendant is issuing payments to GAIC and Agee Construction (the replacement contractor for Plaintiff on the project) directly for the completion of the Project. Therefore, Defendant is clearly in a position to substantially know what the damages may be for Plaintiff's supplemental claim. Finally, Plaintiff has already produced to Defendant during discovery the completion/construction documents it has received from Agee and GAIC, and other documents regarding payments by GAIC to Plaintiff's subcontractors.

4) Plaintiff seeks one trial and one lawsuit to litigate all issues arising from the project. Otherwise, the parties will try the first case, and be forced to litigate another case against each other if this motion is not granted.[2] Given that Plaintiff and Defendant have already been locked

---

[1] To date, Defendant, in an April 14, 2005 letter from counsel to Plaintiff's counsel, has only identified two depositions which may be necessary regarding the supplemental claim. These depositions include a deposition of a representative of GAIC (which Plaintiff expects will not last more than one day); and the deposition of Richard Tasker (GAIC's consultant). These depositions can easily be completed by June 30, 2005. Defendant will not need to depose any of Plaintiff's witnesses regarding the supplemental claim since Plaintiff has not worked at the site since it was terminated for default, and the supplemental damages relate to damages incurred to complete Plaintiff's work. However, if Defendant wants to take the deposition of Steve Christensen, Plaintiff's principal and president, regarding facts regarding Plaintiff's liability to its surety (as Defendant contends in page four of its response), Plaintiff has already communicated to Defendant that it can depose Mr. Christensen for one additional day for all outstanding issues (Mr. Christensen has already been deposed for two days by Defendant).

[2] Plaintiff has one year to file a lawsuit after a claim is rejected (41 U.S.C.A. §609). Based on the rejection by Defendant of Plaintiff's second omnibus claim on September 16, 2004, Plaintiff must seek to file a lawsuit by September 16, 2005. If this motion is denied, Plaintiff will be forced to file a second action in this court.

in litigation for one and a half years, this result is not preferred. Also, the issues of liability and entitlement are so intertwined, that the court could simply agree to bifurcate the issue of damages for post-termination damages if the issue of damages is not yet ripe.

5) Plaintiff did not delay in filing this motion. In September, 2004, Plaintiff attempted to secure from Defendant's counsel a stipulation to allow Plaintiff to file an amended complaint based on the rejected second omnibus claim. (See ¶ 2 to Declaration of D. Michael Schoenfeld ("Schoenfeld Decl.")). For many months, Defendant did not provide a definitive response to Plaintiff's request. (*Id.*) From September, 2004 to March 2005, Plaintiff was immersed in discovery matters and waiting for Defendant's response. Based on a general understanding that it was better for Plaintiff to file this motion than for GAIC to join as a plaintiff, Plaintiff proceeded in a timely manner. (See ¶ 3 of Schoenfeld Decl.). Remcon has conducted extensive discovery between September 2004 and March 2005, and has been extremely diligent in pursuing its case.

## II.

## ARGUMENT

### A. PLAINTIFF'S PROPOSED AMENDMENT IS NOT FUTILE, AND DEFENDANT IMPROPERLY SEEKS TO ARGUE A MOTION FOR SUMMARY JUDGMENT IN LIEU OF RESPONDING TO A MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT

In citing to the *Intrepid* and *Foman* cases[3] in page five of its response, Defendant seeks to mislead the court into believing that a so-called "futility of amendment" standard constitutes proper grounds for denying a motion to file a supplemental pleading. Pertinent cases which discuss the meaning of the term "futility" make clear that it is quite different from the meaning asserted by counsel for Defendant in the response. In *St. Paul Fire and Marine Ins. Co. v. U.S.*, 31 Fed.Cl. 151, 155 (1994), this court held that:

---

[3] In its response, Defendant cites to *Intrepid v. Pollack*, 907 F.2d 1125, 1129 (Fed. Cir. 1990) and *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> "[w]hen futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments.…Instead, courts simply decide whether a party's proposed amendment is facially meritless and frivolous, *i.e.*, 'Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint.' (citation omitted)."

*St. Paul* demonstrates that the merits of the underlying claim or the amendment are irrelevant to the court's decision as to whether to grant the motion to file a supplemental pleading. Given that Plaintiff's proposed supplemental pleading is not attacked by Defendant on its face, Defendant's argument must be disregarded since Defendant's lengthy discussion regarding the *merits* of Plaintiff's claim for excess completion costs should be disregarded as irrelevant.

