IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| REMEDIATION CONSTRUCTORS, INC., Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | DOCKET NO. 03-2478C<br>**JOINT STATUS REPORT**<br>Status Conference: June 14, 2005<br>Time: 2:00 PM EST |

Plaintiff REMEDIATION CONSTRUCTORS, INC. ("REMCON" or "Plaintiff"), and Defendant UNITED STATES OF AMERICA ("USA" or "Defendant") hereby submit the following joint status conference statement pursuant to court order.

**a. JURISDICTION**

Plaintiff believes that the court has jurisdiction over this action. Defendant has no reason to believe that the Court does not possess jurisdiction to entertain the claims in plaintiff's current complaint.

**b. CONSOLIDATION**

There are no known cases to consolidate with this matter.

**c. TRIAL BIFURCATION**

At this time, the parties do not believe the issues of liability and damages need to be bifurcated.

**d. DEFERRED PROCEEDINGS**

There is no need to defer proceedings at this time.

**e. REMAND/SUSPENSION**

There is no remand or suspension is contemplated at this time.

## f. ADDITIONAL PARTIES

If the Court denies Remcon's pending motion for leave to file a supplemental complaint, Remcon may seek to join its surety, Great American Insurance Company ("GAIC"), in this action.

## g. RCFC 12 AND 56 MOTIONS

Defendant intends to file a motion for summary judgment regarding the issue of contract termination and possibly other issues. Based on the Court's most recent scheduling order, all dispositive motions are set to be filed by July 15, 2005. Remcon requests, to reduce unnecessary Costs, that the court insert in its schedule a designated date by which it will rule on the motion so as to permit the parties to prepare for trial and avoid incurring costs/fees if the contemplated motion were granted.

## h. FACTUAL AND LEGAL ISSUES

### PLAINTIFF'S POSITION

On or about May 15, 2001, the National Park Service ("NPS") awarded Contract No. 1443C8000010903 (the "Contract") to Remcon for a construction project located at Sequoia and Kings Canyon National Parks, Tulare County, California and known as "Giant Forest, Sherman Tree Parking Area, SEKI 200Q" ("the Project"). The project concerned building new trails, roadways, parking lots and rock revetments in the National Park, while concurrently saving certain designated trees, rock formations and national features. The original amount of the Contract (for Base Bid Items Nos. 1 through 128) was $7,121,636.00. Pursuant to written amendments to the Contract, the original amount has been increased by the sum of $795,968.28, and the adjusted contract value is $7,917,604.28.

Remcon contends that it performed all of its obligations under the Contract except to the extent its performance was prevented or excused. Remcon also contends that it was compelled to (a) incur additional costs in performing extra work and changes in the work beyond that required by the Contract; (b) perform its Contract work in a manner more costly; and c) suffer delays and loss of productivity in completing its work. In addition, Remcon was forced by government action to change the means and methods of construction and render its performance in means and methods much more costly than Remcon reasonably anticipated. Remcon claims that construction and

directed changes materially altered the bargain.

On June 28, 2003, Remcon submitted to the Contracting Officer a certified omnibus claim for an equitable adjustment of the Contract price in the total amount of $3,091,799.60 (inclusive of outstanding contract balance owed to Remcon). In addition to the damages sought by Remcon through its certified omnibus claim for an equitable adjustment of the Contract price, the NPA is alleged to have wrongfully failed and refused to remit to Remcon its retention despite Remcon's written demands.

Pursuant to correspondence, dated July 15, 2003, received by Remcon from the Contracting Officer, the Contracting Officer issued his final decision denying a portion of Remcon's certified omnibus claim for differing site conditions (rock blasting), excavation, grading, and storm water pollution prevention. The Contracting Officer did not address any other portions of Remcon's certified omnibus claim in his July 15, 2003 final decision.

Remcon also contends that the NPS further breached the Contract by wrongfully terminating Remcon for default, pursuant to a separate Contracting Officer's final decision dated August 13, 2003, in retaliation for Remcon's submission of a certified omnibus claim to the NPS and Remcon's represented inability to finance further work due to non-payment for work performed. Remcon claims that the government's prior material breaches operated as an estoppel on its right to issue a cure notice.

