No. 03-2478C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

REMEDIATION CONTRACTORS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W
Washington, D.C. 20530
Tele: (202) 305-7562
Attorneys for Defendant

OF COUNSEL:

COLLEEN DULIN
U.S. Department of Interior
Office of the General Counsel
755 Parfet Street
Lakewood, CO 80215

June 24, 2005

# TABLE OF CONTENTS

Page

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT .......... 1

DEFENDANT'S BRIEF .......... 2

STATEMENT OF THE ISSUE .......... 2

NATURE OF THE CASE .......... 2

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 8

I. Standard For Summary Judgment .......... 8

II. The Termination For Default Was Justified .......... 10

A. Remcon Failed To Respond To The Cure Notice .......... 12

1. Failure To Respond To A Valid Cure Notice Is Sufficient Grounds For A Defualt Termination .... 12

2. Remcon's Failure To Respond To The Cure Notice Cannot Be Excused .......... 17

B. Remcon Failed To Make Progress .......... 18

1. Remcon's Failure To Make Progress On The Project Justified The Default Termination .......... 18

2. Remcon's Failure To Make Progress Cannot Be Excused .......... 24

## TABLE OF CONTENTS

Page

C. Remcon Violated The Disputes Clause ........................ 25

1. Violation Of The Disputes Clause Justified Termination For Default ...................................... 25

2. Remcon's Violation Of The Disputes Clause Cannot Be Excused ......................................................... 28

CONCLUSION ........................................................................................... 30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

A.R. Sales Co., Inc. v. United States,
51 Fed. Cl. 370 (2002) .......................................................... 14, 15, 16

Alliant Techsystems, Inc., Global Environmental Solutions Business Division v. United States.,
178 F.3d 1260 (Fed. Cir. 1999) ................................................ 29, 30

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................ 8, 9

Appeal of Howell Tool and Fabricating, Inc., ASBCA No. 47939,
96-1 BCA (CCH) ¶ 28,225 (Feb. 29, 1996) .............................. 27, 28

CJP Contractors, Inc. v. United States,
45 Fed. Cl. 343 (1999) ............................................................ 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ................................................................ 9

Composite Laminates, Inc. v. United States,
27 Fed. Cl. 310 (1992) ............................................................ 13

Consolidated Industries, Inc., v. United States,
195 F.3d 1341 (Fed. Cir. 1999) .................................................. 10

Danzig v. AEC Corp.,
224 F.3d 1333 (Fed. Cir. 2000) ..................................... 12, 14, 16, 17

Discount Co. v. United States,
213 Ct. Cl. 567, 554 F.2d 435 (Ct. Cl. 1977) ........................... passim

Libertatia Assocs., Inc. v. United States,
46 Fed. Cl. 702 (2000) ............................................................ 10, 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Lisbon Contractors, Inc. v. United States,
828 F.2d 759 (Fed. Cir. 1987) .................................................. 10, 19

McDonnell Douglas Corp. v. United States,
323 F.3d 1006 (Fed. Cir. 2003) ...................................................... 19

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) ........................................................ 8

Preuss v. United States,
188 Ct. Cl. 469, 412 F.2d 1293 (1969) .................................... 24, 25

Roxco, Ltd. v. U.S.,
60 Fed. Cl. 39 (2004) ............................................................ 12, 17

State of Florida v. United States,
81 F.3d 1093 (Fed. Cir. 1996) ...................................... 15, 19, 22, 23

Stoeckert v. United States,
183 Ct. Cl. 152, 391 F.2d 639 (1968) ................................ 26, 27, 28

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) ..................................................... 8, 9

Tubular Aircraft Prods., Inc v. United States,
213 Ct. Cl. 749, 566 F.2d 1190 (1977) (adopting opinion of
Tubular Aircraft Prods., Inc v. United States),
23 CCF ¶ 81,327 (1977) ..............................................................13

**Statutes** **Page(s)**

5 U.S.C. § 5(a)(1) .................... 6, 7

5 U.S.C. §§ 571-576 .................... 6

41 U.S.C. § 605 .................... 6

**Miscellaneous** **Page(s)**

RCFC 56 ....................8

5 John Cosgrove McBbride & Thomas J. Touhey, Government Contracts, Cyclopedic Guide to Law, Administration, Procedure § 35A.80[3] (2001)....................13

