**REMCON, Inc.**

P.O. Box 758
751 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-9188
Fax: 209/847-9189

RECEIVED
JUN 13 2003
DSC
Contracting Services

**SENT VIA FAX AND U.S. MAIL**

June 7, 2003

Mr. Rodney K. Keiscome
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

**Reference:** Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

**Subject:** Mobilization Notification

Dear Mr. Keiscome:

Reference is made to NPS letter of June 6, 2003 referencing a demand for project notification of mobilization.

In review of the contract specifications there is no requirement for issuance of any notification of re-mobilization to the project. In fact REMCON maintained equipment and supplies at the project location throughout the entire winter period. Removing only that equipment which could be used at other REMCON projects rather than charge the NPS for standby costs as a result of the NPS' project delays. The specifications require no notification for the movement of equipment and manpower on the project.

In addition your letter falsely represents statements that REMCON would mobilize on June 9. REMCON has never stated it would mobilize to the project on June 9, 2003. REMCON simply stated it would begin mobilizing to the site on June 9, 2003, and this mobilization process would take two weeks. REMCON is in control of its own mobilization process not the NPS. Additionally, this mobilization process may be interrupted by failures on the part of the NPS to adhere to the contract specifications.

Its clear from the NPS's most recent letters, that the NPS will continue to request documentation from REMCON for the sole purpose of trying to better your position once litigation begins. Your continued demand that REMCON adhere to requests which are not required within the contract specifications, is unwarranted.

Cordially,

For

Stephen B. Christensen
President

cc: D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, LLP
Richard A. Lewis, REMCON Board Member

SequoiaLetter108-sbc

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI 200Q
1443C8000010903

June 18, 2003

Stephen B. Christensen, President
Remcon, Inc
751 Wakefield Court
Oakdale, California 95361

Facsimile No.: 209/847-9189

Dear Mr. Christensen:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443C8000010903, Giant Forest, Sherman Tree Parking Area, SEKI 200Q

Subject: Mobilization Notification

Reference is made to the NPS letter of June 6, 2003, and the Remcon reply of June 7, 2003, (faxed June 9, 2003).

The NPS acknowledges Remcon's notification of mobilization and seeks clarification on contract requirements.

Remcon stated that there is no requirement for issuance of any notification of remobilization to the project. On the contrary, the NPS letter of June 6, 2003, references the two week notice requirement of the general provisions, I.91 Seasonal Shutdown. This contract requirement states "The Contractor shall give the Contracting Officer at least two weeks notice prior to the anticipated resumption of work." This clear contract requirement, plus your statement (to four people during the weekly progress meeting of June 3) that you would provide the written notice was the basis for the NPS seeking clarification on Remcon's mobilization intent.

Remcon's letter of June 7, 2003, states that:

> Remcon simply stated it would begin mobilizing to the site on June 9, 2003, and this mobilization process would take two weeks. Remcon is in control of its own mobilization process and not the NPS.

The same provision, I.91 Seasonal Shutdown, states "The actual date that work is resumed is subject to the approval of the Contracting Officer." Again, the NPS seeks to follow the contract and therefore understands Remcon's letter of June 7, 2003, to be the notice prior to the anticipated resumption of work. It is noted that Remcon did not comply with the contract requirement for two weeks notice prior to the anticipated resumption of work – however the NPS grants approval to Remcon's mobilization starting June 9, 2003, as per Mr. Christensen's statements of June 3, 2003, and Remcon's letter of June 7, 2003.

A final clarification is that Remcon's letter of June 7, 2003, states that "In fact Remcon maintained equipment supplies at the project location throughout the entire winter period." The NPS acknowledges that a small amo of supplies were left in the staging area over the winter. Still, no office trailer, no truck, no loader, no back-hoe, no excavator, or any other piece of construction equipment was at the project during the winter. Nor has any piece of equipment been mobilized to the project during the first week (June 9 to 15, 2003) of your mobilization period.

In conclusion, Remcon has notified the NPS verbally and in writing that it is mobilizing. By copy of this letter the NPS approves Remcon's mobilization even though Remcon failed to provide the contract required two week notice.

Sincerely,

Edward L. Tafoya 6/18/2003

Edward L. Tafoya
Contracting Officer

cc:
Mr. D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, 1000 G Street, 3rd Floor, P.O. Box 1319, Sacramento, California 95812-1319, Telephone: 916/446-2300, FAX: 916/503-4000

Mr. Michael W. Flak, Bond Claim Specialist, Great American Insurance Company, P.O. Box 3158, Englewood, Colorado 80155, Telephone: 303/804-0409, FAX: 303/804-0402

United States Department of the Interior
NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

RECEIVED
JUL 14 2003

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443C8000010903

July 8, 2003

Stephen B. Christensen, President
Remcon, Inc.
P.O. Box 758
751 Wakefield Court
Oakdale, California 95361

Facsimile No.: 209/847-9189

Dear Mr. Christensen:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443C8000010903, Giant Forest, Sherman Tree Parking Area, SEKI 200Q

Subject: Remcon Letters dated July 3, 2003, Subjects: Non-Conformance Review of Contractor's Schedule and Mobilization Concerns

This is in response to your letters dated July 3, 2003, which purports to (1) reject the NPS July 2, 2003, letter regarding your schedule and (2) asserts that the "NPS is currently delaying the project by failing to address Activity 20 of the contract schedule."

(1) I believe that Remcon, Inc. is confused about the authority of the NPS as it relates to the contractor's proposed schedule and the approval and/or rejection of that schedule. The July 2, 2003, letter clearly pointed out deficiencies in Remcon's schedule. As you are aware, this review is discussed in the contract under Section 01320, Project Schedule and Monthly Inspections and Section I.74, 52.236-15 Schedules for Construction Contracts. Remcon's schedule is deficient and must be corrected and resubmitted.

(2) Remcon Inc. has inserted "Activity 20" in its proposed construction schedule. This item is Alternative Disputes Resolution of outstanding claims and disputes by Remcon, Inc.. This item is not an appropriate matter for the construction schedule. You are reminded that the contract performance time is running and Remcon, Inc. is required to continue performance of the contract work even if there is a disagreement between the parties. NPS is eager and willing to attempt to resolve any claims or disputes. However, as of this writing, Remcon, Inc. has failed to follow its own mobilization schedule and return to work. You are reminded that the contract performance time is running and Remcon, Inc. must complete all contract work by the current completion date of August 28, 2003.

Your attorney has been advised that the NPS intends to meet with the contractor following receipt of the survey which is currently being performed under separate contract. (This is the survey which was required under your contract but Remcon, Inc. failed to perform.) I was informed today that the survey is approximately 90% complete. You and your attorney will be provided a copy of the survey as soon as it is provided to me.

In the interim, I urge Remcon, Inc. to incur no further delay in returning to complete the contract work.

You are again reminded that the Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

Sincerely,

Rodney K. Keiscome
Contracting Officer

cc:
Mr. D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld LLP, 1000 G Street, 3rd Floor, P.O. Box 1319, Sacramento, California 95812-1319 via facsimile no. (916) 503-4000

Mr. Mick Flak, Bond Claim Specialist, Great American Insurance Companies, P.O. Box 3158, Englewood, Colorado 80155 via facsimile no. (303) 804-0402

**REMCON, Inc.**

P.O. Box 758
751 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-9166
Fax: 209/847-9189

SENT VIA FAX AND U.S. MAIL

June 28, 2003

Mr. Rodney K. Keiscome
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

Reference: Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Site Deficiencies

Dear Mr. Keiscome:

Reference is made to the NPS letter of June 20, 2003 regarding site deficiencies.

