IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2478C<br>(Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

September 2, 2005

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . 1

INTRODUCTION . . . . . 1

ARGUMENT . . . . . 3

I. The Government Did Not Materially Breach The Contract Or Render Remcon Financially Unable To Mobilize . . . . . 3

A. The Government Did Not Render Remco Financially Unable To Mobilize For The Third Construction Season And Any Payment Errors, If Any, Were Not Material . . . . . 3

1. Remcon Has Not Established That The Alleged Deficiencies In Progress Payments And Processing Of Contract Modifications Affected Its Progress . . . . . 4

2. Remcon Cannot Establish Any Material Deficiencies Regarding Progress Payments Or Payments For Modifications . . . . . 5

a. Minor Payment Issues Do Not Constitute A Material Breach . . . . . 6

b. Remcon Cannot Establish That Alleged Deficiencies In Issuing Modifications Were Material . . . . . 9

c. Any Payment Delays Were Cured Prior To Termination . . . . . 10

3. Remcon Caused Its Own Financial Woes . . . . . 11

B. Remcon Cannot Establish That The Government Otherwise Materially Breached The Contract . . . . . 13

1. The Government Did Not Breach Its Duty Of Good Faith, Fair Dealing And Cooperation . . . . . 13

2. Remco Has A Remedy For Any Alleged Claims Pursuant To The Contract Disputes Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C. Even Assuming, For Arguments Sake, That The Government Breached The Contract, Remcon Waived The Breach By Continuing To Perform Under The Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II. The Government Justifiably Issued A Cure Notice And Remco Unjustifiably Failed To Respond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

INDEX TO APPENDIX

PAGES

Notice of Termination for Default . . . . . . . . . . 1

Contract Modification No. 1 . . . . . . . . . . 3

Contract Modification No. 2 . . . . . . . . . . 7

Contract Modification No. 3 . . . . . . . . . . 12

Contract Modification No. 4 . . . . . . . . . . 17

Contract Modification No. 5 . . . . . . . . . . 22

Contract Modification No. 6 . . . . . . . . . . 26

Letter to Remcon dated June 6, 2003 . . . . . . . . . . 30

Letter from Remcon dated June 7, 2003 . . . . . . . . . . 32

Letter to Remcon dated June 18, 2003 . . . . . . . . . . 33

Letter to Remcon dated June 28, 2003 . . . . . . . . . . 35

Letter to Remcon dated July 3, 2003 . . . . . . . . . . 38

Construction Schedule . . . . . . . . . . 39

Cure Notice dated July 24, 2003 . . . . . . . . . . 40

Letter to Remcon dated July 29, 2003 . . . . . . . . . . 43

Letter from Remcon dated July 31, 2003 . . . . . . . . . . 45

Cure Notice Extension dated August 4, 2003 . . . . . . . . . . 46

Contract Excerpts . . . . . . . . . . 47

Proposed Contract Modification No. 7 . . . . . . . . . . 54

Claim Excerpts . . . . . . . . . . 60

Notice to Proceed dated June 6, 2001 . . . . . 66

Letter from Remcon dated August 11, 2003 . . . . . 67

National Park Services Payments . . . . . 68

Pay Estimate Quantity Corrections . . . . . 142

Contract Modification (443C8000010903) . . . . . 152

Certified Claim of REMCON Arising from Work Performance to Date . . . . . 153

Contract Modification (0004) . . . . . 154

Contract Modification (0007) . . . . . 161

Geotechnical Investigation Report . . . . . 176

Sequoia National Park Project 200Q Quantities Summary . . . . . 190

Email from Terry Lang to Remcon . . . . . 192

Request for Information RFI No. 001 . . . . . 195

Request for Clarification (RFI) . . . . . 199

Daily Log of Construction . . . . . 201

Letter to Remcon dated August 1, 2001 . . . . . 203

Sherman Tree MS Project Schedule . . . . . 204

Daily Log of Construction . . . . . 205

Letter to William H. DeOcampo dated August 20, 2001 . . . . . 210

Email to Willie DeOcampo dated September 17, 2001 . . . . . 211

Fax Transmittal to Willie DeOcampo dated December 19, 2001 . . . . . 215

Fax Transmittal to Willie DeOcampo dated December 19, 2001 . . . . . 215

Daily Log of Construction . . . . . 223

Diary Notes . . . . . 225

Letter to Theresia C. Lang dated June 5, 2002 . . . . . 226

Daily Log of Construction . . . . . 232

Letter to Stephen Christensen dated July 16, 2002 . . . . . 234

Daily Production . . . . . 235

Abstract of Judgment . . . . . 255

Letter to Willie DeOcampo dated July 11, 2002 . . . . . 258

Letter to Bob Reinhardt dated July 15, 2002 . . . . . 259

Daily Log of Construction . . . . . 263

Email from Michael Giller dated July 30, 2002 . . . . . 265

FY 2001 Job Schedule . . . . . 266

Remcon Profit and Loss Analysis 2002 . . . . . 268

Weekly Field Report . . . . . 269

Letter to Bob Reinhardt dated August 19, 2002 . . . . . 270

Daily Log of Construction . . . . . 271

Letter to Remcon, Inc dated August 20, 2002 . . . . . 273

Letter to Remcon Inc dated August 20, 2002 . . . . . 276

Letter to Michael Giller dated August 21, 2002 . . . . . 278

Letter to Rodney Keiscome dated September 11, 2002 . . . . . 279

Letter to Michael Giller dated October 20, 2002 . . . . . 280

Letter to Stephen Christensen dated September 18, 2002 . . . . . 281

Memo regarding Backup Material for Modification 6 . . . . . 282

Estimate for Unilateral Roadway Blasting Modification SEKI-2000Q . . . . . . . . . . . . . . . . . . 284