Furthermore, with respect to whether a pleading is frivolous and insufficient on its face, the court in *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003) explained that, "[a] determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." (*See A.V. by Versace, Inc. v. Gianni Versace, S.p.a.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001). Thus, an amendment is futile 'if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.' (*Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.*, No. 96-1829, 2001 WL 1286989, at *5, 2001 U.S. Dist. LEXIS 17625, at * 15 (S.D.N.Y. Oct. 24, 2001) (quoting *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999)). In addition, in evaluating a motion to dismiss, the court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. (*Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)).

These cases makes clear that the appropriate standard for evaluating whether Plaintiff's motion to file a supplemental complaint is frivolous is whether Plaintiff's supplemental complaint would be subject to immediate dismissal for failure to state a claim or on some other ground. Defendant has not asserted in its response that this is the case (because obviously it is not), and Defendant's lengthy discussion as to the merits of Plaintiff's claim has no bearing on this motion. Therefore, Defendant's argument that Plaintiff's supplemental pleading would be futile should be disregarded as legally irrelevant in response to Plaintiff's motion, and the motion should be granted.[4]

Furthermore, Defendant attaches in support of its response five letters which are not authenticated, placed into context, or supported by any deposition testimony. The evidence submitted to the court must meet all requirements for admissibility of evidence if offered at the time of trial. (*Travelers Cas. & Sur. Co. Of America v. Telstar Const. Co. Inc.*, 252 F.Supp.2d 917, 922 (D. AZ 2003)). Here, the exhibits attached by Defendant are not authenticated by declaration, affidavit, or deposition testimony. These exhibits, and all arguments based on the exhibits, are properly disregarded by the court.

Defendant's response also asserts naked and unsupported assertions such as "Remcon never provided any substantive response to the contracting officer's cure notice." (p. 6), and

---

[4] While Plaintiff strongly contends that it does not need to, within the four corners of this reply brief, support its claim that Defendant improperly terminated Plaintiff for default, Plaintiff is confident that, based on the following reasons, it will defeat any dispositive motion which may be filed by Defendant on this issue: 1) Defendant's "cure notice" was legally improper; 2) Defendant's multiple material breaches of the contract excused Plaintiff's response to the alleged cure notice; 3) Multiple constructive changes on the project excused Plaintiff's performance; 4) Defendant's failure to timely pay and timely issue time extensions, as well as lack of payment to Plaintiff for contract and extra work created commercial impossibility or impracticability of performance by Plaintiff; 5) Defendant's breaches of multiple implied warranties of adequate design and not to hinder contractor performance; 6) Admitted differing site conditions encountered; and 7) Defendant-caused delay/suspension of work.

"Remcon will be unable to prevail upon its default argument." (p. 6).. These legal conclusions are not appropriately asserted in this motion, and are appropriate solely to be asserted in a motion for summary judgment or trial. Interestingly, Defendant admits in pages five through seven of its response that the issues of termination for default will be more fully addressed in a dispositive motion. This admission substantiates Plaintiff's argument that Defendant's attempts to argue questions of fact and law in a response to a motion for leave should not be countenanced by this court, and are properly ignored.

## B. DEFENDANT WILL NOT SUFFER ANY PREJUDICE BY THE COURT GRANTING THIS MOTION

The fact witness discovery cut-off has been extended to June 30, 2005 at the request of Defendant. Plaintiff is substantially complete with its fact discovery, other than receiving documents and responses by Defendant to Plaintiff's requests for documents, sets two and three. Conversely, Defendant has not diligently pursued its fact discovery, has been the driving force to extend fact discovery three times, and only recently sent a letter to Plaintiff seeking to conduct depositions and third party discovery it should have commenced in October 2004. (See April 14, 2005 letter from Defendant's counsel to Plaintiff's counsel, a true and correct copy of which is attached as Exhibit A to Schoenfeld Decl.).