**DEFENDANT'S POSITION**

Aside from the general description of the project contained in the first paragraph in section (h) (which is incomplete), the Government does not agree with the majority of characterizations contained in the remainder of section (h). Remcon, not the Government, breached its duties under the contract. Further, at the time of the termination, Remcon still had not mobilized for the 2003 construction season and the contract was significantly behind schedule. In addition, Remcon was properly terminated Remcon for default.

i. **LIKELIHOOD OF SETTLEMENT**

**PLAINTIFF'S POSITION**

At the request of Defendant's counsel, Remcon and its counsel, and GAIC representatives, participated in a settlement meeting in Washington, D.C. on May 25, 2005. The settlement meeting was supposed to last two days (May 25 and 26, 2005), and Remcon and GAIC were assured by Defendant's counsel prior to the settlement meeting that significant sums would be offered in settlement. Remcon made a good faith settlement offer to Defendant during the meeting, and Remcon contends that Defendant did not respond with a good faith counter-offer consistent with Defendant's past representations that significant sums would be offered in settlement. Remcon left the meeting on May 25th because of Defendant's failure to offer reasonable sums in response to Remcon's demand. Remcon asserts that Defendant acted in bad faith in inducing Remcon to incur the significant costs of traveling to Washington, D.C. from California (and for Great American's representatives to travel from California and Ohio), and by not negotiating in accordance with its past assurances. Remcon suspects that Defendant's action were pure "gamesmanship," and an attempt to induce Remcon and GAIC to "tip their hand" regarding their settlement position. At this point, unless Defendant is willing to make a formal, significant settlement offer, there is very little likelihood of settlement.

**DEFENDANT'S POSITION**

The Government disagrees with Remcon's characterizations regarding the settlement meeting. As an initial matter, Government counsel does not have the authority to make a formal settlement offer that would bind the Government. Government counsel merely has the authority to make settlement recommendations. Such authority resets with the authorized representative of the Attorney General. Moreover, the parties mutually agreed to engage in settlement discussions. As a result, agency counsel, the agency's project manager, the contracting officer and three experts retained by the Government traveled to Washington, D.C. from Denver and New Jersey to participate in settlement negotiations at great cost to the Government. Without discussing the particulars of the settlement discussions, it is the Government's position that Remcon, not the Government, was responsible for termination of the settlement discussions. Further, Remcon's unsupported assertion

that the Government acted in bad faith and orchestrated the settlement discussions to induce Remcon and the surety to "tip their hand" is entirely unfounded. However, the allegation itself is an example of the unnecessarily antagonistic manner in which Remcon has approached much of this litigation.

The Government believes that settlement still is possible and would be willing to entertain further discussions if Remcon were to make a reasonable settlement proposal.

**j. PROCEEDING TO TRIAL**

At this time, Remcon anticipates proceeding to trial. Remcon reiterates its request that trial, which is scheduled to commence on October 24, 2005, be held in Sacramento, California at the United States District Court for the Eastern District courthouse. Remcon is out of business as a result of this project and the company's existence is dependent upon the outcome of this matter. The Government believes that, if a trial becomes necessary, a more appropriate location for trial would be Denver, where the agency's key personnel are located or in Washington, D.C. However, it is the Government's position that the location of the trial should be determined at a later date, when addition details – such as who will be testifying – will be available. The Government does not agree with Remcon's assertion that Remcon is out of business as a result of this litigation.

**k. ELECTRONIC CASE MANAGEMENT**

There are no special needs at this time.

**l. OTHER ISSUES**

**<u>PLAINTIFF'S POSITION</u>**

Remcon currently has a pending motion to supplement its complaint to add damage claims known to Defendant. If the court denies the pending motion, Remcon, or its surety, will be forced to file a separate lawsuit to pursue the additional damages claimed in the proposed supplemental complaint.

**<u>DEFENDANT'S POSITION</u>**

The grounds for the Government's opposition to Remon's motion to supplement its complaint are set forth in our previously-filed response to Remcon's motion, which has been fully briefed. Therefore, the Government declines to make any further argument at this time.

## m. ANTICIPATED DISCOVERY AND THE SCHEDULING OF DISCOVERY.

**PLAINTIFF'S POSITION**

The discovery cut-offs in this matter have been extended multiple times solely at the request of Defendant's counsel. Remcon has pursued its case diligently, and has completed taking fact witness depositions. Defendant has consistently failed to identify witnesses to depose, and has blamed its lack of diligence on the fictional argument that Remcon has not produced all of its documents. The court should not countenance the Defendant's failure to diligently pursue discovery in this matter, and should refuse to grant any additional requests for extensions from the Defendant should they arise.