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2478C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that this Court grant partial summary judgment in favor of the United States, dismissing the claim of plaintiff, Remediation Constructors, Inc. ("Remcon"), relating to the default termination of Remcon's contract. The grounds for this motion are that there are no issues of material fact in dispute and defendant is entitled to judgment dismissing Remcon's termination claim as a matter of law. In support of this motion, we rely upon the pleadings, the following brief and accompanying appendix.[1]

---

[1] The complaint is cited "Comp. ___." The appendix to this brief is cited "A___." References are to appendix page numbers.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUE

Whether the contracting officer's decision to terminate Remcon's contract for default was justified where Remcon failed to mobilize for the 2003 construction season, failed to respond to a cure notice, and failed to continue work in conformance with the contract's disputes clause.

## NATURE OF THE CASE

This case concerns a construction project in Sequoia National Park in California. Comp. ¶ 4. Remcon seeks an equitable adjustment for work that it allegedly performed. Comp. ¶ 15. Remcon also seeks a determination that the National Park Service wrongfully terminated its contract for default. Id. It is the termination issue that is the subject of this motion.

On May 15, 2001, Remcon entered into Contract No.1443C80000100903 (the "contract") with the United States in the amount of $7,121,636.00, exclusive of modifications.[2] Comp. ¶ 4. The contract was for demolition of an existing comfort station, road and parking

---

[2] The terms "United States," "Government," "National Park Service," and "NPS" refer, interchangeably, to the defendant.

area; the construction of a new, vaulted comfort station, access road, parking lot, asphalt pedestrian trail and leach field; and the re-alignment of the Generals Highway to incorporate roadside parking and site restoration. A62-63.

The Government terminated the contract for default on August 13, 2003, because Remcon refused to mobilize at the site for the third construction season and failed to respond to the Government's cure notice. A1-2. Remcon asserts that it is entitled to have the termination for default converted into a termination for convenience. Comp. ¶ 15. As demonstrated below, the default was justified because Remcon repudiated the contract by failing to respond to a validly issued cure notice, failed to make progress upon the project, and breached the contract's disputes clause by refusing to return for the third construction season.

## STATEMENT OF FACTS

The contract included Federal Acquisition Regulation ("FAR") clauses, FAR 52.249-10 "Default (Fixed-Price Construction)", A50-51, and FAR 52.233-1 "Disputes.", A52-53. The "Default (Fixed-Price Construction)" clause states, in pertinent part:

> (a) if the contractor refuses or fails to prosecute the work or any separable part, with the diligence that

> will insure completion within the time specified including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed.

FAR 52.249-10; A50-51.

The FAR 52.233-1 "Disputes" clause provides, in pertinent part:

> (i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting officer.

FAR 52.233-1; A52-53.

Pursuant to the contract, Remcon was required to complete the project within 792 calendar days. A49. It is undisputed that, because of the altitude of Sequoia National Park, the construction season is short, and generally runs from early June through October. A65. On June 11, 2001, the United States issued a Notice to Proceed and Remcon mobilized to the site. A66. During contract performance certain disputes arose, including realignment of the access road and an alleged differing site condition that purportedly required the use of blasting instead of "ripping" in constructing the road. See generally A60-65.

During contract performance, six modifications, totaling $880,138.28 were issued increasing the contract price to $8,001,774.28. A3-6; A7-11; A12-16; A17-21; A22-25; A26-29. The period of performance also was extended until August 28, 2003[3]. A16. All but the last modification, Modification No. 6, was bilateral. A3-6; A7-11; A12-16; A17-21; A22-25; A26-29. Although another modification, Modification No. 7, was drafted and sent to Remcon for signature, Remcon objected to the modification and, pursuant to Remcon's request, the Government did not issue it. A54-59.

On June 3, 2003, Remcon advised NPS that it would begin mobilizing to the site on June 9, 2003. A30; A32. Remcon confirmed this in a June 7, 2003 letter. A32. Despite these statements, Remcon did not mobilize for the 2003 construction season. A1.