I am in receipt of Stephen Giadone's, NPS' On-site Representative, letter regarding site deficiencies at the Sherman Tree Parking Project. As stated in the weekly meeting, one of REMCON's subcontractor's, WSC, mobilized to the project site without notifying REMCON. Their primary concern was the installation of the windows on the Upper Sherman Comfort Station. This has been a concern of REMCON since late last year. The window installation has been completed and WSC is no longer on the project site.

Work on the project, including all of the issues addressed in Mr. Giadone's letter are currently being delayed by the NPS' failure to complete critical path Activity 20, of REMCON's approved construction schedule. As soon as this critical path item of work as been addressed, REMCON will be able to proceed with work as detailed in the schedule.

Cordially,

Stephen B. Christensen
President

cc: D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, LLP
Richard A. Lewis, REMCON Board Member

SequoiaLetter118-sbc

# REMCON, Inc.

P.O. Box 758
751 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-9186
Fax: 209/847-9189

Sent Via Fax & U.S. Mail

July 03, 2003

Mr. Rodney K. Keiscome
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

**Reference:** Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

**Subject:** Mobilization Concerns

Dear Mr. Keiscome:

Reference is made to the NPS letter of July 03, 2003 regarding mobilization concerns.

Currently the NPS is delaying action on the Sherman Tree Parking Project. REMCON's construction schedule for the 2003 season, submitted and received by the NPS on June 10, 2003, and accepted and approved by the NPS on July 17, by virtue of the NPS' own contract specifications, clearly shows that Activity 20 to be critical path work, yet no action has been taken by the NPS. If the NPS did not concur with REMCON's submitted contract schedule then the NPS should of complied with your own contract specifications.

Your immediate attention to this matter is required so as not to further delay the project and increase costs, which are the responsibility of the NPS. Valuable time is being lost in the NPS failing to comply with the approved schedule.

Cordially,

Stephen B. Christensen
President

cc: D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, LLP
Richard A. Lewis, REMCON Board Member

SEQUOIA AND KINGS CANYON NATIONAL PARKS
SHERMAN TREE PARKING PROJECT
CONTRACT NO. 1443C8000010903

| ID | Activity No. | Task Name | Duration | Start |
|---|---|---|---|---|
| 1 | 10 | CONSTRUCTION SEASON 2003 | 0 days | Mon 6/9/03 |
| 2 | 20 | OWNER/CONTRACTOR ADR AGREEMENT | 0 days | Mon 6/9/03 |
| 3 | 30 | MOBILIZATION (Extra Work-Related to Owner Delays) | 10 days | Mon 6/9/03 |
| 4 | 40 | UPGRADE SWPPP (Extra Work-Related to Owner Delays) | 5 days | Mon 6/16/03 |
| 5 | 50 | REMOVE WINTERIZATION (Extra Work-Related to Owner Delays) | 3 days | Wed 6/18/03 |
| 6 | | | | |
| 7 | 60 | UPPER SHERMAN ROAD & PARKING AREA | 0 days | Fri 6/20/03 |
| 8 | 70 | USAR-COMPL WATER SYSTEM & TEST | 5 days | Mon 6/23/03 |
| 9 | 80 | USAR/USPA STORM DRAIN (INSPECT & CORRECT) | 5 days | Mon 6/30/03 |
| 10 | 90 | USAR/USPA-FINAL GRADING | 5 days | Tue 7/8/03 |
| 11 | 100 | USPA-COMPL STONE CURBING | 3 days | Thu 7/10/03 |
| 12 | 110 | USPA-INSTALL OWNER FUNISHED AGG. BASE | 2 days | Tue 7/15/03 |
| 13 | 120 | USPA-INSTALL STONE PAVERS | 12 days | Thu 7/17/03 |
| 14 | 130 | USPA-CONST STAIRS/ROCK WORK | 10 days | Tue 7/15/03 |
| 15 | 140 | USPA-COMPL PATHWAYS/TIMBER EDGING | 10 days | Fri 8/1/03 |
| 16 | 150 | USPA-HAUL/PLACE OWNER FURNISHED REVETMENT | 6 days | Tue 7/15/03 |
| 17 | 160 | USPA-STONE REVETMENT/LOGS | 6 days | Tue 7/15/03 |
| 18 | 170 | USPA-COMPL LANDSCAPING WORK | 10 days | Wed 7/23/03 |
| 19 | 180 | USPA-BOARDWALKS FOUNDATIONS | 5 days | Tue 7/15/03 |
| 20 | 190 | USPA-INSTALL BOARDWALKS | 14 days | Tue 7/22/03 |
| 21 | 200 | USAR/USPA-ASPHALT PAVING | 5 days | Fri 8/15/03 |
| 22 | 210 | USAR/USPA-STRIPING & SIGNS | 3 days | Fri 8/22/03 |
| 23 | 220 | USAR/USPA-INCIDENTAL ITEMS/PUNCHLIST | 5 days | Mon 8/25/03 |
| 24 | 230 | USAR/USPA-SUBSTANTIAL COMPLETION | 0 days | Fri 8/29/03 |
| 25 | | | | |




Project: SHERMAN09
Date: Thu 6/9/05

Task
Critical Task
Progress
Milestone
Summary
Rolled Up Task
Rolled Up Critical Task
Rolled Up Milestone
Rolled Up Progress
Split
External Tasks
Project Summary
Group By Summary

CONSTRUCTION SCHEDULE 2003 & 2004
CONTRACTOR: REMCON





39

United States Department of the Interior
NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443C8000010903

July 24, 2003

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Stephen B. Christensen, President
Remcon, Inc.
P.O. Box 758
751 Wakefield Court
Oakdale, California 95361

Facsimile No.: (209) 847-9189

Dear Mr. Christensen:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443C8000010903, Giant Forest, Sherman Tree Parking Area, SEKI 200Q

Subject: Cure Notice

This letter will serve as notice that the government considers your failure to make progress on the work a condition that is endangering performance of the contract.

The notice to proceed was effective June 11, 2001, and the extended contract completion date is August 24, 2003. As of July 22, 2003, you have completed only approximately 53% of the contract work and approximately 95% of contract time has expired.

Remcon has failed to mobilize for the 2003 construction season. Weather conditions have been favorable for construction for almost three months now. Remcon provided the NPS written and verbal notice that it would mobilize starting June 9, 2003. Contrary to its statements, Remcon has not mobilized and has not even secured the site by maintaining contract required Storm Water Pollution Prevention and barriers and signs to protect existing facilities and the public.

Remcon alleged on June 28, 2003, that they will not mobilize without "Owner/Contractor ADR [Alternative dispute Resolution] Agreement". The NPS has advised Remcon on

several occasions that the contract requires Remcon to proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

Remcon has failed to provide a contract compliant schedule or to provide required schedule updates and revisions. Reviews by the NPS have consistently stated that for the schedule to be accepted it must comply with the requirements of specification section 01320, Project Schedule and Monthly Inspections. Despite repeated requests by the NPS Remcon has only submitted formal schedules on; June 12, 2001 (Unacceptable), July 12, 2001 (Acceptable with notation for review comments that "Acceptable provided you re-submit addressing the above concerns" - with no-resubmittal by Remcon); February 6, 2002 (unacceptable); and June 8, 2003, (unacceptable).

Remcon has not provided schedule updates as required preceding progress payment requests. These updates are necessary to tell the NPS what Remcon plans to work on, and any anticipated conditions which may delay the work. The NPS believes there is a strong link between Remcon's failures to meet the project schedule requirements, failure to manage to the project schedule, and Remcon's failure to complete the project.

Remcon has not provided required submittals. NPS letter of February 24, 2002, directed Remcon to provide all submittals required for completion of the contract work. Since then, only one submittal (a gate) has been provided by Remcon. The contract requires all submittals at least 30 days before need for approval. Remcon's failure to provide key submittals on sample panels, masonry work, boulders, fencing, structural steel, and testing work means Remcon is delaying the completion of the project.