Letter to Rodney Keiscome dated March 12, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 285

Letter to D. Michael Schoenfeld dated March 28, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 292

Letter to Stephen B. Christensen dated April 1, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 294

Complaint for Breach of Contract and Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 296

Request for Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 300

Pay Estimates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 301

Cost Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 306

Letter to Remcon, Inc. Dated March 28, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 307

Letter to William H. DeOcampo dated April 3, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

Letter to Remco, Inc. dated April 24, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 314

Letter to Dowling Aaron & Keeler, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 318

Letter to Bergeson Eiopoulos, LLP dated February 22, 2001 . . . . . . . . . . . . . . . . . . . . . . . . 320

Letter to Kenneth H. Smith dated August 9, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 322

Letter to Industrial Waste and Savage dated June 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 324

Daily Log of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 326

Pay Estimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 343

Expert Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Abcon Associates Inc.,
49 Fed. Cl. 678 (2001) . . . . . . . . . . 13, 14

Aleutian Constructors v. United States,
24 Cl. Ct. 372, 384 (1991) . . . . . . . . . . 16

Allan Construction Co. v. United States,
227 Ct. Cl. 646 F.2d 487 (1981) . . . . . . . . . . 6

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 . . . . . . . . . . 5, 16, 18

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . 14

In re Boston Shipyard Corp.,
886 F.2d 451 (1st Cir. 1989) . . . . . . . . . . 7, 10, 11, 16

Cities Service Helex, Inc. v. United States,
211 Ct. Cl. 543 F.2d 1306 (1976) . . . . . . . . . . 16, 17

Consumers Oil Co.,
ASBCA No. 24172, 86-1 BCA ¶ 18,647 (1985) . . . . . . . . . . 4

DWS, Inc.,
ASBCA No. 33245, 87-3 BCA ¶ 19,960 (citing cases), aff'd on recon.,
87-3 BCA ¶ 20,133 at 101,925 (1987) . . . . . . . . . . 9

D.W. Sandau Dredging, ENG,
BCA No. 5812, 96-1 BCA ¶ 28,064 (1995), aff'd on recon.,
96-2 BCA ¶ 28,300 (1996) . . . . . . . . . . 4

DeKonty Corp., ASBCA No. 32140,
90-2 BCA ¶ 22,645 (1990),
rev'd on other grounds, 922 F.2d 826 (Fed. Cir. 1991) . . . . . . . . . . 9

Empire Energy Management Systems, Inc., ASBCA No. 46741, 00-1, BCA ¶ 30,636 (1999), aff'd on recon. on other grounds, 2000 WL 199754 (Feb. 17, 2000) . . . . . . . . . 9, 16

Florida Engineered Const. Products Corp, 41 Fed. Cl. 534 . . . . . . . . . 4, 11

Guerini Stone Co. v. P.J. Carlin Constr. Co., 248 U.S. 334, 39 S. Ct. 102 (1919) . . . . . . . . . 5

KPM Corp., ASBCA No. 26540, 84-3 BCA ¶ 17,668 at 88,115 (1984) . . . . . . . . . 5

Macri v. United States, 353 F.2d 804 (9th Cir. 1965) . . . . . . . . . 5

Malone v. United States, 849 F.2d 1441 (Fed. Cir. 1988) . . . . . . . . . 6

Mega Construction Co. v. United States, 29 Fed. Cl. 396 (1993) . . . . . . . . . 8

Morris v. United States, 39 Fed. Cl. 7 (1997), aff'd 178 F.3d 1307 (Fed. Cir. 1998) . . . . . . . . . 14

Nexus Construction Co., ASBCA No. 31070, 91-3 BCA ¶24,303 (1991) . . . . . . . . . 9

Northern Helex Co. v. United States, 197 Ct. Cl. 118, 455 F.2d 546 (1972) . . . . . . . . . 7

Parkway Distributor & Building Services, Inc., ASBCA No. 36190, 89-3 BCA ¶ 22,199 (1989) . . . . . . . . . 9

Pinewood Realty Ltd. v. United States, 223 Ct. Cl. 617 F.2d 211 (1980) . . . . . . . . . 16

Roxco, Ltd. v. United States, 60 Fed. Cl. 39 (2004) . . . . . . . . . 17

Sermor, Inc., ASBCA Nos. 32824, et al., 94-1 BCA ¶ 26,301 (1993), aff'd on recon., 94-3 BCA ¶ 27,244 (1994) . . . . . . . . . 10, 11

Southeastern Airways Corp. v. United States,
230 Ct. Cl. 47, 673 F.2d 368 (1982) . . . . . . . . . . 4, 5, 11

Sterling Millwrights, Inc. v. United States,
26 Cl. Ct. 49 (1992) . . . . . . . . . . 7, 9

Stoeckert v. United States,
183 Ct. Cl. 391 F.2d 639 (1968) . . . . . . . . . . 6

TGC Cohntractijng Corp. V. United States,
736 F.2d 1512 (Fed. Cir. 1984) . . . . . . . . . . 4, 5, 11

United States v. Utah Construction & Mining Co.,
384 U.S. 394 (1966) . . . . . . . . . . 7, 8, 15
Valley View Enterprises, Inc. v. United States,
35 Fed. Cl. 378 (1996) . . . . . . . . . . 6