As discussed above, Plaintiff does not believe that Defendant will need to conduct much additional discovery regarding Plaintiff's supplemental claim. The supplemental claims relate solely to payments made by Defendant to GAIC and Agee Construction for completion costs, and by GAIC to Plaintiff's subcontractors. Defendant already possesses this information since it is the entity that pays GAIC and Agee, it receives billings from Agee, it entered into takeover agreement with GAIC for the completion costs (from which Plaintiff's supplemental claim is based), and it is involved on a daily basis with the completion of the Project. Clearly, Defendant

is in a better position, and knows more, of what is occurring with the post-termination events of the project than Plaintiff. Also, Plaintiff has already produced to Defendant all documents it possesses regarding its post-termination damages, including documents received from GAIC and Agee. (See ¶ 5 of Schoenfeld Decl.).

Defendant's counsel's actions are a cause of delay in regards to adjudicating the instant motion. The original date for Defendant's response to this motion was April 4, 2005. Based on three time extension requests by Defendant, each of which was granted by Plaintiff, the response date was extended to April 29, 2005. In the 25 day delay caused by Defendant's lack of diligence, this motion could have been granted, Defendant could have responded to the supplemental claim, and Defendant could have initiated discovery.

Defendant vaguely asserts in its response that it may conduct written discovery if this motion is granted, but does not identify the exact nature of the discovery to be completed. Vague accusations that this motion may cause months of discovery are both misleading and specious. Plaintiff is willing to work with Defendant to minimize the impact of discovery regarding the supplemental claim.

## C. PLAINTIFF'S CLAIM IS NOT ONE FOR INDEMNIFICATION, BUT FOR DAMAGES THAT FLOW FROM THE DEFENDANT'S ALLEGED BREACH OF CONTRACT

Defendant's response repeatedly asserts that Plaintiff's supplemental claim is one for indemnification. This assertion is not correct and is misleading. Plaintiff's supplemental claim relates to its **breach of contract** claim against Defendant, and is carefully drafted to link the supplemental claim to the breach of contract allegations. As discussed below, case law supports Plaintiff pleading of its supplemental claim, and Defendant's arguments must be disregarded.

It is well established that a contractor's reimbursements to a surety for its cost of completing a project from which the contractor was wrongfully terminated are recoverable as an element of its breach of contract damages. For example, in *Dale Construction Co. v. United States*, 168 Ct.Cl. 692 (1964)), the contractor filed a breach of contract claim against the government for damages it sustained because of the Army's wrongfully terminating the contract for default. The Court noted that "it is settled that 'if the Government terminates a contract without justification, such termination is a breach of the contract and the Government becomes liable for all the damages resulting from the wrongful act . . . . The objective is to put the injured party in as good a position pecuniarily as he would have been in if the contract had been completely performed." (*Dale, supra*, at p. 18 [*citing G.L. Christian and Associates v. United States*, 160 Ct.Cl. 1, 11 (1963)].)

In *Dale*, the contractor's performance bond surety completed the Project after the government terminated the contractor, but at a net loss of $31,870.38. The Court held that because the termination was "improper, the Government is liable for the completion loss inasmuch as it was the direct and foreseeable result of the breach." (*Dale, supra*, at 25.) As such, the excess completion costs in that case were recovered as an element of its damages arising from the government's contractual breach.

Similarly, in *J.D. Hedin Construction Co. v. United States*, 456 F.2d 1315 (Cl.Ct. 1972), the contractor was wrongfully terminated by the government and the surety completed the project. As stated by the Court:

> "The return to plaintiff of the completion costs in excess of those plaintiff reasonably would have incurred had there been no termination, in the amount of $419,797.03 (which includes the amount owed to the surety in respect thereof), puts plaintiff 'in as good a position pecuniarily as [it] would have been in if the contract had been completely performed.' [citation] Such excess completion cost application of this basic breach of

> contract rule was also made in the similar case of *Dale Construction v. United States*, 168 Ct.Cl. 692 (1964). Plaintiff is entitled to recover such amount." (*J.D. Hedin, supra*, at 1327.)

As noted above, "[a]lthough additional compensation for new claims may not be sought without prior certification by a contracting officer's final decision, this is not the case for "***new matters inherent in the claims previously presented.***" (*Johnson Controls World Services, Inc. v. United States*, 43 Fed.Cl. 589, 593 (1999) [emphasis added].) As such, ***"a contractor is not precluded from changing the amount of the claim or producing additional data in support of increased damages."*** (*J.F. Shea Company, Inc. v. United States*, 4 Cl. Ct. 46, 54 (1983) [emphasis added].)