In April, 2005, weeks before the second extended discovery cut-off, Defendant identified for the first time additional parties/witnesses it may want to depose or obtain records from pursuant to subpoenas. This last minute expanded scope of discovery violated the intent of the discovery cut-off. If it wanted to conduct third party discovery, Defendant should have done so months ago. Waiting until before the discovery cut-off to introduce potential third party discovery cannot be justified as the identity of Remcon's subcontractors have been known to the government since 2001 and their effort the subject of prior deposition testimony and exhibits.

Remcon's project records were available for Defendant's review starting in June 2004. Defendant's decision to delay copying the documents for many months is not Remcon's fault, and cannot be grounds for any further extensions.

Further, the purported delay by Remcon of producing accounting/financial documents is misleading and specious. The government auditors had access to Remcon's financial information back in 2003, and chose to conduct only a cursory review and not copy the volume produced. Remcon provided notice of these documents to Defendant many months ago, and Defendant waited until late February 2005 to make arrangements for its expert, Mr. Snowden, to review the documents. Mr. Snowden then followed in the auditor's footsteps by also failing to take the time to review and tag numerous documents for copying. Mr. Snowden's failure to review and tag documents is punctuated by the list of documents Mr. Snowden requested from Remcon's principal, Steve Christensen, during his visit in early March, 2005. This list clearly demonstrates that Mr. Snowden

did not ask for the documents Defendant claims had not been produced.

After Mr. Snowden's visit and review of Remcon's documents, Defendant's attorneys sent numerous subsequent letters augmenting Mr. Snowden's initial requests, and Remcon sought to provide Defendant the requested documents in a timely manner. Over 18,000 pages have been pulled by Remcon, copied, and shipped to Mr. Snowden. Remcon cannot be justifiably accused of not fully producing its documents. Any delay in producing the accounting and financial documents has been caused by the auditor's, Defendant's counsel's, and/or Mr. Snowden's failure to review and tag documents which were available since 2003.

In the summer of 2004, Remcon suggested starting depositions in November 2004. Based on Defendant's counsel's request, the parties delayed taking depositions in earnest until January 2005 because Defendant's counsel represented that his schedule was a bit busy until the first quarter of 2005. Remcon consented. In November, 2004, when Remcon sought to calendar depositions in January, 2005, Defendant's counsel advised Remcon that he could only do it for one week. Remcon communicated its frustration, but consented and scheduled and took only one week's worth of depositions (witnesses Willie DeOcampo, Bill Smith, and Ray Tuttle) in January. Back in January, 2005, Defendant's counsel indicated that he had "cleared March, 2005" to finish taking fact witness depositions. Remcon then scheduled them. Remcon agreed to extend the fact discovery cut-off twice mainly based on Defendant's request for additional time.

From November 2004 to March 2005, Remcon served third party subpoenas, and took third party depositions. Remcon repeatedly requested a list of deponents from Defendant, and only in late January 2005 did Defendant identify witnesses it sought to depose. For those Remcon witnesses it could locate, Remcon originally agreed for the Defendant to depose them in mid March 2005. Defendant's counsel then decided unilaterally to move their depositions to late April 2005. Remcon objected, but, upon Defendant's counsel's representation that no further time extensions are expected to be sought, agreed, even though it affected other scheduled commitments in other matters.

The government has not diligently pursued depositions and third party discovery in this matter. Up until a discussion between counsel for Remcon and Defendant on April 12, 2005 (ten days before the discovery cut-off), the government never indicated that it intended to seek documents

from, or take depositions of, third parties.

Since April, 2005, Defendant has had ample opportunity to conduct discovery, including serving third party subpoenas. Instead, Defendant has not undertaken any affirmative steps to conduct fact discovery. During and after the failed May 25, 2005 settlement meeting, Remcon's counsel repeatedly requested from Defendant's counsel a discovery plan, including a list of witnesses it wants to depose, to allow the parties too coordinate discovery prior to the current June 30, 2005 discovery cut-off. On June 2, 2005, Defendant's counsel wrote a letter indicating that it was going to produce a list of deponents. As of June 7, 2005, Remcon has still not received this list of potential deponents.