During June and July, 2003, the Government repeatedly requested that Remcon remobilize to the site. A33-34; A35-36. Remcon refused.

[3]Although Modification 3 was originally drafted to extend the completion date to August 24, 2003, the parties altered the extension from "calendar days" to "working days". A16. This change resulted in the adjusted completion date of August 28, 2003, as reflected in Modification 6. A29. Although the cure notice refers to the August 24, 2003 date, this discrepancy is immaterial. A40.

A37; 38. Specifically, Remcon alleged that the Government was delaying Remcon's ability to mobilize because it would not complete "critical path Activity 20" of Remcon's submitted contract schedule. Id. Activity 20 was listed in Remcon's June 9, 2005 schedule as "Owner/Contractor ADR Agreement." A39. In other words, Remcon represented that it would not mobilize to the site unless the Government would agree to engage in ADR.[4] See A37; A38; A39.

In response, the Government reminded Remcon that it had a duty to proceed diligently with performance of the contract. A40-41; A43-44. The Government also advised Remcon that "ADR, which you have labeled Activity 20, and which you contend is on the critical path preceding mobilization, does not belong in a project schedule." A35-36; A43-44.

On July 24, 2003, the United States issued a cure notice to Remcon. A40-42. At that time, the contractual completion date for the work was August 28, 2003. A16. The cure notice stated that "as of July 22, 2003, you have completed only approximately 53% of the contract work and

---

[4]The ability of NPS to even agree to any such ADR agreement is governed by statute. See 41 U.S.C. § 605; 5 U.S.C. §§ 571-576. One requirement for ADR pursuant to the statute is consent of both parties. 5 U.S.C. § 5(a)(1).

approximately 95% of the contract time has expired." A40-42. The notice stated that "Remcon has failed to mobilize to the site for the 2003 season." Id. The notice further stated that Remcon had failed to provide the Government with a contract-compliant schedule, schedule updates and required quantity surveys, and that it had failed to pay subcontractors. Id. The notice directed Remcon to submit a written plan within ten days regarding how it intended to complete the contract by August 24, 2003. Id. The cure notice also invited Remcon to "present any valid explanations in accordance with the terms of the contract for your failure to perform," and warned Remcon that "[y]our failure to present such an explanation may be taken as an admission that no valid explanation exists." Id.

On July 31, 2003, Remcon requested a time extension to August 11, 2003, to respond to the Agency's cure notice. A45. The Government granted Remcon's request by letter dated August 4, 2003, and gave Remcon until August 11, 2003 to respond. A46. Despite the notice's warning and the Government's extension of time, Remcon did not respond to the cure notice. A1. Instead, Remcon submitted a letter, dated August 11, 2003, that indicated it was expecting a response from its surety later that day, and that the response would be forwarded to the contracting

officer as soon as it was received. A67. No such response, however, was forwarded to the contracting officer. A1.

The Government terminated Remcon's contract for default on August 13, 2003 because Remcon failed to respond to the cure notice and failed to make progress on the project. A1-2.

## ARGUMENT

### I. Standard For Summary Judgment

Pursuant to RCFC 56(b), a "party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with our without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Pursuant to RCFC 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c). It is "a salutary method of disposition 'designed "to secure the just, speedy and inexpensive determination of every action."'" Sweats

Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

As the court of appeals emphasized in Sweats Fashions: "[T]he burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by "showing" – that is, pointing out to the [Court of Federal Claims] – that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. at 248.

As set forth below, there is no dispute in the present case regarding any fact that could affect the outcome of those portions of Remcon's suit relating to the issue of termination. Accordingly, disposition of the termination issue through summary judgment is appropriate.

## II. The Termination For Default Was Justified

The Government seeks summary judgment because it properly terminated Remcon for default and because Remcon's default was not excused. It is the Government's initial burden to establish that the default was proper. See Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 764 (Fed. Cir. 1987). As set forth below, the Government has met that burden in this case.

In considering whether the termination for default was justified, this Court must give deference to the judgment of the contracting officer. Consolidated Industries, Inc., v. United States, 195 F.3d 1341, 1343-44 (Fed. Cir. 1999). The contracting officer has broad discretion to determine whether to terminate a contract for default and a court should only overturn that decision if it is arbitrary, capricious or constitutes an abuse of discretion. Id.