Remcon has failed to provide contract required surveys and quantity surveys. Therefore the NPS has undertaken these tasks to assess conformance of work by Remcon and actual quantities of unit price work. Specification section 01720, Field Engineering requires Remcon layout the work accurately and requires that quantity surveys be used in computing the quantities of work performed.

The survey results establish that Remcon has constructed significant portions of the project not in conformance with the contract. Under separate cover the NPS will be providing Remcon with a copy of the survey. Further, under the contract clause E.1, Inspection of Construction, Remcon is advised that the NPS shall pursue correction of any non-conforming work.

Quantity surveys will be used to correct contract quantities (certified by Remcon) by computing the quantities of work performed and the actual construction completed and in place. This information will be provided under separate cover.

The NPS believes that Remcon is not properly paying its suppliers and subcontractors. The contract requires these payments be made in accordance with Clause I.56, Payments Under Fixed-Price Construction Contracts, which states "Payments to subcontractors and

suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification". Remcon has certified this in each pay request, however no less then 12 suppliers and subcontractors have filed Miller Act notices alleging nonpayment by Remcon. Further, your surety has indicated to the NPS that it has been forced to pay a substantial amount of money to suppliers and subcontractors because Remcon has failed to. Remcon's failure to pay suppliers and subcontractors contributed to Remcon's failure to complete the project.

Each of the above failings on the part of Remcon is serious and is sufficient basis to terminate you for default. You are hereby allowed 10 days from receipt of this notice to submit to this office a written plan on how you intend to complete the contract by August 24, 2003. Unless an acceptable plan is received within the 10-day time frame, the Government may terminate your contract for default under contract clause No. L81, Default.

If your contract is terminated for default, you and your surety will be liable for any excess reprocurement costs. Your attention is further directed to your contractual liabilities in the event the contract is terminated for default. You are invited to present any valid explanations in accordance with the terms of the contract for your failure to perform. Your failure to present such an explanation may be taken as and admission that no valid explanation exists.

Sincerely,

Rodney K. Keiscome
Contracting Officer

cc:
Mr. D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld LLP, 1000 G Street, 3rd Floor, P.O. Box 1319, Sacramento, California 95812-1319 via facsimile no. (916) 503-4000

Mr. Mick Flak, Bond Claim Specialist, Great American Insurance Companies, P.O. Box 3158, Englewood, Colorado 80155 via facsimile no. (303) 804-0402

bcc:
Regional Dir., Pacific West Region
Supt., SEKI
DSC-PM, Giller
DSC-PDS, Cody
SEKI, Jack Vance
DSC-FDC, Construction, DeOcampo

DSC-CS:Giller/Lang:rkk:07/24/03:2961: CURE Notice

(42)

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

AUG 04 2003

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443C8000010903

July 29, 2003

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Stephen B. Christensen, President
Remcon, Inc.
P.O. Box 758
751 Wakefield Court
Oakdale, California 95361

Facsimile No.: (209) 847-9189

Dear Mr. Christensen:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443C8000010903, Giant Forest, Sherman Tree Parking Area, SEKI 200Q

Subject: Mobilization and Lack of Accepted Schedule from Remcon, Inc.

We are in receipt of your June 28, 2003, letter asserting that you are ready to mobilize, but that you are prevented from doing so because of NPS' failure to enter into Alternative Dispute Resolution (ADR), which you assert is a critical path activity in an approved schedule.

First, ADR, which you have labeled Activity 20, and which you contend is on the critical path preceding mobilization, does not belong in a project schedule. We previously advised you of this in our letter of July 8, 2003. In accordance with Specification Section 01320, Part 1.4 Project Schedule, Subpart A. Schedule Development, Paragraph 2, the Contractor's project schedule "shall consist of procurement activities… and construction activities." ADR is neither a procurement or construction activity, and is therefore meaningless when inserted into a schedule or revision. Further, we have reminded you repeatedly that the Dispute Clause, FAR 52.233-01, requires that you proceed diligently with performance of the contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer. Therefore, you have not been prevented from mobilizing due to a lack of ADR.

Second, contrary to your assertion, the schedule to which you refer – "Remcon Revision 2," dated June 9, 2003—is not "approved." At best, a schedule is "accepted." Your attention is directed to Specification Section 01330, Part 1.3H, Paragraph 4d and Specification Section 01320, Part 1.4, Paragraph B.4. This means that the progress schedule is your responsibility. You are to provide

an acceptable progress schedule to the Government, and then update it on a monthly basis. You are also required to revise the schedule to represent the actual prosecution and progress of the work pursuant to Specification Section 01320, Parts 1.5 and 1.6. You have not fulfilled any of these responsibilities.

Your original project schedule, submitted on July 12, 2001, as Transmittal 24, was returned to you "ACCEPTED W/ NOTATION," providing that Remcon resubmit and addresses the concerns [review notations]. The notations stated that your schedule should include float time with early and late start and finish dates; that the completion date should be as addressed pursuant to Specification Section 01320, Parts 1.4.A.1 and 2, which require that you need to correct resource loading and provide time slot information for three items of work (BI 129, 130, and 131). The NPS further stated, "**Your Progress Schedule is acceptable provided you re-submit addressing the above concerns.**" Remcon did not re-submit this schedule, and therefore has never had a contract-compliant schedule.

This fact is borne out in NPS 'statements in subsequent schedule review letters, as follows:

> March 4, 2002: "The submitted schedule is still not in compliance with the contract requirements."
>
> April 3, 2003: "I have reviewed your schedule of April 3, 2003, and it is still not in compliance with the contract requirements."
>
> July 2, 2003: "This transmittal is still not acceptable."

Therefore, you have no approved schedule. Furthermore, you need to remobilize at once and promptly submit an acceptable schedule in accordance with the above. You are hereby advised that the Government will access the required liquidated damages of $550 for each calendar day of delay until the work is completed or accepted pursuant to Clause F.1, Deliveries or Performance.

A cure notice letter was issued to you on July 24, 2003. Within that cure notice you were again invited to present any valid explanations in accordance with the terms of the contract for your failure to perform. Your failure to present such an explanation may be taken as and admission that no valid explanation exists.

Sincerely,

Rodney K. Keiscome
Contracting Officer

cc:
Mr. D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld LLP, 1000 G Street, 3rd Floor, P.O. Box 1319, Sacramento, California 95812-1319 via facsimile no. (916) 503-4000

Mr. Mick Flak, Bond Claim Specialist, Great American Insurance Companies, P.O. Box 3158, Englewood, Colorado 80155 via facsimile no. (303) 804-0402

**REMCON, Inc.**

P.O. Box 758
751 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-9188
Fax: 209/847-9189

AUG RC

Sent Via Fax & U.S. Mail

July 31, 2003

Mr. Rodney K. Keiscome
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

**Reference:** Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

**Subject:** Notice to Cure, Request for Time Extension

Dear Mr. Keiscome:

Reference is made to the NPS letter of July 24, 2003 regarding the Notice to Cure.

At this time REMCON formally requests a time extension to August 11, 2003 to respond to the NPS letter. I have been out of the office for the past two weeks while my mother had open-heart surgery and have not had to opportunity to discuss this matter in depth with REMCON's attorney and Great American Insurance Company, REMCON's bonding company. I have contacted both and responses are forth coming.

Please advise by Friday, August 1, 2003 if this time extension is not approved.

Cordially,

Stephen B. Christensen
President

cc: D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, LLP
Michael W. Flak, Great American Insurance Company

SequoiaLetter123-sbc

United States Department of the Interior
NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443C8000010903

**August 4, 2003**

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Stephen B. Christensen, President
Remcon, Inc.
P.O. Box 758
751 Wakefield Court
Oakdale, California 95361

Facsimile No.: (209) 847-9189

Dear Mr. Christensen:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443C8000010903, Giant Forest, Sherman Tree Parking Area, SEKI 200Q

Subject: Cure Notice Extension

This acknowledges receipt of your letter of July 31, 2003, wherein you request a time extension to August 11, 2003, to respond to the Cure Notice of July 24, 2003. Your time extension request is hereby granted.