**STATUTES**

31 U.S.C. §§ 3901, et seq . . . . . . . . . . 7

48 C.F.R. § 52.232-27(a)(1)(i)(A) (1994) . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2478C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, the United States, respectfully submits this reply to plaintiff's opposition to our motion for partial summary judgment. In our motion, we requested that this Court grant partial summary judgment in favor of the United States, dismissing the claim of plaintiff, Remediation Constructors, Inc. ("Remcon"), relating to the default termination of Remcon's contract. Although Remcon has provided a very lengthy response to our motion, it has failed to establish a genuine issue of material fact with respect to the matters addressed in our motion. Therefore, for the reasons set forth in our moving brief and supporting papers, this reply brief, the accompanying counter-statement of facts, and the declarations of Rod Keiscome, Russell Belknap, Mike Giller, and Colleen Dulin, we respectfully request that the Court grant our motion and dismiss Remcon's claim relating to the default termination of Remcon's contract.

## INTRODUCTION

In its opposition to our motion, Remcon alleges that the Government "materially breached" the contract and, therefore, the Government's termination of Remcon's contract was unjustified. Pl. Opp. 1.[1] Remcon catalogues what can best be described as an alleged "parade of

[1] Remcon's opposition to our motion for partial summary judgment, filed on July 22, 2005, is cited "Pl. Opp. __." The Government's motion for partial summary judgment is cited "Def. Mot.

horribles." Pl. Opp. 8-16. Remcon unsuccessfully attempts to show that the Government made it impossible for Remcon to mobilize to the construction site during the third year of the project. Pl. Opp. 16. It alleges that the Government failed to pay Remcon causing "financial hardship and economic duress." Pl. Opp. 16. Notwithstanding those arguments, Remcon has failed to raise a genuine issue of material fact regarding its allegations that the Government breached the contract. Indeed, the alleged conduct would not constitute a material breach even if it were not otherwise inconsistent with the evidence presented.

The voluminous documentation submitted by Remcon in support of its motion is a smokescreen designed to divert attention from the fact that Remcon's repudiation of the contract was unjustified and constituted a breach of its duties under the contract. Indeed, the entire breach issue is a red herring. Thus, although the Government disagrees with Remcon's version of the facts, those alleged facts are irrelevant and have no bearing upon whether the Government appropriately terminated the contract.

The National Park Service ("NPS") issued a cure notice and terminated the contract because Remcon failed to make adequate progress toward contract completion and failed to mobilize to the project site for the third construction season. It terminated Remcon's contract for default because Remcon failed to provide adequate assurances that it would timely complete its contractual obligations and, indeed, failed to even respond to the cure notice. Remcon has provided no adequate excuse for its inaction and failure to provide adequate assurances. In fact,

___

__." The Government's proposed findings of uncontroverted facts is cited "Def. Facts ___." The appendix to Defendant's Proposed findings of uncontroverted facts is cited "A___." Our supplemental appendix is cited as "SA ___." References are to page numbers. Declarations cited in this brief are cited, e.g., as "Keiscome Decl. __."

Remcon expressly acknowledges that it did not provide the requested assurance that it could progress upon the project. Pl. Opp. 28. The United States is entitled to partial summary judgment for this reason alone. In light of these indisputable facts, the contracting officer clearly acted reasonably in terminating the contract for default. Accordingly, the Court should grant summary judgment in favor of the Government upon the termination issue.[2]

## ARGUMENT

### I. The Government Did Not Materially Breach The Contract Or Render Remcon Financially Unable To Mobilize

#### A. The Government Did Not Render Remcon Financially Unable to Mobilize For The Third Construction Season And Any Payment Errors, If Any, Were Not Material

Remcon argues that its reason it did not mobilize for the third construction season was because the Government rendered it financially unable to do so. Pl. Opp. at 16. However, Remcon's allegations do not raise a genuine issue of material fact and do not provide a ground for denying our motion for partial summary judgment. When a contractor challenges a termination for default by arguing that the Government failed to make payments to which the contractor was entitled, there are two ways to analyze the facts and allegations and resolve the

---

[2] Remcon objects to our citation to allegedly "unauthenticated documents." However, Remcon does not challenge the authenticity of the documents that we cite, nor can it, since the documents are largely contract documents and communications between Remcon and NPS. Further, Rule 56(a) & (b) of the Rules of the United States Court of Federal Claims expressly provides that parties may move with or without supporting affidavits for summary judgment. Moreover, the language quoted by Remcon in its brief states that a trial court can only consider "admissible evidence" in a motion for summary judgment. Pet. Br. 4. Remcon fails to explain how any of the documents in that we relied upon in our moving brief would be inadmissible. Indeed, the records would be admissible under various provisions of the Federal Rules of Evidence ("FRE"), including, but not limited to FRE 803(6) (business records) and FRE 803(8) (public records). Further, some of the records were generated by Remcon itself. See, e.g., A32.

dispute: First, the contractor may allege that the failure to pay was responsible for the contractor's failure to perform. In this situation, the contractor must establish a causal link between payments that were wrongfully withheld and the contractor's failure to perform. See TGC Cohntractijng Corp. V. United States, 736 F.2d 1512 (Fed. Cir. 1984); Florida Engineered Const. Products Corp, 41 Fed. Cl. 534 (1998); D.W. Sandau Dredging, ENG BCA No. 5812, 96-1 BCA ¶ 28,064 at 82-83 (1995), aff'd on recon., 96-2 BCA ¶ 28,300 (1996).