The excess completion costs for which Plaintiff will be liable to the surety are a direct and foreseeable result of the Defendant's contractual breach, and these costs are just additional damages flowing from the Defendant's contractual breaches already presented in Plaintiff's original complaint.

## D. JUDICIAL ECONOMY WILL BE SERVED IF THIS MOTION IS GRANTED

Plaintiff expects that Defendant, and the court, would prefer one lawsuit and trial to litigate <u>all</u> issues arising from the project. Otherwise, the parties will try the first case, and be forced to litigate another case against each other if this motion is not granted.

Granting of this motion will also allow the issues of excess completion costs to be litigated without necessarily joining GAIC as a party. Defendant's arguments raised in pages eight and nine of its response regarding procedural hurdles that may need to be overcome if the termination for default is converted into a termination for convenience are misleading. If Plaintiff is successful in overturning its termination for default determination, and is entitled to recover excess completion costs from Defendant, reimbursement between Plaintiff and GAIC

will be addressed outside of the purview of this lawsuit. Further, there is no guarantee that GAIC will actually bring an action against Defendant if the termination for default is overturned. Instead, the only reality which will be known to the parties is that Plaintiff, not GAIC, is pursuing the excess completion cost claim. Defendant's conjecture and speculation do not rise the level of certainty, and are not persuasive arguments to convince this court to deny the instant motion.

Defendant also contends that if the termination is not converted into a termination for convenience, the supplemental claims may be moot (p. 9 of response). This argument supports, rather than undermines, the granting of this motion: if Plaintiff is not allowed to assert and litigate all potential claims arising from the project, the parties will not achieve closure and/or know whether a claim will be successful on its merits.

Assuming *arguendo* that the court is concerned with whether or not the issue of excess completion costs will be ripe for trial in October, 2005, Plaintiff suggests that the court could simply decide to bifurcate the issue of damages for post-termination damages if the issue of damages is not yet ripe. However, this determination will be not be able to be made until the end of the 2005 construction season (which will likely occur by September, 2005). Since the underlying issues of liability and causation (including the issue of Plaintiff's termination) will be decided during trial, the issues regarding, and ability to try, the excess completion cost damages will be relatively straightforward if bifurcated.

**E. PLAINTIFF DID NOT DELAY IN FILING ITS MOTION FOR LEAVE**

In September, 2004, Plaintiff's counsel sent to Defendant's counsel a proposed amended complaint for Defendant to consider whether it would stipulate to granting Plaintiff leave to amend. (See ¶ 2 of Schoenfeld Decl.). Plaintiff's counsel did not receive a response to this request for stipulation. (*Id.*). From August, 2004 to March, 2005, Plaintiff worked diligently

with its surety to learn about the status of the project, when the surety expected Agee to complete the project, to determine whether Plaintiff should file a lawsuit seeking the excess completion costs, and to further judge and analyze the viability of Plaintiff's claim against Defendant. Without waiving any applicable privileges or protections, Plaintiff's counsel, and Plaintiff's surety, determined in early 2005 that a supplemental/amended complaint was necessary. (See ¶ 6 of Schoenfeld Decl.). Since Defendant was aware of the excess completion cost claim since July, 2004 (when Plaintiff filed its second omnibus claim), Defendant's claim of surprise or prejudice by this motion is not well taken.

## III.

## CONCLUSION

Plaintiff respectfully requests that the court grant its motion for leave to file first supplemental complaint. Plaintiff's supplemental claims will not cause prejudice to Defendant, Plaintiff is willing to work with Defendant to allow reasonable discovery regarding the supplemental claims, Plaintiff is seeking to conserve judicial economy, Plaintiff did not delay in filing its motion for leave, and Defendant's novel and over-reaching legal arguments are not persuasive.

DATED: May 12, 2005

MURPHY AUSTIN ADAMS SCHOENFELD LLP

/S/ D. Michael Schoenfeld

D. MICHAEL SCHOENFELD
Attorneys for Plaintiff
REMEDIATION CONSTRUCTORS, INC.

MURPHY AUSTIN ADAMS SCHOENFELD LLP
1000 G St., Third Floor
P. O. Box 1319
Sacramento, California 95812-1319
Telephone: (916) 446-2300
Facsimile: (916) 503-4000