The only caveat to the above-stated arguments concerns Remcon's pending motion for leave to file a supplemental complaint. If this motion is granted, and Defendant files an answer to the complaint, Remcon has agreed to meet and confer with Defendant to determine what discovery is necessary for Defendant to evaluate the supplemental damages claim. The supplemental claims relate solely to payments made by Defendant to GAIC and Agee Construction for completion costs, and by GAIC to Remcon's subcontractors. Defendant already possesses this information since it is the entity that pays GAIC and Agee, it receives billings from Agee, it entered into takeover agreement with GAIC for the completion costs (from which Remcon's supplemental claim is based), and it is involved on a daily basis with the completion of the Project. Clearly, Defendant is in a better position, and knows more, of what is occurring with the post-termination events of the project than Remcon. Also, Remcon has already produced to Defendant all documents it possesses regarding its post-termination damages, including documents received from GAIC and Agee.

Defendant vaguely asserts in its response that it may conduct written discovery if this motion is granted, but does not identify the exact nature of the discovery to be completed. Vague accusations that this motion may cause months of discovery are both misleading and specious. Further, given the June 30, 2005 discovery cut-off, Remcon and its surety, have committed to work with Defendant to determine what additional discovery is necessary. To date, Defendant, in an April 14, 2005 letter from counsel to Remcon's counsel, has only identified two depositions which may be necessary regarding the supplemental claim. These depositions include a deposition of a

representative of GAIC (which Plaintiff expects will not last more than one day); and the deposition of Richard Tasker (GAIC's consultant). These depositions can easily be completed by June 30, 2005 or some time thereafter, but no notice has yet been given by Defendant's counsel. However, if Defendant wants to take the deposition of Steve Christensen, Remcon's principal and president, regarding facts regarding Remcon's liability to its surety, Remcon has already communicated to Defendant that it can depose Mr. Christensen for one additional day for all outstanding issues (Mr. Christensen has already been deposed for two days by Defendant).

Based on the latest scheduling order, fact discovery is to be completed by June 30, 2004, expert reports are to be exchanged by July 29, 2005, and expert discovery is to be completed by August 30, 2005. Plaintiff will not agree to any further extensions of these cut-off dates.

**DEFENDANT'S POSITION**

The Government declines to engage in a point-by-point response to Remcon's assertions, which are not appropriate for a joint status report. Further, we are not now requesting an extension of the discovery deadlines. Indeed, we do not even know whether an extension will be needed. Therefore, Remcon's argument regarding why it will oppose any request that we may make is premature. In the event that the Government requests an enlargement of time, the parties can properly state their position at that time.

Further, as a general matter, we disagree with most of Remcon's characterizations regarding discovery. Notwithstanding Remcon's allegations, an enormous amount of discovery has been conducted in this case. The Government has conducted affirmative discovery and already has taken a number of depositions. For its part, Remcon has conducted weeks of depositions. Therefore, the Government has acted in a diligent manner regarding depositions, notwithstanding Remcon's assertions to the contrary. Recently, the Government focused its attention upon preparing for the parties' settlement meeting. Certainly, it was not unreasonable to defer scheduling additional depositions until after the settlement meeting, since it was our hope that further discovery would not be required.

The main outstanding discovery issue relates to Remcon's failure to produce certain financial records. Remcon attempts to place the responsibility upon the Government, asserting that the

Government's auditors chose to conduct only a cursory review and not copy the volume of documents allegedly produced by Remcon in 2003. Further, Remcon claims that our retained expert more recently failed to review and tag numerous documents for production. We disagree with Remcon's assertions in this regard. We have asked for the disputed financial records for months. Remcon has failed to produce them.

The Government is now undertaking a final effort to obtain the records from Remcon without Court intervention. In an e-mail dated June 7, 2005, Remcon's counsel represented that "100 %" of its records are in his office and that they would be made available for inspection at any reasonable time. Therefore, for the second time, we will be sending an accounting expert to California to review Remcon's records. We are hopeful that Remcon will produce the records that we require. If it does not, we will file an appropriate motion.

DATED: June 10, 2005

MURPHY AUSTIN ADAMS SCHOENFELD LLP

/S/ D. Michael Schoenfeld

D. MICHAEL SCHOENFELD
Attorneys for Plaintiff
REMEDIATION CONSTRUCTORS, INC.

MURPHY AUSTIN ADAMS SCHOENFELD LLP
1000 G St., Third Floor
P. O. Box 1319
Sacramento, California 95812-1319
Telephone: (916) 446-2300
Facsimile: (916) 503-4000

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

*s/ Franklin E. White, Jr.*

FRANKLIN E. WHITE, JR.
Assistant Director

*s/ Richard P. Schroeder*

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

June 10, 2005