Once it is established that the contractor was in default, the termination determination must be sustained unless the contractor can demonstrate that its default was "excused." The burden to demonstrate "excuse" falls upon the contractor. Libertatia, 46 Fed. Cl. at 705. To meet this burden, Remcon must prove that its default was beyond its control and

without its own negligence. CJP Contractors, Inc. v. United States, 45 Fed. Cl. 343, 371-72 (1999). Consequently, Remcon is bound by the default unless it can show that the termination was excusable, or that the termination was otherwise defective. Libertatia Assocs., Inc. v. United States, 46 Fed. Cl. 702, 705 (2000); CJP Contractors, Inc. v. United States, 45 Fed. Cl. 343, 371 (1999).

This case presents an extreme set of circumstances. First, Remcon repudiated the contract by failing to respond to a properly issued cure notice. Second, Remcon demonstrated a complete lack of diligence that indicated the Government could not be assured of timely completion. Third, Remcon breached the contract by failing to continue diligent performance in conformity with the contract's disputes clause. Each of these reasons provides sufficient independent justification for the default termination.

Furthermore, Remcon cannot meet its burden to prove that the default was excusable. Because three independent bases exist for the default termination, Remcon's default may only be excused if Remcon can prove that all three actions justifying default were the fault of the Government. As demonstrated below, Remcon is unable to meet its

burden to establish that any of the reasons for default were caused by the Government. Consequently, summary judgment should be entered in favor of the United States as to that issue.

## A. Remcon Failed To Respond To The Cure Notice

### 1. Failure To Respond To A Valid Cure Notice Is Sufficient Grounds For A Defualt Termination

Remcon's failure to respond to the cure notice is an independent ground for the termination for default. When a valid cure notice is issued, the contractor is obligated to provide "assurances that progress is being made toward a timely completion of the contract, or to explain that the reasons for any prospective delay in completion of the contract are not the responsibility of the contractor." Danzig v. AEC Corp., 224 F.3d 1333, 1337 (Fed. Cir. 2000).

This requirement serves an essential role in the administration of government contracts. As the courts have reasoned implicitly, this requirement is necessary to ensure that cure notices serve their purpose to "provide the contractor with an opportunity to assert any excusable delay, and allow the Government to assess whether the contractor can complete performance." Roxco, Ltd. v. U.S., 60 Fed. Cl. 39, 43 (2004) (quoting 5

John Cosgrove McBride & Thomas J. Touhey, Government Contracts, Cyclopedic Guide to Law, Administration, Procedure § 35A.80[3] (2001)).

Permitting a contractor to simply ignore the cure notice and defer challenge of the default termination would reward it for its silence and undermine the very purpose of a cure notice. Contractors would be encouraged to remain silent regarding their inability to timely complete a project rather than make admissions regarding their inability to do so.

The courts have avoided this problem by requiring contractors to respond to a valid cure notice by either providing adequate assurance, or offering an appropriate explanation excusing performance. Remcon's failure to provide any such assurance or explanation in response to the cure notice was, in itself, ground for termination for default. See Composite Laminates, Inc. v. United States, 27 Fed. Cl. 310, 323 (1992) ("[P]arties are entitled to ask for reassurances . . . and they are entitled to treat the failure to provide such assurances as a repudiation of the contract.") (quoting Tubular Aircraft Prods., Inc. v. United States, 213 Ct. Cl. 749, 566 F.2d 1190 (1977) (text of opinion of trial judge appears in 23 CCF ¶ 81,327 at 86,619 (1977)).

In Danzig, the Navy contracted with the AEC Corporation to complete the construction of a training center. 224 F.3d at 1334. After AEC experienced delays in the completion of work, the Government issued a cure notice. Id. at 1335. In response to the cure notice, the contractor submitted two progress schedules. Id. In response to a second cure notice, AEC stated that it could not give the Government any assurance of when the project would be completed; instead AEC complained of Government-caused delays and problems with its finances. Id. The court held that the Navy was entitled to regard AEC's failure to provide adequate assurances as a "breach of contract justifying termination of the contract for default." Id. at 1339-40. In the present case, Remcon, by its silence, was effectively telling the contracting officer that it could not provide any assurances that it would timely complete its work. Further, Remcon previously had advised the contracting officer that it would not proceed without an ADR agreement. See A37; A38; SA39.