You are reminded that if your contract is terminated for default, you and your surety will be held liable for any excess reprocurement costs. Your attention is further directed to your contractual liabilities in the event the contract is terminated for default. Accordingly, you are invited to present any valid explanations in accordance with the terms of the contract for your failure to perform by the extension date of August 11, 2003, granted above. Your failure to present such an explanation may be taken as and admission that no valid explanation exists.

Sincerely,

Rodney K. Keiscome
Contracting Officer

| SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NO. 1443N8000010903 | 2. TYPE OF SOLICITATION [ ] SEALED BID (IFB) [X] NEGOTIATED (RFP) | 3. DATE ISSUED 02/27/01 | PAGE OF PAGES |
|---|---|---|---|---|

IMPORTANT - The "offer" section on the reverse must be fully completed by the offeror.

| 4. CONTRACT NO. 1443C8000010903 | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. SEKI-200Q |
|---|---|---|

| 7. ISSUED BY CODE | 8. ADDRESS OFFER TO |
|---|---|
| National Park Service<br>Denver Service Center<br>12795 W. Alameda Parkway, Room 390<br>P.O. Box 25287<br>Denver, Colorado 80225-0287 | National Park Service<br>Denver Service Center<br>12795 W. Alameda Parkway, Room 390<br>P.O. Box 25287<br>Denver, Colorado 80225-0287 |

| FOR INFORMATION CALL: | A. NAME Terry Lang | B. TELEPHONE NO. (Include area code) (NO COLLECT CALLS) 303/969-2961 (terry_lang@nps.gov) |
|---|---|---|

## SOLICITATION

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date)*

Sequoia and Kings Canyon National Parks
Sherman Tree Parking
Tulare County, California

Estimated Price Range: $5,000,000 to $10,000,000

11. The Contractor shall begin performance within 15 calendar days and complete it within 792 calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [X] mandatory, [ ] negotiable. *(See* Section F *)*

| 12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in item 12B.)* [X] YES [ ] NO | 12B. CALENDAR DAYS |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 1 copies to perform the work required are due at the place specified in Item 8 by 4:00pm *(hour)* local time 03/29/01 *(date)*. If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

**OFFER** *(Must be fully completed by offeror)*

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*

Remcon Inc.
P.O. Box 758
751 Wakefield Court
Oakdale, CA 95361

15. TELEPHONE NO. *(Include area code)*
(209) 647-9186

16. REMITTANCE ADDRESS *(Include only if different than Item 14)*
N/A

CODE FACILITY CODE

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS ▶ SEE CONTRACT PRICE SCHEDULE

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS
*(The offeror acknowledges receipt of amendments to the solicitation - give number and date of each)*

| AMENDMENT NO. | 1 | 2 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 3/12/01 | 3/15/01 | | | | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*
Stephen B. Christensen - President

20B. SIGNATURE
[signature]

20C. OFFER DATE
3/19/01

**AWARD** *(To be completed by Government)*

21. ITEMS ACCEPTED:

Base Contract Bid Items 1 through 128; RFP and Bidding Requirements, Contract Forms and Conditions of the Contract issued February 27, 2001; Amendments 1, 2 & 3; Initial Proposal dated March 19, 2001 and Final Proposal Revision dated April 19, 2001

22. AMOUNT
$7,121,636.00

23. ACCOUNTING AND APPROPRIATION DATA
8550-0197-477

24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ ITEM

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO
☐ 10 U.S.C. 2304(c) ( ) ☐ 41 U.S.C. 253(c) ( )

26. ADMINISTERED BY CODE

National Park Service
Denver Service Center, CS
12795 W. Alameda Parkway
P.O. Box 25287, Denver, CO 80225-0287

27. PAYMENT WILL BE MADE BY

Same as block 26

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

☐ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications and specifications incorporated by reference in or attached to this contract.

☒ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation is hearby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*

31A. NAME OF CONTRACTING OFFICER *(Type or print)*
Rodney K. Keiscome

30B. SIGNATURE

30C. DATE

31B. UNITED STATES OF AMERICA
BY [signature: Rod Keiscome]

31C. AWARD DATE
5/9/01

STANDARD FORM 1442 BACK (REV. 4-85)

## SECTION F – DELIVERIES OR PERFORMANCE

### F.1 52.211-12 LIQUIDATED DAMAGES--CONSTRUCTION SEPTEMBER 2000

(a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $550.00 for each calendar day of delay until the work is completed or accepted.

(b) If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

### F.2 DS52.211-10 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (LAST SENTENCE OF BASIC CLAUSE DELETED BY DSC, OCT 96) APRIL 1984

The Contractor shall be required to (a) commence work under this contract within 15 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use within 792 calendar days from date stated in the notice to proceed. However, the time for completion of the work will be reduced by one calendar day for each day in excess of 15 calendar days (or any extension thereof) elapsing between the Contractor's receipt of and return of properly executed contract, and performance and payment bonds.

(h) Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (g) of this clause, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(i) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (e), (g), or (l) of this clause, except that if the Contractor failed to submit the termination settlement proposal or request for equitable adjustment within the time provided in paragraph (e) or (l), respectively, and failed to request a time extension, there is no right of appeal.

(k) In arriving at the amount due the Contractor under this clause, there shall be deducted--

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(l) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(m)

(1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App. 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(n) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

I.81 52.249-10 DEFAULT (FIXED-PRICE CONSTRUCTION) APRIL 1984

(a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. In this event, the Government may take over the work and complete it by contract or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the Government in completing the work.

(b) The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if--

(1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include--

(i) Acts of God or of the public enemy,

(ii) Acts of the Government in either its sovereign or contractual capacity,

(iii) Acts of another Contractor in the performance of a contract with the Government,

(iv) Fires,

(v) Floods,

(vi) Epidemics,

(vii) Quarantine restrictions,

(viii) Strikes,

(ix) Freight embargoes,

(x) Unusually severe weather, or

(xi) Delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers; and

(2) The Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and the extent of delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action, the time for completing the work shall be extended. The findings of the Contracting Officer shall be final and conclusive on the parties, but subject to appeal under the Disputes clause.

(c) If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of the Government.

(d) The rights and remedies of the Government in this clause are in addition to any other rights and remedies provided by law or under this contract.

| | | | |
| --- | --- | --- | --- |
| .82 | DS52.215-08 | ORDER OF PRECEDENCE - UNIFORM CONTRACT FORMAT (PARA D MODIFIED AND F&G ADDED BY DSC 4/98) | OCTOBER 1997 |

Any inconsistency in this solicitation or contract shall be resolved by giving precedence in the following order:

(a) The Schedule (excluding the specifications).

(b) Representations and other instructions.

(c) Contract clauses.

(d) Other documents, exhibits, and attachments (excluding specifications, drawings, and supplemental reports).

(e) The specifications.

(f) The drawings.

(g) Supplemental reports.

paid within 30 days of becoming due. The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraph (b) of this clause, and then at the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

(b) Amounts shall be due at the earliest of the following dates--

(1) The date fixed under this contract.

(2) The date of the first written demand for payment consistent with this contract, including any demand resulting from a default termination.

(3) The date the Government transmits to the Contractor a proposed supplemental agreement to confirm completed negotiations establishing the amount of debt.

(4) If this contract provides for revision of prices, the date of written notice to the Contractor stating the amount of refund payable in connection with a pricing proposal or a negotiated pricing agreement not confirmed by contract modification.

(c) The interest charge made under this clause may be reduced under the procedures prescribed in 32.614-2 of the Federal Acquisition Regulation in effect on the date of this contract.