Second, the contractor may allege that the Government's failure to pay was a material breach of the contract. In such a situation, the contractor must establish that the Government breached the contract, that the breach was material, and that the contractor did not waive the breach. The contractor need not prove that it was financially unable to perform, or that the Government's failure to pay caused the contractor's failure to perform. E.g., Id. At 82-83; Consumers Oil Co., ASBCA No. 24172, 86-1 BCA ¶ 18,647 at 93,709-14 (1985); James F. Nagel, "Financial Inability in Government Contracts," 17 Pub. Cont. L.J. 302, 339-43 (1987).

The Government is entitled to summary judgment under either theory.

### 1. Remcon Has Not Established That The Alleged Deficiencies In Progress Payments And Processing of Contract Modifications Affected Its Progress

Remcon alleges that, "as of July, 2003," it had run out of financial resources to complete the project due to the Government's actions. Pl. Opp. 18. Remcon also states that it was excused from mobilizing to the construction site because of "lack of payment." Pl. Opp. at 16. However, its allegations in this regard do not raise a genuine issue of material fact.

It is well established that a Government contractor must possess adequate financing to enable it to perform its contract. E.g., Southeastern Airways Corp. v. United States, 230 Ct. Cl.

47, 63 & nn.15-18, 673 F.2d 368 (1982). When the contractor argues that its financial difficulties were caused by the Government's failure to make required progress payments, "the burden is on the contractor to establish that the progress payments were erroneously withheld and that the withholding of such progress payments was the primary or controlling cause of the contractor's default." TGC, 736 F.2d at 1515; accord, e.g., KPM Corp., ASBCA No. 26540, 84-3 BCA ¶ 17,668 at 88,115 (1984); see Nagel, "Financial Inability in Government Contracts," 17 Pub. Cont. L.J. at 357 (contractor's burden of proof is "especially heavy") .

Remcon cites Guerini Stone Co. v. P.J. Carlin Constr. Co., 248 U.S. 334, 334 (1919) and Macri v. United States, 353 F.2d 804, 810 (9th Cir. 1965) for the proposition that a substantial failure to make progress payments justifies a contractor's refusal to proceed. However, Remcon has not shown that there were material deficiencies in the progress payments or that any alleged deficiencies were "the primary or controlling cause" of its failure to make progress. As of January 2003, thirteen pay requests had been submitted by Remcon and the Government had paid Remcon for all of those pay requests in the total amount of $4,375,910.20, less the retained amount of $17,297.29. Keiscome Decl. ¶¶ 4-5, 7-11, 13-14, 17, 22, 26-27; see SA68-151. The Government terminated the project when it was approximately 53% complete. DPFUF ¶ 18; Cure Notice, A40-42. Although Remcon submitted a claim alleging entitlement to additional moneys for work performed, the Government was not withholding progress payments.

**2. Remcon Cannot Establish Any Material Deficiencies Regarding Progress Payments Or Payments For Modifications**

Contract breaches fall into two categories: material and non-material. Only a material breach constitutes a defense to a default termination of a Government contract. See, e.g., Alliant

Techsystems, Inc. v. United States, 178 F.3d 1260, 1276-77 (Fed. Cir. 1999); Malone v. United States, 849 F.2d 1441, 1445-46 (Fed. Cir. 1988); Allan Construction Co. v. United States, 227 Ct. Cl. 193, 203, 646 F.2d 487 (1981). This is because the standard Government contract "disputes" clause requires the contractor to continue performance even when there is a dispute between the parties with regard to, for example, the interpretation of the contract. A contractor cannot condition its continued performance upon Government agreement that it will compensate the contractor or provide schedule relief. E.g., Alliant Techsystems, 178 F.3d at 1276-77; Stoeckert v. United States, 183 Ct. Cl. 152, 160-64, 391 F.2d 639 (1968); Valley View Enterprises, Inc. v. United States, 35 Fed. Cl. 378, 382-86 (1996); Ralph C. Nash, Jr., Government Contract Changes 3-2, 6-2 through 6-4, 6-12 through 6-13 (1989 & Supp. 1991).

Remcon alleges that the NPS materially breached the contract and, as a result, NPS lost the right to terminate the contract. What Remcon must show to support such claim is that the Government both caused a material breach and that the breach excused Remcon from providing assurances that it could complete performance of the contract in a timely fashion.

**a. Minor Payment Issues Do Not Constitute A Material Breach**

There were two categories of payment issues that arose during the performance. First, of thirteen payment requests, the Government paid four late. See Progress Payment Chart, SA151. Second, the NPS readjusted the amounts it paid Remcon because it believed that it had made overpayments because Remcon had overstated certain quantities. See letter entitled "Pay Estimate Quantity Corrections," SA142-144.

The delays in payment to Remcon were minor and all payments were made with the appropriate interest. SA151. Modest, short-term delays in payment do not constitute a material

breach. See Northern Helex Co. v. United States, 197 Ct. Cl. 118, 124, 455 F.2d 546 (1972) (material breach occurs when Government fails "to pay a large amount over an extended period of time" or when there is "a total failure to pay over many months"); In re Boston Shipyard Corp., 886 F.2d at 457-58 & n.4. As several commentators have noted, "Mere delayed payment is not enough" to constitute a material breach. "[A] contractor would have to demonstrate that the Government had withheld payment, in significant amounts, without right for a substantial time." W. Robert Buxton, et al., "Payment Delay Claims," in Proving and Pricing Construction Claims § 11.7 at 333 (1990 & Supp. 1994).