Similarly, this Court, in A.R. Sales Co., Inc. v. United States, 51 Fed. Cl. 370, 373 (2002), granted the Government's motion for summary judgment, holding that the plaintiff's "utter failure to provide reasonable assurances in response to a well-justified cure notice sufficed as a

justification for the termination of the contract for default." The Court reasoned that the termination was proper because, even if the contractor had justified the additional delay, it had failed to submit a revised schedule or commit itself to complete the work within that time period. Id.

In this case, there were more than sufficient grounds for the contracting officer to be concerned about Remcon's performance – or lack thereof. Remcon cannot dispute that it failed to commence work during the third construction season. Remcon also cannot dispute that, as of July 22, 2003, only approximately 53% of the work had been completed, while approximately 95% of the contract time had expired. Remcon also cannot dispute that, as of July 24, 2003, the date of the issuance of the cure notice, there was no possibility that Remcon would complete the work by August 28, 2003, the extended completion date.

These indisputable facts were more than sufficient to support the contracting officer's concern that the contract would not be timely competed. See State of Florida v. United States, 81 F.3d 1093, 1097 (Fed. Cir. 1996); Discount Co. v. United States, 213 Ct. Cl. 567, 554 F.2d 435, 439 (Ct. Cl. 1977). Further, assuming for the sake of argument that these conditions did not warrant immediate termination for default, at the very

least they justified the issuance of the cure notice. See Danzig, 224 F.3d at 1338 ("The issuance of a cure notice was justified under the circumstances, even if the circumstances did not, at that point, justify a termination for default.").

Once the cure notice was issued, Remcon was under an absolute duty to provide adequate assurances or to explain that the contract difficulties were not its fault. Unlike the contractors in Danzig and A.R. Sales, Remcon provided the contracting officer with no explanation whatsoever. Although the courts in those cases found the responses to the cure notices insufficient, this case presents the much stronger case for the Government because, here, there was no response at all. Remcon's silence left the contracting officer with no indication that Remcon would ever return to the work site and no choice but to terminate the contract for default. Moreover, Remcon's previous failure to mobilize and refusal to proceed without an ADR agreement only offered further support for this conclusion.

Consequently, Remcon's failure to provide any response to the cure notice justifies the termination and requires the entry of summary judgment

in favor of the Government in connection with the termination claims raised by Remcon.

### 2. Remcon's Failure To Respond To The Cure Notice Cannot Be Excused

Remcon's failure to respond to the cure notice was not excusable. Thus, Remcon's failure to respond to the cure notice precludes it from demonstrating that its default was excusable.

Although Remcon makes numerous assertions regarding alleged Government action that it contends hindered the project's progress, it can make no allegations that Government action prevented it from responding to the cure notice. As previously demonstrated, Remcon's failure to respond to the cure notice provided an independent basis for the default termination. The cure notice required Remcon to either give assurances that it would complete the project or explain why it could not. See Danzig, 224 F.3d at 1337. Remcon did neither. Remcon's choice to remain silent was entirely its own fault and is not excused by any Government action.

As previously noted, excusing Remcon for its failure to respond to the cure notice would reward it for its silence and undermine the purpose of cure notices generally. Cure notices are intended to provide the contractor with the opportunity to assert any excusable delay it may have,

and to allow the Government to assess whether the contractor can complete performance. Roxco, Ltd., 60 Fed Cl. at 43. Remcon should not be permitted to ignore a cure notice and then collaterally attack the contracting officer's decision to terminate its contract. Certainly, Remcon cannot provide any legitimate excuse for its failure to respond.

Accordingly, Remcon cannot meet its burden to demonstrate excuse and the United States is entitled to summary judgment as to the default termination.