## I.58 52.232-23 ASSIGNMENT OF CLAIMS JANUARY 1986

(a) The Contractor, under the Assignment of Claims Act, as amended, 31 U.S.C. 3727, 41 U.S.C. 15 (hereafter referred to as "the Act"), may assign its rights to be paid amounts due or to become due as a result of the performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency. The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence.

(b) Any assignment or reassignment authorized under the Act and this clause shall cover all unpaid amounts payable under this contract, and shall not be made to more than one party, except that an assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract.

(c) The Contractor shall not furnish or disclose to any assignee under this contract any classified document (including this contract) or information related to work under this contract until the Contracting Officer authorizes such action in writing.

## I.59 52.233-01 DISPUTES DECEMBER 1998

(a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph (d)(2) of this clause. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)

(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

(2)

(i) The Contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of
the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use alternative dispute resolution (ADR). If the Contractor refuses an offer for ADR, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the offer.

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment. With regard to claims having defective certifications, as defined in FAR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

I.60 52.233-03 PROTEST AFTER AWARD AUGUST 1996

(a) Upon receipt of a notice of protest (as defined in FAR 33.101) or a determination that a protest is likely (see FAR 33.102(d)), the Contracting Officer may, by written order to the Contractor, direct the Contractor to stop performance of the work called for by this contract. The order shall be specifically identified as a stop-work order issued under this clause. Upon receipt of the order, the Contractor shall immediately comply with its terms and take all reasonable steps to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage. Upon receipt of the final decision in the protest, the Contracting Officer shall either--

(1) Cancel the stop-work order; or

(2) Terminate the work covered by the order as provided in the Default, or the Termination for Convenience of the Government, clause of this contract.

(b) If a stop-work order issued under this clause is canceled either before or after a final decision in the protest, the Contractor shall resume work. The Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing, accordingly, if--

(1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract; and

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
Page 1 of 3

2. AMENDMENT/MODIFICATION NO.: 0007
3. EFFECTIVE DATE:
4. REQUISITION/PURCHASE REQ. NO.:
5. PROJECT NO. *(If applicable)*: SEKI-200Q

6. ISSUED BY — CODE 2081
DSC - CS - Contracting Services Group
National Park Service, P.O. Box 25287, 12795 W. Alameda Parkway, Attn: Terry Leng
Denver, CO 80225

7. ADMINISTERED BY *(If other than Item 6)* — CODE

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and Zip Code)*

Remcon Inc.
751 Wakefield Court
Oakdale, CA 95361

CODE — FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.
9B. DATED *(SEE ITEM 11)*
(X) 10A. MODIFICATION OF CONTRACT/ORDER NO. C8000010903
(X) 10B. DATED *(SEE ITEM 13)* 05/08/2001

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
See Line Item Detail

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

CHECK ONE

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

☑ C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
Changes, FAR Clause 52.243-04

☐ D. OTHER *(Specify type of modification and authority)*

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 3 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Sequoia and Kings Canyon National Parks, California
Giant Forest, Sherman Tree Parking
SEKI-200Q

SEE ATTACHED CHANGES

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER *(Type or print)*

16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*
Rodney K. Kalacoma

15B. CONTRACTOR/OFFEROR
*(Signature of person authorized to sign)*

15C. DATE SIGNED

16B. United States of America
BY
*(Signature of Contracting Officer)*

16C. DATE SIGNED

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

511967

| Line Item Summary | Document Number C8000010903/0007 | Title SEKI-200Q | Page 2 of 3 |
|---|---|---|---|

Total Funding: $5,258,003.14

FYs Fund Budget Org Sub Object Class Sub Program Cost Org Sub Proj/Job No. Sub Reporting Category

See Line Item(s)

Division Closed FYs Cancelled Fund

| Line Item Number | Description | Delivery Date (Start date to End date) | Quantity | Unit of Issue | Unit Price | Total Cost |
|---|---|---|---|---|---|---|
| 0001 | Sequoia and Kings Canyon National Parks, California, Sherman Tree Parking Area, SEKI-200Q<br>Change in Delivery Date, Funding, Unit Price | 05/30/2003 | 0.00 | ls | ($2,743,771.14) | ($2,743,771.14) |

Funding Information:
2003 - - - 8550 - - - - 477 - - - 0197 - - - - - -
-2,743,771.14

| | |
|---|---|
| Previous Total: | $8,001,774.28 |
| Modification Total: | ($2,743,771.14) |
| Grand Total: (Includes Discounts) | $5,258,003.14 |

511968

| Address Detail | Title | Document Number | Page |
|---|---|---|---|
| | SEKI-200Q | CB000010903/0007 | 3 of 3 |

## Shipping Addresses

| Code | Detail |
|---|---|
| 0001 | Org: DSC-PM<br>Addr: NPS DSC-PM<br>12795 W. ALAMEDA PKWY<br><br>LAKEWOOD CO 80228<br>Attn: Michael Giller, Project Manager<br>Phone: (303) 969-2007 ext.<br>Fax: (303) 969-2238 ext. |

## Invoice Addresses

| Code | Detail |
|---|---|
| 0001 | Org: DSC - CS - Contracting Services Group<br>Addr: National Park Service, P.O. Box 25287<br>12795 W. Alameda Parkway, Attn: Terry Lang<br><br>Denver CO 80225<br>Attn: Terry Lang, Contract Specialist<br>Phone: (303) 969-2961 ext.<br>Fax: (303) 969-2040 ext. |

511969

This Modification 7 confirms agreement between the parties to delete all remaining contract work associated with the Lower Sherman Tree.

**VARIOUS PRICE ITEMS: DELETION OF WORK AT LOWER SHERMAN TREE**
Delete work in the contract documents associated with Lower Sherman Tree.

DEDUCT: ($2,743,771,14)

Except as modified above, all work shall be performed in accordance with the provisions of the contract where applicable as determined by the Contracting Officer or as otherwise directed by the Contracting Officer.

The deletions are as follows:

| Item No. | Original Est Quantity | Revised Est Quantity | Item Description | Unit Price | Original Amount | Amount of Decrease | Revised Amount |
|---|---|---|---|---|---|---|---|
| 1 | 1 LS | 1 LS | Upper & Lower Sherman Tree Comfort Station & Wayside Kiosk | LS | $830,000.00 | $311,250.00 | $518,750.00 |
| 2 | 4987 LF | 4011 LF | Construction Fencing | $5.00 | $24,935.00 | $4,880.00 | $20,055.00 |
| 3 | 182 EA | 121 EA | Tree Trunk Protection | $100.00 | $18,200.00 | $6,100.00 | $12,100.00 |
| 4 | 493 LF | 0 LF | Tree Barricade | $25.00 | $12,325.00 | $12,325.00 | $0.00 |
| 5 | 1 LS | 0 LS | Removal of Restroom Building | LS | $15,000.00 | $15,000.00 | $0.00 |
| 7 | 155627 SF | 58421 SF | Remove Asphalt Paving | $0.50 | $77,813.50 | $48,603.00 | $29,210.50 |
| 8 | 180 SF | 0 SF | Remove Concrete Paving | $1.50 | $270.00 | $270.00 | $0.00 |
| 9 | 213 LF | 0 LF | Remove Concrete Curb & Pan | $2.50 | $532.50 | $532.50 | $0.00 |
| 10 | 2575 LF | 0 LF | Remove Asphalt Curb - Single | $1.64 | $4,223.00 | $4,223.00 | $0.00 |
| 11 | 426 LF | 0 LF | Remove Asphalt Curb - Double | $1.00 | $426.00 | $426.00 | $0.00 |
| 12 | 144 SF | 0 SF | Remove Wooden Steps and Landing | $3.00 | $432.00 | $432.00 | $0.00 |
| 13 | 116 LF | 48 LF | Saw Cutting Asphalt | $6.00 | $696.00 | $408.00 | $288.00 |
| 14 | 34 EA | 6 EA | Remove Signs | $85.00 | $2,890.00 | $2,380.00 | $510.00 |
| 15 | 1136 LF | 0 LF | Remove & Salvage Split Rail Fence | $10.00 | $11,360.00 | $11,360.00 | $0.00 |
| 16 | 8 EA | 0 EA | Remove & Salvage Trash Receptacles | $85.00 | $680.00 | $680.00 | $0.00 |
| 17 | 53 EA | 0 EA | Remove & Salvage Boulders | $60.00 | $3,180.00 | $3,180.00 | $0.00 |
| 18 | 1 LS | 0 LS | Abandon Septic Tank | LS | $2,500.00 | $2,500.00 | $0.00 |
| 19 | 1 LS | 0 LS | Remove Electrical Transformer Pad | LS | $500.00 | $500.00 | $0.00 |
| 20 | 75 LF | 0 LF | Remove & Salvage Stone Wall - 2' Ht | $60.00 | $4,500.00 | $4,500.00 | $0.00 |
| 21 | 71 LF | 0 LF | Remove Culverts | $60.00 | $4,260.00 | $4,260.00 | $0.00 |
| 22 | 278 LF | 0 LF | Remove & Salvage Stone Edge | $9.00 | $2,502.00 | $2,502.00 | $0.00 |
| 23 | 1 EA | 0 EA | Remove Water Foundation | $346.00 | $346.00 | $346.00 | $0.00 |
| 24 | 2 EA | 0 EA | Remove & Salvage Kiosk | $890.00 | $1,780.00 | $1,780.00 | $0.00 |
| 25 | 297 LF | 0 LF | Remove Timber Edge | $7.00 | $2,079.00 | $2,079.00 | $0.00 |
| 28 | 1 LS | 0 LS | Abandon Miscellaneous Utilities | $2,150.00 | $2,150.00 | $2,150.00 | $0.00 |
| 29 | 1 EA | 0 EA | Remove, Refinish, & Replace General Sherman Sign | $2,000.00 | $2,000.00 | $2,000.00 | $0.00 |
| 30 | 1 EA | 0 EA | Sequoia Slab & Easel Removal & Relocation | $15,000.00 | $15,000.00 | $15,000.00 | $0.00 |
| 32 | 1 LS | 1 LS | Tree Cutting, Removal and Clearing & Grubbing | LS | $250,000.00 | $25,000.00 | $225,000.00 |

511970

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 34 | 52 EA | 43 EA | Salvage Landscape Logs | $73.00 | $3,796.00 | $657.00 | $3,139.00 |
| 35 | 63441 SF | 55282 SF | Remove, Stockpile & Place Litter & Duff | $0.30 | $19,032.30 | $2,447.70 | $16,584.60 |
| 37 | 1 LS | LS | Excavation and Grading | LS | $350,000.00 | $35,000.00 | $315,000.00 |
| 40 | 1300 CF | 0 CF | Compaction Grouting | $20.00 | $26,000.00 | $26,000.00 | $0.00 |
| 41 | 88125 SF | 4317 SF | Soil Amendment & Cultivation | $0.23 | $20,268.75 | $19,275.84 | $992.91 |
| 42 | 28438 SF | 20229 SF | Cultivate Soil (no amendments) | $0.10 | $2,843.80 | $820.90 | $2,022.90 |
| 43 | 97279 SF | 19739 SF | Wood Chip Placement | $0.20 | $19,455.80 | $15,508.00 | $3,947.80 |
| 44 | 52 EA | 43 EA | Log Moving and Placement | $210.00 | $10,920.00 | $1,890.00 | $9,030.00 |
| 45 | 6331 LF | 3964 LF | Silt Protection | $8.00 | $50,648.00 | $18,936.00 | $31,712.00 |
| 48 | 146838 SF | 124335 SF | Soil Retention Blanket | $0.40 | $58,735.20 | $9,001.20 | $49,734.00 |
| 49 | 133 SY | 110 SY | Dispersal Riprap | $90.00 | $11,970.00 | $2,070.00 | $9,900.00 |
| 52 | 252 SF | 0 SF | Low Water Crossing | $14.00 | $3,528.00 | $3,528.00 | $0.00 |
| 54 | 170 LF | 38 LF | 2" PVC Serviceline | $20.00 | $3,400.00 | $2,640.00 | $760.00 |
| 55 | 2 EA | 0 EA | 2" Gate Valve | $539.00 | $1,078.00 | $1,078.00 | $0.00 |
| 58 | 2 EA | 1 EA | 2" Curb Stop | $230.00 | $460.00 | $230.00 | $230.00 |
| 64 | 957 LF | 938 LF | 24" CMP | $64.00 | $61,248.00 | $1,216.00 | $60,032.00 |
| 65 | 2 EA | 1 EA | Stone Headwall | $6,458.00 | $12,916.00 | $6,458.00 | $6,458.00 |
| 67 | 98 LF | 0 LF | 6" Non-perforated Drain Pipe | $21.00 | $2,058.00 | $2,058.00 | $0.00 |
| 69 | 9 EA | 8 EA | Concrete Drop Inlet - Type B | $3,500.00 | $31,500.00 | $3,500.00 | $28,000.00 |
| 71 | 10378 TN | 9640 TN | Aggregate Base Course | $43.00 | $446,168.00 | $31,648.00 | $414,520.00 |
| 72 | 4635 TN | 4308 TN | Asphalt Concrete Pavement | $104.00 | $482,040.00 | $34,008.00 | $448,032.00 |
| 75 | 1 LS | 1 LS | Traffic Markings | LS | $17,500.00 | $6,125.00 | $11,375.00 |
| 76 | 4126 LF | 3345 LF | Stone Curb | $97.00 | $400,222.00 | $75,757.00 | $324,465.00 |
| 77 | 855 LF | 79 LF | Flush Stone Curb | $126.00 | $107,730.00 | $98,532.00 | $9,198.00 |
| 78 | 69 EA | 37 EA | Snow Pole Sleeves | $104.00 | $7,176.00 | $3,328.00 | $3,848.00 |
| 79 | 90 SY | 0 SY | Stone Swale | $580.00 | $52,200.00 | $52,200.00 | $0.00 |
| 81 | 1546 LF | 0 LF | Stone Edging | $56.00 | $86,576.00 | $86,576.00 | $0.00 |
| 82 | 1174 TN | 679 TN | Bituminous Walks | $122.00 | $143,228.00 | $60,390.00 | $82,838.00 |
| 83 | 9406 LF | 5964 LF | Timber Edging | $7.00 | $65,842.00 | $24,094.00 | $41,748.00 |
| 84 | 458 SY | 81 SY | Stone Paving | $393.00 | $179,994.00 | $148,161.00 | $31,833.00 |
| 85 | LS | LS | Irrigation Connection | LS | $3,480.00 | $3,480.00 | $0.00 |
| 86 | 300 LF | 0 LF | 2" Above Ground Irrigation Main | $5.00 | $1,500.00 | $1,500.00 | $0.00 |
| 87 | 100 LF | 0 LF | 2" Underground Irrigation Main | $20.00 | $2,000.00 | $2,000.00 | $0.00 |
| 88 | 1260 LF | 0 LF | 1-1/2" PVC Irrigation Main Above Ground | $4.00 | $5,040.00 | $5,040.00 | $0.00 |
| 89 | 6 EA | 0 EA | Battery operated Controller and Automatic Valve | $1,500.00 | $9,000.00 | $9,000.00 | $0.00 |
| 90 | 60 LF | 0 LF | 1-1/2" Galv. Steel Irrigation Main Underground | $24.00 | $1,440.00 | $1,440.00 | $0.00 |
| 96 | 3648 LF | 320 LF | Split Rail Fence | $42.00 | $153,216.00 | $139,776.00 | $13,440.00 |
| 97 | 1136 LF | 0 LF | Split Rail Fence-Salvaged Material | $24.00 | $27,264.00 | $27,264.00 | $0.00 |
| 98 | 1271 LF | 0 LF | Split Rail Fence-Modify Existing | $9.00 | $11,439.00 | $11,439.00 | $0.00 |
| 99 | 1434 LF | 0 LF | Temporary Rope Fence | $7.00 | $10,038.00 | $10,038.00 | $0.00 |
| 101 | 1 LS | 1 LS | Signature Boulders | LS | $30,000.00 | $27,000.00 | $3,000.00 |
| 102 | 1 LS | 1 LS | Boulder Revetment | LS | $151,145.00 | $30,229.00 | $120,916.00 |
| 105 | 3 EA | 1 EA | Kiosk | $16,640.00 | $49,920.00 | $33,280.00 | $16,640.00 |
| 107 | 1 EA | 0 EA | Boardwalk - Type One | $29,935.00 | $29,935.00 | $29,935.00 | $0.00 |
| 109 | 21 EA | 0 EA | Traffic Sign with 4x4 Post | $158.00 | $3,318.00 | $3,318.00 | $0.00 |
| 110 | 15 EA | 0 EA | Traffic and Parking Sign with 4x6 Post | $171.00 | $2,565.00 | $2,565.00 | $0.00 |