In any event, here, the minor payment delays do not constitute any sort of contract breach, material or otherwise. This contract incorporated by reference FAR § 52.232-27, "Prompt Payment for Construction Contracts" (Apr. 1989), which provides for the payment of interest by the Government where the Government fails to timely pay an undisputed invoice within 14 days of receipt of a "proper invoice" from the contractor. 48 C.F.R. § 52.232-27(a)(1)(i)(A) (1994). Payment of this interest is pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901, et seq. See Sterling Millwrights, Inc. v. United States, 26 Cl. Ct. at 90 n.15. "The payment of interest is usually considered the most straightforward way to make whole a construction contractor who has been denied timely payment of costs." Buxton, et al., "Payment Delay Claims," in Proving and Pricing Construction Claims, supra, § 11.9; see also id. § 11.10.

When a clause in a Government contract provides a remedy for something that would otherwise qualify as a breach, the remedy-providing clause governs the contractor's rights and the contractor cannot pursue a breach claim in addition to, or in lieu of, the remedy provided by the contract. E.g., United States v. Utah Construction & Mining Co., 384 U.S. 394, 401-05 & n.6

(1966); Mega Construction Co. v. United States, 29 Fed. Cl. 396, 414-16 & n.11 (1993). This analysis applies here with full force. That the NPS did not perfectly comply with the contract's payment provisions could not, as a matter of law – not fact – give rise to a breach claim.

Remcon's sole remedy is interest, calculated pursuant to the Prompt Payment Act and FAR § 52.232-27. Indeed, of the thirteen progress payments requested by Remcon, four progress payments were made late, and the Government paid interest in the total amount of $501.12. Keiscome Decl. ¶¶ 11, 13-14, 17; see Progress Payment Chart, SA151.

With respect to progress payment readjustment, the NPS readjusted the amounts it paid Remcon because it believed that it had made overpayments. The items for which the Government readjusted payment included aggregate base, asphalt, and payments for the stone wall. See letter entitled "Pay Estimate Quantity Corrections," SA142-144.

By way of example, in progress payment request No. 11, Remcon sought $305,945 for laying 10,376 tons of aggregate base. SA129-135. The Government paid this amount. Later, when Mr. Giller, the NPS project manager, reviewed the plans, he realized that it was impossible for Remcon to have laid that amount of aggregate unless it had laid more than the contractually required amount. The amount Remcon was claiming it placed was almost the full amount of aggregate for the entire project, including the Lower Sherman work, which Remcon had not even started. As a result, the Government readjusted the amount paid to Remcon in Progress Payment No. 12 to $6,640. See Progress Payment No. 12, SA136-144.

Remcon disagrees with the retroactive adjustments to pay requests and alleges that it is entitled to these moneys. Because all of these issues are disputed and are part of Remcon's claim, the dollar amounts associated with these issues cannot be considered as part of a material

breach analysis. The only amounts that can be considered as funds not paid by the Government are those that were "undisputably due and owing under the contract." DWS, Inc., ASBCA No. 33245, 87-3 BCA ¶ 19,960 at 101,050 (citing cases), aff'd on recon., 87-3 BCA ¶ 20,133 at 101,925 (1987).

### b. Remcon Cannot Establish That Alleged Deficiencies In Issuing Modifications Were Material

Remcon's assertions that the Government failed to issue modifications, or that the modifications were paid late, did not excuse it from performing under the contract. As previously noted, the only amounts that can be considered as funds not paid by the Government are those that were "undisputably due and owing under the contract." DWS, Inc., ASBCA No. 33245, 87-3 BCA ¶ 19,960 at 101,050 (citing cases), aff'd on recon., 87-3 BCA ¶ 20,133 at 101,925 (1987); accord, e.g., Empire Energy Management Systems, Inc., ASBCA No. 46741, 00-1 BCA ¶ 30,636 (1999), aff'd on recon. on other grounds, 2000 WL 199754 (Feb. 17, 2000); Nexus Construction Co., 91-3 BCA at 121,460-63; DeKonty Corp., ASBCA No. 32140, 90-2 BCA ¶ 22,645 at 113,586 (1990) (on mot. for recon.), rev'd on other grounds, 922 F.2d 826 (Fed. Cir. 1991); Parkway Distributor & Building Services, Inc., ASBCA No. 36190, 89-3 BCA ¶ 22,199 at 111,674 (1989); Nash, Government Contract Changes, supra, at 6-9; see also Sterling Millwrights, Inc. v. United States, 26 Cl. Ct. 49, 89-91 (1992). This is so, because the Government has a duty to pay a contractor only those funds to which the contractor has fully established its entitlement; the Government has no such duty with regard to unresolved claims, or other amounts for which the contractor has yet to prove its entitlement. As the First Circuit has explained: "A different decision would make government contracts truly unworkable, allowing

contractors to demand immediate reimbursement of cost overruns, even if the government disagrees with the claim. There would be no meaning to default or dispute clauses that define procedures in case of disputes." In re Boston Shipyard Corp., 886 F.2d 451, 458 (1st Cir. 1989).

Thus, any alleged failure by the Government to issue modifications to which Remcon believes it is entitled could not, as a matter of law – not fact – excuse Remcon from performing under the contract or excuse Remcon from its utter failure to provide adequate assurances.