## B. Remcon Failed To Make Progress

### 1. Remcon's Failure To Make Progress On The Project Justified The Default Termination

Remcon's failure to make progress upon the project is an additional, independent, basis for the default termination. The contract incorporated by reference FAR 52.249-10, quoted above, which is the standard termination for default clause in a fixed-price Government construction contract. The clause permits the contracting officer to terminate the contract for default if the contractor "refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in th[e] contract." Courts have construed this clause to permit the contracting officer to terminate a contract for default if

he or she is "justifiably insecure about the contract's timely completion." Discount Co. v. United States, 213 Ct. Cl. 567, 554 F.2d 435, 441 (1977).

The contracting officer need not be correct in his or her assessment, but need only "a reasonable belief . . . that there was 'no reasonable likelihood that the [contractor] could perform the entire contract effort within the time remaining for contract performance.'" McDonnell Douglas Corp. v. United States, 323 F.3d 1006, 1016 (Fed. Cir. 2003) (quoting Lisbon, 828 F.2d at 765). In considering whether or not such a belief is reasonable, courts look at the totality of the circumstances, including amount of work completed, time remaining for completion, and the contractor's performance history. McDonnell Douglas Corp., 323 F.3d at 1016-17.

Applying this test, courts have consistently upheld a contracting officer's default termination where a contractor fails to mobilize to the construction site for a period of months. See State of Florida v. United States, 81 F.3d 1093, 1097 (Fed. Cir. 1996); Discount Co., 554 F.2d at 439.

In the present case, the undisputed facts demonstrate that the contracting officer had every reason to believe that Remcon could not

perform the remaining work within the time remaining for contract performance:

- Remcon cannot dispute that it failed to commence work during the third construction season.
- Remcon also cannot dispute that, as of July 22, 2003, only approximately 53% of the work had been completed, while approximately 95% of the contract time had expired.
- Remcon also cannot dispute that, as of July 24, 2003, the date of the issuance of the cure notice, the contracting officer had every reason to believe that there was a very distinct probability that Remcon would not complete the work by August 28, 2003, the extended completeion date.
- Remcon also cannot dispute that, as of August 13, 2003, the date of the termination of Remcon's contract, there was no possibiltiy that Remcon would complete the work by August 28, 2003.
- Further, as discussed in more detail in Section I(A), above, Remcon also cannot dispute that it failed to

respond to the cure notice after being given an extension of time to do so.

In Discount Co., the Court of Claims held that a contracting officer did not abuse his discretion in terminating a contract for default based upon the contractor's failure to make any significant progress upon the contract during the construction season. 554 F.2d at 439. That case involved a contract to construct a campground and boating site in Willamette National Forest. Id. at 437. The contract called for completion within 180 days of the notice to proceed, which was issued on June 24, 1968. Id. Work was suspended in December of that year due to weather conditions. Id. at 438. The contracting officer subsequently issued a partial work resumption order for June 25, 1969 and a full work resumption order for July 15, 1969. Id. Despite these orders the contractor failed to begin "more-than-piddling construction activities at the campground" by August 4, 1969. Id. at 439.

On July 23, 1969, the Discount Co. contracting officer issued a cure notice demanding that work be resumed and a schedule provided for the remaining work. Id. at 438. The contractor failed to do either, and the contract was terminated for default on August 12, 1969. Id. The court

framed the issue as "whether [the contractor] made so little progress on its contract in the summer of 1969 that a default termination was justified." Id. at 439. Based upon the failure to begin "more-than-piddling" construction, the court upheld the default termination. Id.

In 1996, the United States Court of Appeals for the Federal Circuit upheld another default termination stemming from a similar failure to mobilize for construction. State of Florida v. United States, 81 F.3d at 1095, involved a contract to construct a post office facility. The project's surety agreed to undertake the project when the original contractor defaulted. Id. For several months after taking over the project the surety did nothing. Id. When the surety eventually did begin work, it refused to provide the Government with updated progress schedules. Id. The surety's right to proceed was subsequently terminated for failure to make progress. Id. at 1096.

Upon appeal the Federal Circuit upheld the default termination. Id. at 1097. Although the surety eventually did mobilize and take steps towards completing the project, the court noted that its months of inactivity led to the completion of no more than 10% of the contract over a seven month span. Id. Based upon this lack of progress and its refusal to provide

updated progress schedules, the court held that the Government was "justifiably insecure about the contract's timely completion." Id. (quoting Discount Co., 554 F.2d at 441).