511971

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 111 | 14 EA | 0 EA | Traffic Sign with 4x4 Post (Government Furn Sign Panel) | $105.00 | $1,470.00 | $1,470.00 | $0.00 |
| 112 | 8 EA | 0 EA | Directional Sign | $375.00 | $3,000.00 | $3,000.00 | $0.00 |
| 113 | 8 EA | 1 EA | Wayside - Double Post | $156.00 | $1,248.00 | $1,092.00 | $156.00 |
| 115 | 3 EA | 1 EA | Wayside - Boulder or Log Mounted | $156.00 | $468.00 | $312.00 | $156.00 |
| 116 | 10 EA | 0 EA | Wayside Exhibit | $125.00 | $1,250.00 | $1,250.00 | $0.00 |
| 117 | 2800 FF | 0 FF | Concrete Wall with Mortared Stone (at General's Highway) | $309.00 | $865,200.00 | $865,200.00 | $0.00 |
| 118 | 238 FF | 0 FF | Concrete Wall with Mortared Stone (at Comfort Station) | $145.00 | $34,510.00 | $34,510.00 | $0.00 |
| 119 | 1866 FF | 1340 FF | Dry-Laid Stone Wall | $115.00 | $214,590.00 | $60,490.00 | $154,100.00 |
| 121 | 1047 LF | 851 LF | Stone Stairs | $250.00 | $261,750.00 | $49,000.00 | $212,750.00 |
| 122 | 1 LS | 0 LS | Boulder Handrails | LS | $7,035.00 | $7,035.00 | $0.00 |
| 123 | 1 LS | 1 LS | Small LP Gas System | LS | $4,900.00 | $2,450.00 | $2,450.00 |
| 124 | 2 EA | 1 EA | Transformer Pad | $2,248.00 | $4,496.00 | $2,248.00 | $2,248.00 |
| 127 | 1 LS | LS | Electrical Distribution to Lower Sherman Site | LS | $31,500.00 | $31,500.00 | $0.00 |
| 128 | 1 LS | LS | Pay Telephone for Lower Sherman Tree Site | LS | $2,110.00 | $2,110.00 | $0.00 |
| 130 | 1 LS | 0 LS | General's Highway Stone Headwall | LS | $87,000.00 | $87,000.00 | $0.00 |

$2,743,771.14

This Modification Number 7 results in a decrease of ($2,743,771.14) in the contract amount. The revised contract amount is accordingly established as follows:

| | |
|---|---|
| Original Contract Amount: | $7,121,636.00 |
| Modification 1, Increase: | 317,850.00 |
| Modification 2, Increase: | 10,908.00 |
| Modification 3, Increase: | 345,209.92 |
| Modification 4, Increase: | 95,120.38 |
| Modification 5, Increase: | 26,880.00 |
| Modification 6, Increase: | 84,170.00 |
| Modification 7, Decrease: | (2,743,771.14) |
| | $5,258,003.14 |

Due to the deletion of work associated with this modification, the contract completion date is accordingly changed from August 28, 2003 to May 30, 2003.

## CONTRACTOR'S STATEMENT OF RELEASE

The contractor agrees that, in consideration of receiving the benefits of Modification 7, all claims or obligations which now exist or which may hereafter arise, whether known or unknown, or which have or could have been asserted against the National Park Service or the Government as well as its officers and employees, in any form or forum, whether in law or equity, arising out of or resulting from this modification are hereby released, waived, and forever discharged.

511972

REMCON, Inc.

P.O. Box 756
751 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-9186
Fax: 209/847-9189

5pm
JUL15'03 RCV
7/15/03

**Sent Via Overnight Mail**

June 28, 2003

Mr. Rodney K. Keiscome
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

**Reference:** Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

**Subject:** Certified Claim of REMCON Arising from Work Performed to Date

Dear Mr. Keiscome:

As the Contracting Officer, this certified claim is submitted to you in accordance with the requirements of the Contract Disputes Act of 1978, 41 U.S.C. §§601, et seq. While some of the individual claims noted herein have been the subject of previous claims to you, there are additional facts and/or revised damage claims submitted herewith. Therefore, for purposes of being comprehensive, and to state the known, pending claims in one omnibus package, the certified claim of REMCON is submitted as an attachment to this letter.

The claim consists of a narrative and exhibits.

A timely, formal Contracting Officer's final decision, on each claim, is requested.

I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Pursuant to applicable law, we strongly urge the Contracting Officer to adopt alternative means of dispute resolution, whether binding arbitration or mediation. I am amendable to utilizing such a process to resolve this claim

Cordially,

Stephen B. Christensen
President

Enclosures:

cc: D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, LLP
Richard A. Lewis, REMCON Board Member

SequoiaLetter117-sbc

# CERTIFIED CLAIM OF REMCON

## SEQUOIA & KINGS CANYON NATIONAL PARK
## SHERMAN TREE PARKING PROJECT

## I.

## INTRODUCTION

This certified claim has been prepared so as to provide a detailed description of REMCON's claims, justification for them, and a breakdown of the amounts being claimed and due REMCON relating to the above-referenced project.

The total value of the claims asserted in this document is $3,091,799.60. They are identified immediately below, and discussed in detail in the body of this document. The identification of the claims, and their individual amount, in the order addressed below, are as follows:

| | | |
|---|---|---|
| • Excavation: | $ | 887,508.46 |
| • Boulder Revetment: | $ | 47,039.61 |
| • SWPPP Operations: | $ | 90,182.12 |
| • Failure to Supply AB: | $ | 298,792.33 |
| • Re-Grading AB: | $ | 117,510.11 |
| • Winter 2002/2003 Repair: | $ | 50,000.00 *(Estimated)* |
| • Additional Survey Costs: | $ | 49,052.66 |
| • Extended Field Overheads: | $ | 767,356.28 |
| • Extended Home Office Overhead: | $ | 352,235.21 |
| • Unallocated Equipment Costs | $ | 150,197.94 |
| • Improper Credits: | | |
| (i) AB | $ | 140,407.90 |
| (ii) AC | $ | 50,322.48 |
| (iii) Dry-Laid Stone | $ | 39,560.00 |
| (iv) Boulder Revetment | $ | 15,114.50 |

| | | | |
|---|---|---|---|
| (v) | Drop Inlets Type A | $ | 2,000.00 |
| (vi) | Erosion Control Logs | $ | 34,520.00 |
| (viii) | Interest | | TBD |
| (ix) | Attorney Fees | | TBD |

**A. Project Description**

The Sherman Tree Parking Project ("Project") was divided into three distinctly separate construction areas. These three areas are referred to as the Upper Sherman Access Road and Parking Area, the Sherman Tree Trail, and the Lower Sherman Parking Area. The contract specifications required that the Upper Sherman Access Road and Parking Area, and the Sherman Tree Trail, be complete before any work could proceed on the Lower Sherman Parking Area. As of May, 2003, since work remains to be completed on the Upper Sherman Access Road and Parking Area and the Sherman Tree Trail, no work has been performed on the Lower Sherman Parking Area.