### c. Any Payment Delays Were Cured Prior To Termination

Any payment errors by the Government were cured well before the date of termination. As of January 24, 3003, Remcon had received payment for Progress Payments 1 through 13. Keiscome Dec. ¶¶ 4-5, 7-11, 13-14, 17, 22, 26, 27; see Progress Payments, SA68-150. Further, NPS had paid Remcon for all modifications for which the parties had reached a negotiated agreement and Remcon had completed the work. See Modifications, A3-25. Indeed, of the six modifications issued to Remcon, five were bilateral. Thus, Remcon's claims relating to the bilateral modifications have been resolved and are subject to accord and satisfaction.

For example, a significant portion of Remcon's claim relates to "excess excavation." This excess excavation was generated in 2001. The parties decided that to account for the excess excavation, the Government would pay Remcon to raise the parking lot. Remcon agreed, the parties negotiated, and Remcon signed a bilateral modification to that effect. Keiscome Decl. 18-19; SA154-160. Therefore, Remcon should not be heard to claim that the modification did not address all of the excavation.

Once the progress payments and modifications were paid, Remcon could no longer rely upon any late payments as a defense to the termination for default. Sermor, Inc., ASBCA Nos.

32824, et al., 94-1 BCA ¶ 26,301 at 130,822 (1993), aff'd on recon., 94-3 BCA ¶ 27,244 (1994); Parkway Distributor & Building Services, Inc., 89-3 BCA at 111,674; Restatement (Second) of Contracts § 237 & cmt. b & illus. 5 (1981).[3] Accordingly, Remcon cannot rely upon payment "errors" as a defense to the termination.

### 3. Remcon Caused Its Own Financial Woes

Remcon argues that its failure to mobilize to the site for the third construction season was excused because its financial incapacity allegedly was caused by the Government. Notwithstanding that claim, any problems Remcon may have had regarding its financial capability to complete the contract were not caused by the Government.

The poor financial condition or insolvency of a contractor ordinarily is not a sufficient excuse for a contractor's default in performance of a contract. Southeastern Airways Corp. v. United States, 230 Ct. Cl. 47, 673 F.2d 368, 377-78 (1982); Boston Shipyard, 886 F.2d at 457; Pruess v. United States, 188 Ct. Cl. 469, 412 F.2d 1293, 1302 (Ct. Cl. 1969). A contractor who makes a bid should have the financial capacity to perform. Boston Shipyard, 886 F.2d at 457. Only when the financial incapacity of the contractor to perform is caused by the acts or omissions of the Government is the default excused. TGC Contracting Corp. v. United States, 736 F.2d 1512, 1515 (Fed. Cir. 1984); Florida Engineered Const., 41 Fed. Cl. 534.

Remcon's thin capitalization, in concert with other significant debts, apparently made it impossible for it to absorb even routine and foreseeable problems. This is not the Government's fault and cannot excuse Remcon's failure to mobilize the third season, which ultimately led to

---

[3] The Government paid bilateral modification No. 5 on November 20, 2002. SA22. The Government paid unilateral modification No. 6 on February 18, 2003. SA26-29. However, this modification was paid directly to Great American, Remcon's surety.

the termination. Further, although Remcon claimed that it was losing money upon this job and not others, this is not what its own cost records show. One document produced by Remcon showed that this project was actually profitable for Remcon. This project shows that as of August of 2002, Remcon had billed $3,617,662 upon the Sequoia project and had realized a profit of $491,429. The document also shows that Remcon had lost money on the Jack Tone Road Project, the Ellisborough Subdivision, and several other projects in the total amount of $838,234.[4] Remcon Spreadsheet, SA266-267.

Second, Remcon conspicuously fails to mention that the Bank of America entered a judgment against Remcon in June 2002 for $1.4 million. SA256-258. Indeed, when asked at his deposition about claims and judgments against Remcon, Steve Christensen purportedly "forgot" about the $1.4 million claim, until reminded of it by the Government. Christensen Deposition 59:24-60:2, annexed as an exhibit to the Dulin Declaration. It is difficult to believe that the $1.4 million judgment against Remcon did not have a significant effect upon its financial condition. Further, it is unconscionable for Remcon to initially fail to mention this debt and continue to blame all its financial woes upon the Government when the satisfaction of judgments such as this go straight to Remcon's motives for pursuing claims against the Government.

Finally, it is important to note that although the Government was paying Remcon upon this project, Remcon was not paying all of its subcontractors. The Government issued numerous Miller Act responses to subcontractors because they had not been paid by Remcon. See, e.g., SA318-325. However, Remcon certified in its progress payments that it was paying its

[4] We do not know who drafted this document. However, it was in Remcon's cost documents.

subcontractors. See Progress Payment Certifications, SA79, 85, 91, 97, 103, 109, 115, 121, 127, 135, 141, 150. In sum, it is clear that the alleged deficiencies in the progress payments played no role in the amount of progress Remcon made upon the project, and that Remcon's poor financial condition was not the Government's fault.

## B. Remcon Cannot Establish That The Government Otherwise Materially Breached the Contract

Remcon has failed to demonstrate the existence of a genuine issue of material fact regarding its allegations that the Government materially breached the contract and that, as a result, the NPS lost the right to terminate. As set forth below, the Government did not breach the contract and, further, Remcon waived any alleged breach by not cancelling the contract.