The contracting officer in the present case was faced with an even more unequivocal indication that Remcon was not making progress than in either Discount Co. or State of Florida. Unlike the contractor in Discount Co., Remcon failed to conduct even "piddling" construction activity during those weeks. Moreover, even after the cure notice was issued due to Remcon's inactivity, work still did not commence. Unlike the contractor in State of Florida, there was no indication from Remcon that it would ever resume construction, and every indication was that Remcon would not resume work.

Consequently, the contracting officer in the present case was "justifiably insecure about the contract's timely completion" due to Remcon's failure to mobilize for the 2003 construction season. State of Florida v. United States, 81 F.3d at 1097. Indeed, here the contracting officer was faced with a contractor that absolutely refused to recommence work. Faced with such a situation, and in light of the contracting officer's responsibilities to the NPS and the public, the contracting officer was

unquestionably within his rights to issue a notice to cure and subsequently terminate the contract. Consequently, the contracting officer did not abuse his discretion in terminating the contract for default.

### 2. Remcon's Failure To Make Progress Cannot Be Excused

Remcon's failure to demonstrate adequate diligence in completing the project in a timely fashion cannot be excused by any alleged actions of the Government. This provides an independent ground for granting summary judgment to the Government.

Although, in some cases, delay caused by Government action may be a grounds for excuse, it must be the actual cause of the default. Preuss v. United States, 188 Ct. Cl. 469, 485, 412 F.2d 1293 (1969) (requiring proof that financial hardship caused by Government was actual cause of default). As demonstrated above, the contracting officer's concern regarding the timely completion of this project was caused by Remcon's failure to mobilize for the 2003 construction season. Thus, Remcon must prove that its failure to mobilize for the 2003 construction season was the fault of the Government. Remcon is unable to do so.

As Remcon's own correspondence illustrates, its failure to mobilize for the 2003 construction season was a tactic aimed at forcing the

Government to agree to ADR. On June 3, 2003, Remcon advised the United States that it would begin mobilizing to the site on June 9, 2003. A30; A32. This was confirmed by letter dated June 7, 2003. A32. Despite this assertion by Remcon that it was capable of mobilizing, it chose not to do so. Based upon these facts alone, Remcon is unable to prove that its failure to mobilize was actually caused by the United States.

## C. Remcon Violated The Disputes Clause

### 1. Violation Of The Disputes Clause Justified Termination For Default

In addition to the reasons previously discussed, the termination for default also was justified because Remcon failed to comply with the contract's disputes clause. The contract incorporated, by reference, the previously quoted FAR 52.233-1 clause, which is the standard default clause in Government contracts. A50-51. That clause requires the contractor to proceed diligently with performance of the contract, "pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the contracting officer." Id.

Courts have long held that a contractor's failure to proceed diligently pursuant to the disputes clause is a breach of the contract, justifying a

termination for default. See, e.g., Preuss v. United States, 188 Ct. Cl. 469, 484, 412 F.2d 1293 (1969); Stoeckert v. United States, 183 Ct. Cl. 152, 160-64, 391 F.2d 639 (1968). Thus, Remcon's failure to mobilize in the 2003 construction season and its assertion that it would not mobilize without "Owner/Contractor ADR Agreement" justified the termination for default.

In Stoeckert, 391 F.2d at 645, the Court of Claims affirmed a board of contract appeals decision that a default termination was justified by the contractor's refusal to continue work under the contract. That case involved a contract to install a quarry tile floor. Id. at 641. During installation, the contractor encountered difficulties obtaining a bond between the floor and tile that was acceptable to the Government. Id. at 643. When this resulted in the contractor being required to remove and replace a portion of the floor, he refused to perform the work unless the Government would direct an acceptable method for laying the floor and agree to pay for the additional work. Id. at 644. The Government refused his demands and the contractor continued to refuse to perform the work, leading to a termination for default. Id.