The Upper Sherman Access Road and Parking Area involved the construction of approximately 3,000 linear feet of two lane asphalt paved roadway, a two level parking area, installation of approximately 3,700 linear feet of domestic waterline, installation of approximately 3,800 linear feet of electrical service line, installation of a sewer system (which included approximately 750 linear feet of sewer line, a concrete septic tank, dosing siphon tank, and a sewage leach field), construction of a comfort station, wayside kiosk, rock revetment, and landscaping/erosion control measures. The Sherman Tree Trail component involved the construction of approximately 2,000 linear feet of asphalt surfaced trail (including concrete/stone stairs, timber edging, a visitor overlook, and related landscaping/erosion control measures). The planned work for the Lower Sherman Parking Area includes demolition and removal of existing man-made features,

construction of approximately 300 linear feet of concrete retaining wall with rock facing, realignment of the General's Highway, construction of a visitor comfort station, and related landscaping/erosion control measures.

**B. Bidding and Selection Process**

It's important to note that the selection process for this project was an RFP (Request for Proposal), and REMCON was the contractor of choice for the National Park Service ("NPS"). In late February 2001, REMCON received a set of plans and specifications for the Sherman Tree Parking Project. REMCON based its "Proposal" on the information contained within these documents. REMCON's proposal contained a line item cost breakdown, previous job experience as well as numerous other factors, which were requested within the "Request for Proposal". REMCON had performed previous work for the NPS, and had just completed a project within the Sequoia National Park – Giant Forest area. As a result of REMCON's work on the Giant Forest project REMCON received a "Letter of Recommendation", issued from Sequoia National Park's own construction manager, Jack Vance.

Based on all of the information provided in REMCON's "Proposal", the NPS selected REMCON as the contractor. The NPS was under no set criteria to award REMCON the Sherman Tree Parking Project. The NPS had the opportunity to review REMCON's price proposal and compare the NPS' estimated project value against the price proposal provided by REMCON. The NPS did review these figures and contacted REMCON concerning certain price items, with which the NPS did not agree. The NPS was fully aware of REMCON's price proposal and the work required as it confirmed the prices provided by REMCON.

## C. Summary of Impacts to Earthwork Activity

The contract documents provided by the NPS to the prospective bidders (who submitted proposals to the government) for the Sherman Tree Parking Project were design specifications which included the NPS estimated quantities of work and a geotechnical report. In the preparation of REMCON's estimate and subsequent proposal, REMCON justifiably and reasonably relied on the information contained within said documents to be truthful and accurate. This is consistent with the legal authorities cited at the conclusion of this claim (e.g. United States v. Spearin and its progeny). The contractors proposing on the Sherman Tree Parking Project were prevented from making a site investigation to confirm the accuracy (or observe/perceive any inaccuracy) of the contract documents as the NPS did not make the contract documents available to bidders until February 27, 2001. The timing of the issuance of the contract documents is extremely important as they were published in the heart of winter when the jobsite, located at approximately 7,000 feet above sea level, was completely buried under snow. Given that the requested bid date was March 29, 2001, when the site was still completely buried, there was no way to confirm the accuracy of the government's estimates or observe their inaccuracy.[1]

---

[1] As but one example of the numerous errors in the contract documents which could not be discovered through a pre-bid site inspection is the issue regarding the NPS furnishing of aggregate base material. On sheet G-3 of the plans, the NPS identified it had stockpiled aggregate base material, which was available to prospective contractors. This area was buried under snow and the accuracy of the NPS representation could not be evaluated. In fact, there was no aggregate base stockpile as represented, and the NPS bears liability for all resulting time and cost impacts for this misrepresentation. This problem is addressed in greater detail below, but suffice it to say, such conduct violates multiple legal principles, including, but not limited to, breach of the implied warranty of

This project, located in the Sierra Nevada mountains at over 7,000 feet in elevation, in an area adjacent to a heavily visited national treasure (the General Sherman Tree), had limited construction access and a limited annual construction season. The site conditions, and work required to be performed, were of such a nature that multiple concurrent activities realistically could not be planned to be performed. By analogy, this project was akin to building three separate jobs, and one job (due to limited access, time to perform and mobility of equipment) had to be effectively (if not actually) completed before the next commenced. Much of the work by its nature has to be performed sequentially. Thus any delay in one operation also effects all the operations that must follow in sequence.

Further compounding the project is its location and weather. Instead of being able to work twelve months, or even nine months, the construction season was dictated by the extent and duration of winter precipitation (snow) and cold temperature. Realistically, the construction season was from sometime in May or June through October, a duration of five or six months.

Thus, any construction delays or impacts would have significant detrimental impacts on the ability of the contractor to work on the project. The NPS knew this as it allowed for three years' worth of construction seasons to perform the work.

REMCON was awarded the project on May 15, 2001 and was issued a "Notice to Proceed" on June 11, 2001. Prior to the issuance of the "Notice to Proceed", a representative of the NPS made a field investigation and marked all trees which could be

---

the correctness and accuracy of plans, failure to disclose superior material information, and misrepresentation of material facts. Entitlement to damages is automatic, and detailed below the damages are identified. Citations to legal authorities establishing these principles are set forth in the concluding portions of this omnibus claim.

RECEIVED JUN 1 2 2001

United States Department of the Interior
NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

JUN 1 8 2001
DSC
Contracting Services

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443C8000010903

NOTICE TO PROCEED AND CONTRACT TIME

Remcon, Inc.
Attention: Mr. Stephen Christensen
P O Box 758
751 Wakefield Court
Oakfield, California 95361

JUN 0 6 2001

Dear Sir:

Reference: Sequoia and Kings Canyon National Park, Tulare County, California, Giant Forest, Sherman Tree Parking Area, Contract No. 1443C8000010903, Project No. SEKI-200Q

Subject: Notice to Proceed and Contract Time

Confirming mutual agreement, you are notified to proceed with the work on June 11, 2001. That date will then become the first calendar day of the contract period of 792 days and, unless extensions are granted, the contract period will expire on August 11, 2003.

Please acknowledge your agreement to this completion date by signing, dating, and returning the original to this office, in the envelope provided, retaining one copy for your files.

Sincerely,

Edward L. Tafoya 6/6/2001

Edward L. Tafoya
Contracting Officer

In Duplicate

*************************************************************************************

Received and concurred:

By: ______________________

Title: President

Date: June 14, 2001

DEFENDANT'S EXHIBIT

**REMCON, Inc.**

P.O. Box 758
761 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-8180
Fax: 209/847-8185

Sent Via Fax & U.S. Mail

August 11, 2003

Mr. Rodney K. Kalscome
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

Reference: Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200G

Subject: Notice to Cure, Response from Great American Insurance Company

Dear Mr. Kalscome:

Reference is made to the NPS letter of July 24, 2003 regarding the Notice to Cure.

We are currently expecting a response to your letter from Great American Insurance Company sometime today. As quickly as we get a response we will forward a response to your office.

Cordially,

Stephen B. Christensen
President

cc: D. Michael Schoenfeld, Murphy Austin Adams Schoenfeld, LLP
Michael W. Fisk, Great American Insurance Company

SequoiaLetter123-cnd