### 1. The Government Did Not Breach Its Duty Of Good Faith, Fair Dealing And Cooperation

Remcon vaguely alleges that the Government materially breached the contract due to its "failure to negotiate and/or issue change orders, for time and/or additional compensation, resulting from plans and specifications, coupled with maladministration of the contract, all of which resulted in an extraordinary financial burden on Remcon." (Emphasis added). Pl. Opp. at 22. Remcon cites Abcon Associates Inc., 49 Fed. Cl. 678 (2001) and Malone v. United States, 849 F.2d 1441 (Fed. Cir. 1988) for the proposition that the implied duties of good faith, fair dealing, and cooperation can be breached by a lack of diligence or failure to cooperate upon behalf of the Government, and by a failure of a Government agency to negotiate and make payment.

If the contractor can show that "improper government actions were the primary or controlling cause of the default and rendered it financially incapable of performing the default

will be excused." Abcon Associates Inc., 49 Fed. Cl. at 687. However, Remcon's unsupported allegations that the Government acted in bad faith are insufficient to preclude partial summary judgment in favor of the Government. Government officials are presumed to act in good faith and it requires clear and convincing evidence to overcome that presumption. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002).

That standard is intended to be nearly as high as the long-held standard that it requires "well-nigh irrefragable proof" to induce the court to abandon the presumption of good faith dealing. See id. Here, Remcon has failed to "present 'clear and strong proof of specific acts of bad faith,' demonstrating that a Government official acted with malice or a specific intent to injure the plaintiff." Morris v. United States, 39 Fed. Cl. 7, 15 (1997) (citations omitted), aff'd 178 F.3d 1307 (Fed. Cir. 1998) (table). Thus, Remcon has failed to demonstrate the existence of a genuine issue of material fact regarding its allegations that the Government violated the duty of good faith and fair dealing. Therefore, any bad faith argument must be rejected.

Further, contrary to Remcon's allegations, the evidence shows that the Government acted in good faith in its dealings with Remcon. The Government met with Remcon to negotiate issues. Keiscome Decl. ¶ 16. The Government entered into modifications to pay Remcon. A3-25. Further, the Government even paid Remcon for some work before the modification was issued. See SA203. Remcon states that it excavated the burn pit and was not paid for additional work until 2002. Pl. Opp. 8. This is contradicted by contemporaneous records. The Government paid Remcon for that work under progress payment No. 3. SA80-85. The amount of the payment was $491,350. SA81. The very fact that most of the modifications are bilateral shows that the parties negotiated and came to a reasonable solution.

That Remcon now is having second thoughts about the modifications it entered does not give rise to a claim of bad faith, or anything else, against the Government. Yet, Remcon continues to ask for payment for items that had already been negotiated and paid. An example is so-called "excess excavation," which is included in Remcon's claim, notwithstanding the fact that it was paid through Modification No. 4. SA154-160. In any event, by the third construction season, all outstanding bilateral modifications except for Modification No. 6 (differing site condition), which was not paid because the parties were at a disagreement regarding pricing for the work.

### 2. Remcon Has A Remedy For Any Alleged Claims Pursuant To The Contract Disputes Act

The issues Remcon cites in its brief as reasons for not returning to the site for the third construction season are issues that are properly addressed within the Contract Disputes Act ("CDA") framework. They are not breach items. This contract incorporated by reference FAR § 52.233-01 (Dec. 1998) (Disputes), which provides a mechanism for a party to seek the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief. DPFUF ¶ 5. Since there was a provision for equitable adjustment claims, these claims are subject to an administrative determination under the disputes clause of the contract and may be regarded as converted from breach of contract claims to claims for relief under the contract. United States v. Utah Construction & Mining Co., 384 U.S. 394, 401-05 & n.6 (1966).

Remcon recognized that the problems it faced on the contract were appropriately claim items when it filed its claim against the Government. Remcon's claim contains allegations of unresolved changes to the project, money and time due to differing site conditions and changes to

the project, and allegations of deficient plans and specifications. Pl. Opp. at 16, 22. Regarding all of these issues, the contract provided a remedy in case of disagreement. See Boston Shipyard, 886 F.2d at 457 (presence of changes clause in contract shows parties "clearly anticipated that changes would need to be made").

### C. Even Assuming, For Arguments Sake, That The Government Breached The Contract, Remcon Waived The Breach By Continuing To Perform

A party that alleges that a contract has been materially breached must, within a reasonable time of learning of the breach, cease performance and notify the breaching party that it considers the contract to be at an end. If the non-breaching party fails to take these steps, it waives the material breach and is limited to pursuing damages for a non-material breach. E.g., Pinewood Realty Ltd. v. United States, 223 Ct. Cl. 98, 104, 617 F.2d 211 (1980); Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222, 234-45 & nn.19-20, 22-24, 28, 34, 543 F.2d 1306 (1976); Aleutian Constructors v. United States, 24 Cl. Ct. 372, 384 (1991) (citing cases); Empire Energy Management Systems, Inc., ASBCA No. 46741, 00-1 BCA ¶ 30,636 (1999), aff'd on recon., 2000 WL 199754 at 1-2 (Feb. 17, 2000).

Remcon does not identify a breach that prevented it from continuing the contract. Instead, it states that the Government committed "multiple material breaches over the course of the contract.[5] Under the strict formulation of the election doctrine, any act indicating an intent to continue the contract is an election. Cities Service Helex, 211 Ct. Cl. at 234-45 & nn.19-20, 22-

[5] Interestingly, most of the items listed on page 22 of Remcon's opposition brief as reasons the Government breached the contract occurred in 2001. If Remcon believed that the Government was in breach, then it should have promptly advised the Government in 2001 and cancelled the contract. Instead, Remcon accepted progress payments and payments for modifications, and now claims that the Government was in breach.