The Court of Claims upheld the default termination stating that "the termination of plaintiff's contract for default was proper if for no other reason than that he refused to follow the contracting officer's directive to remove and replace the floor." Id. at 645. The court reasoned that the contractor's refusal to perform the work due to his disagreement with the contracting officer justified the default termination because "such an election is simply not open to a Government contractor under the standard disputes clause." Id. at 645.

In Appeal of Howell Tool and Fabricating, Inc., ASBCA No. 47939, 96-1 BCA (CCH) ¶ 28,225 at 14-15 (Feb. 29, 1996), the Armed Services Board of Contract Appeals ("ASBCA") held that default termination was proper where a contractor informed the Government that progress under the contract had ceased and would not continue until a decision was rendered on a claim stemming from the project. The contractor alleged that certain contract modifications required an increase in the contract price. Id. After receiving notice from the contracting officer that the claim for an increase was denied, the contractor responded by informing the Government that it had stopped work upon the contract and would not continue until either the contract price was increased or its appeal had

been decided. Id. The contracting officer terminated the contract for default, citing the contractor's "manifestations of intent not to perform." Id. Upon appeal, the ASBCA held that the contractor's actions justified termination for breach of the disputes clause. Id.

Remcon's actions in this case are much like those of the contractor in Howell Tool. As in Howell Tool, Remcon "manifested an intent not to perform" by failing to mobilize for the 2003 construction season and refusing to proceed with the project until it received "Owner/Contractor ADR Agreement." See A37; A38; A39. This action justified the default termination because "such an election is simply not open to a Government contractor" under the contract's disputes clause. See Stoeckert, 391 F.2d at 645. For this reason alone summary judgment should be entered in favor of the United States.

### 2. Remcon's Violation Of The Disputes Clause Cannot Be Excused

Remcon's failure to proceed with the project pending resolution of its claims also cannot be excused. As Remcon's own communications make clear, its decision to not mobilize in the 2003 construction season stemmed from its desire that the Government agree to ADR. However, as we previously have demonstrated, pursuant to the disputes clause of the

contract, Remcon was not permitted to condition its continued performance on fulfillment of its demands.

An extreme example of a contractor's duty to perform under the disputes clause is Alliant Techsystems, Inc., Global Environmental Solutions Business Division v. United States. 178 F.3d 1260 (Fed. Cir. 1999). That case involved a contract to demilitarize bombs, which included an option allowing the Army to increase the number of bombs to be demilitarized. Id. at1264. When the Army sought to exercise that option, the contractor refused to perform the additional work, arguing that the Army had not properly exercised the option and that it was therefore not required to perform under the contract. Id.

The contractor filed suit in this Court seeking a declaration that it was not required to perform the work. Id. The Court ruled that the option clause required the contractor to perform the additional work. Id. The Federal Circuit reversed, ruling that the contractor was correct in its assertion that the option was not properly exercised. Id. at 1275. Nonetheless, the appellate court held that the contract's disputes clause obligated the contractor to perform the work. Id. at 1276. The court reasoned that "Alliant's obligations under the disputes clause are

independent of its obligations under the option's clause." Id. Thus, even a subsequent determination that the contracting officer wrongfully ordered the work did not free the contractor from its obligation under the disputes clause. Id.

As Alliant illustrates, whether or not Remcon was actually entitled to the remedy sought through ADR is immaterial for purposes of determining default. A Government contractor is required to continue diligent performance in the face of such disputes and failure to do so justifies a default termination. As in Alliant, regardless of whether this Court ultimately finds that any of Remcon's underlying claims have merit, any such finding would be irrelevant to the issue of default. Consequently, summary judgment should be entered in favor of the United States.

## CONCLUSION

For the foregoing reasons, defendant, the United States, respectfully requests that the Court grant summary judgment to the Government, dismissing Remcon's claims as they relate to the termination of Remcon's contract for default, and that the Court grant the Government such other and further relief as this Court deems just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

*s/Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
Assistant Director

*s/Richard P. Schroeder*
RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Attorneys for Defendant

OF COUNSEL

COLLEEN DULIN
U.S. Department of Interior
Office of the General Counsel
755 Parfet Street
Lakewood, CO 80215

June 24, 2005

Certificate of Filing

I hereby certify that on June 24, 2005, a copy of foregoing DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Richard P. Schroeder