24, 28, 34. The continued acceptance of benefits under the contract is the most common and clearest sense of election by conduct. Id. If Remcon truly believed that the Government was in material breach, it should have canceled the contract.

Remcon never notified the Government that it considered the contract at an end. Instead, Remcon claims that its "June 28, 2003 claim and multiple communications in 2001, 2002, and 2003, placed Defendant on notice that it could not continue to perform the contract unless Defendant cured its breaches of contract." This is not good enough. A contractor has to clearly notify the Government of the breach and state that the contract is at an end. For example, in Roxco, Ltd. v. United States, 60 Fed. Cl. 39 (2004), a case relied upon by Remcon, the contractor informed the contracting officer that it "irrevocably and voluntarily abandons and terminated the above construction Contract immediately." At that point in time, the Government was aware that the contractor could not continue performance.

In the current case, Remcon did not notify the Government that the contract was at an end or that it was going to abandon the project. Its June 28, 2003 claim does not use the word breach or claim that the Government was in breach of the contract. Instead, Remcon stated that it would mobilize to the site and begin performance, but not until the Government entered into an alternative dispute resolution agreement with respect to disputed items. In other words, Remcon was holding the Government hostage. If the Government paid more money, then it could get the job done.

Further, Remcon's reliance upon Roxco, 60 Fed. Cl. 39, to support its contention that it had no duty to respond to the cure notice because the Government had materially breached the contract, is misplaced. In Roxco, the contractor issued an unequivocal cancellation letter to the

contracting officer telling the contracting officer that the contract was at an end. In the present case, Remcon did not send an equivocal cancellation to the Government. Instead, it elected to submit a claim under the disputes clause.

The disputes clause requires that work be done despite a disagreement as to liability, leaving the determination of liability for a later date. E.g., Alliant Techsystems, 178 F.3d at 1276-77. Allowing Remcon to demand a judicial determination up front as to liability before performing disputed work would result (and in this case, did result) in the very harm the duty to proceed is designed to prevent – contractor caused delay. Id. at 384. The claim, which was received by the Government on July 28, 2003, did not state Remcon would not continue. Rather, it demanded more money.

The Government's right to terminate the contract remains in effect where the contractor fails to put an end to the contract before the Government exercises its right to terminate. In this case, Remcon did not put an end to the contract before the Government terminated the contract.

## II. The Government Justifiably Issued a Cure Notice And Remcon Failed To Respond

Remcon asserts that a termination for default is a drastic solution that is imposed only upon good grounds and solid evidence. We agree. However, in the present case, Remcon's refusal to mobilize constituted compelling grounds upon which the contracting officer was justified in seeking adequate assurances of contract completion.

Remcon acknowledges that it did not provide the requested assurance that it could progress upon the project. Pl. Opp. 28. The United States is entitled to partial summary judgment for this reason alone. However, Remcon alleges that the cure notice preceding the termination was unjustified. Pl. Opp. at 18. Mainly, it asserts that the cure notice was not

justified because the Government already had received its claim when the contracting officer issued the cure notice. However, Remcon has failed to demonstrate that the mere filing of a claim under the CDA immunizes it from a cure notice.

Further, 2003 construction season at Sequoia was short. Pl. Opp. at 6. It began in May. Yet, even as late as July, Remcon had not mobilized to the site and advised the Government that it would not mobilize until the Government signed Remcon's proposed ADR agreement. Thus, the reason for the issuance of the cure notice is not difficult to understand. As we demonstrated in our moving brief, the contracting officer issued a cure notice because Remcon refused to mobilize. The Government could not reasonably be expected to allow the construction season go by without taking action.[6]

Remcon also asserts that we rely upon the "simplistic argument" that since Remcon did not technically respond to the cure notice, the termination for default was justified. Pl. Opp. 27. Not responding to a cure notice is an <u>independent ground</u> for a default. Def. Mot. at 17-18. The fact that the argument is simple and straightforward, in contrast to Remcon's attempts to create confusion, does not render the Government's argument invalid. Remcon has failed to supply any legitimate reason for failing to respond to the cure notice. Rather, it reminds the Court of all the alleged reasons it filed its claim. This is not sufficient.

---

[6] Remcon accuses the Government of issuing the cure notice in retaliation for its omnibus claim. It was not. The claim is dated June 28, 2003. It was not received until July 15, over two weeks later. See Letter of June 28, 2003, SA153. The Government issued its cure notice on July 24, 2003 and terminated the contract on August 13, 2003. See A1-2. Further, Remcon's retaliation argument is an argument that the contracting officer acted in bad faith. However, as previously noted, Remcon has failed to demonstrate bad faith here.

Remcon also asserts that it was excused from responding to the cure notice because "it had already provided the Government with a long and detailed explanation, by way of its certified claim, that it was not responsible for project delays, and felt that it could offer nothing further by way of explaining the actual cause of the delays on the project." Pl. Opp. 17. This did not excuse Remcon from responding to the cure notice. Indeed, Remcon has cited no authority that filing a claim excused it from responding to a legitimate request for adequate assurances.

## CONCLUSION

The Government respectfully requests that the Court should grant the Government partial summary judgment and dismiss Remcon's claim relating to the default termination.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

*s/Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
Assistant Director

*s/Richard P. Schroeder*
RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Attorneys for Defendant

OF COUNSEL

COLLEEN DULIN
U.S. Department of Interior
Office of the General Counsel
755 Parfet Street
Lakewood, CO 80215

September 2, 2005