307

FILE

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:

D5217 (DSC-CS)
SEKI-200Q
1443C8000010903

March 28, 2002

Remcon, Inc.
Attn: Mr. Stephen B. Christensen
P O Box 758
751 Wakefield Court
Oakdale, California 95361

Dear Sir:

VIA FACSIMILE (209) 847-9189

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443C8000010903, Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Response to Remcon's "Request for Equitable Adjustment"

In your request for equitable adjustment, you state that the following items have resulted in Remcon's work on the Sherman Tree Project being severely impacted.

1. Differing site conditions.
2. Changes in the character of the work.
3. Increases in quantities.
4. Overall increase in the scope of work required.
5. Design changes.

Please provide the following information so that the National Park Service (NPS) can properly evaluate your request for equitable adjustment:

1. A detailed description of all differing site conditions with the associated impact on the work.
2. A detailed description of all changes in character of the work with the associated impact on the work.
3. A detailed description of all increases in quantities with the associated impact on the work.
4. A detailed description of all overall increase(s) in the scope of work.

388804

5. A detailed description of all design changes with the associated impact(s) on the work.

Your request for equitable adjustment contained the following statements:

1. "During excavation for the access road, Remcon encountered granitic rock which clearly exceeded the seismic velocities reported in the Geotechnical Report."

   Please provide test results that were used for the basis of your conclusion.

2. "Remcon spent numerous hours attempting to rip this material with little to no results."

   Please provide documentation of hours, dates, equipment used and the results obtained in your attempt to rip this material.

3. "In addition to the added cost of drilling and shooting the granitic rock, Remcon's cost for handling the rock greatly increased."

   Please provide an explanation for Remcon's cost increase. Was the quantity of rock affected by blasting?

4. "Remcon's cost for earthwork greatly increased as a result of these impacts. As well as causing significant delays to the project and extending the time estimated for completion of the Project."

   Please provide an explanation with backup for Remcon's cost and delays. Was the quantity of earthwork increased by the blasting operation? The NPS approved your request for construction of a temporary access road to allow you to by-pass the area where you were blasting. The purpose of this by-pass road was to prevent delays to your other work by allowing ingress and egress to the Upper Sherman Tree area while your blaster was working on the Access Road.

In addition to the above, the NPS still has not received an acceptable project schedule for this Project. Please refer to letter dated March 4, 2002.

The above material, including an acceptable project schedule, will be required before the NPS can complete the evaluation of your request for equitable adjustment.

If you have any questions, please contact me at 303-969-2419.

Sincerely,

Wm. H. DeOcampo
Contracting Officer's Representative

388805

Bcc:
Reg. Dir., Pacific West Region
Supt., Pacific Coast/Great Basin SO
Supt., SEKI
DSC-CA, Rod Keiscome
DSC-PDS, J. Cody
DSC-PM, Todd

388806

310

04/02/02 11:53 ☎303 987 6645 NPS-DSC-CA 001

***************************
*** ACTIVITY REPORT ***
***************************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO. | 8989 |
| CONNECTION TEL | 82098479189 |
| CONNECTION ID | |
| START TIME | 04/02 11:52 |
| USAGE TIME | 01'19 |
| PAGES | 2 |
| RESULT | OK |

388807

311

FILE

# REMCON, Inc.

P.O. Box 758
751 Wakefield Court
Oakdale, CA 95361
Telephone: 209/847-9186
Fax: 209/847-9189

April 3, 2002

Mr. Wm. H. DeOcampo
National Park Service
P.O. Box 25287
Denver, CO 80225-0287

Reference: Sequoia and Kings Canyon National Park, Contract No. 1443C8000010903
Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Responses to Equitable Adjustment Letter

Dear Willie:

The following is a response to your letter of March 28, 2002, regarding REMCON's request for Equitable Adjustment on the Sherman Tree Parking Project.

Your letter requests REMCON provide the NPS with additional information so the NPS can properly evaluate REMCON's request. There were five items listed under this section of your letter.

1. *A detailed description of all differing site conditions with the associated impact on the work.*
2. *A detailed description of all changes in character of the work with the associated impact on the work.*
3. *A detailed description of all increases in quantities with the associated impact on the work.*
4. *A detailed description of all overall increase(s) in the scope of work.*
5. *A detailed description of all design changes with the associated impact(s) on the work.*

I'm having trouble understanding this request. REMCON provided the NPS with a detailed description of each impact, the legal justification for such a request and the costs associated to each impact. I fully believe each individual request packet provides all the information requested above. If you believe this statement to be incorrect please provide REMCON with individual points of disagreement so we can better respond to your request.

The third section of your letter individually addresses the following items.

1. *"During excavation for the access road, REMCON encountered granitic rock which clearly exceeds the seismic velocities reported in the Geotechnical Report." Please provide test results that were used for the basis of your conclusion.*

   The NPS utilized the Federal Governments standard specification for rock excavation, which was developed with the implementation of the Differing Site Condition clause incorporated in all Federal Contracts. That specification utilizes the "standard of the industry" ability to rip material with a Cat D8 Dozer/Ripper rather than test results. The Differing Site Condition clause provides the Contractor with an assurance that when conditions prevent excavation work from being done at a production rate, standard to the industry, that the contractor will receive additional compensation. The basis of conclusion is not geotechnical test results but whether a Cat D8 Dozer/Ripper could productively excavate the material. In this case it was clear that REMCON was not

able to excavate this granitic rock by means of ripping as represented in the contract specifications.

2. *"REMCON spent numerous hours attempting to rip this material with little to no results." Please provide documentation of hours, dates, equipment used and the results obtained in your attempt to rip this material."*

   REMCON provided a detailed daily breakdown to the NPS of the amount of time the Cat D8 Dozer/Ripper operated as well as other units. That information is contained in REMCON's narrative's Rock Excavation and Earthwork. Additionally, all the cost backup was provided for each of these two issues along with REMCON's daily diaries.

3. *"In addition to the added cost of drilling and shooting the granitic rock, REMCON's cost for handling the rock greatly increased." Please provide an explanation for REMCON's cost increase. Was the quantity of rock affected by blasting?*

   Again, REMCON provide a complete narrative explaining REMCON's position with regard to the increased costs as it relates to rock excavation (blasting, excavation and handling). There is an obvious increase in cost from soil excavation versus rock excavation. Additionally, there is an overall increase in cost resulting from the added care needed to protect the natural resources within the blasting zone. REMCON and California Drilling and Blasting utilized great care to protect against any type of fly rock during blasting and excavation operations.

4. *"REMCON's cost for earthwork greatly increased as a result of these impacts. As well as causing significant delays to the project and extending the time estimated for completion of the Project." Please provide an explanation with backup for REMCON's cost and delays. Was the quantity of earthwork increased by the blasting operation? The NPS approved your request for construction of a temporary access road to allow you to by-pass the area where you were blasting. The purpose of this by-pass was to prevent delays to your other work by allowing ingress and egress to the Upper Sherman Tree area while your blaster was working on the Access Road.*

   Under separate cover REMCON provided the NPS with a detailed explanation of REMCON's additional costs and delays. REMCON is unable to provide a response to your question regarding an increase in quantity as a result of blasting operations. The NPS has not provided REMCON with any information to base a response. In the calculation of earthwork quantity did the NPS base their quantities on soil excavation or rock excavation or some percentage of each type? What percentage of swell did the NPS utilize in calculating the overall excess in quantity?

   The temporary access from the proposed bus parking area to the upper parking area was used to transport material to the crusher not for access of highway trucks. The steepness of the grade prevented this road from being used as general access. Additionally, a large part of the contract delays were a result of the overrun in quantity as it related to the Off-Haul from the Park.

Page 3 April 3, 2002

5. With regard to the construction schedule, REMCON is fully aware that the NPS has not received a final schedule. Earlier this spring REMCON provided the NPS with two preliminary schedules and requested that the NPS review and provide REMCON with information regarding construction of the retaining wall along the Generals Highway. To date we have not received the requested information. We need to know if REMCON is going to be able to begin the wall in May or whether it needs to be postponed pending available parking. As soon as we receive a response to this request we can complete the schedule within a few hours.

As scheduled, I will be in NPS's office on Monday morning to discuss these issues. I believe with mutual cooperation we can resolve many of these issues at that time.

If you have any questions, please feel free to contact me at (209)847-9186.

Sincerely,

Stephen B. Christensen
President

05-06-2002 10:56 From-Sequoia N Park 559 565 3730 T-072 P.001/004 F-430

RECEIVED 314
MAY 07 2002

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI 200Q
1443CX8000 01 0903

April 24, 2002

Remcon, Inc.
Mr. Steve Christensen
P.O. Box 758
751 Wakefield Court
Oakdale, California 95361

Dear Sir:

Reference: Sequoia & Kings Canyon National Parks, Tulare County, California, Contract No. 1443CX8000 01 0903, Giant Forest, Sherman Tree Parking Area, SEKI-200Q

Subject: Response to Request for Equitable Adjustment Letter dated April 3, 2002

The following is a response to your letter of April 3, 2002 regarding the Request for Equitable Adjustment. Your letter was a response to a letter from the Government dated March 28, 2002 wherein additional information was requested. The letter of March 28, 2002 cited the following five items:

1. A detailed description of all differing site conditions with the associated impact on the work.

2. A detailed description of all changes in character of the work with the associated impact on the work.

3. A detailed description of all increases in quantities with the associated impact on the work.

4. A detailed description of all overall increases(s) in the scope of work.

5. A detailed description of all design changes with the associated impact(s) on the work.

Your response stated that you were having trouble understanding this request, and that Remcon had provided the National Park Service (NPS) with a detailed description of each impact, the legal justification for such a request and the costs associated to each impact.

The following is our response:

1. Differing Site Conditions – Submit site specific details for differing site conditions including location, date that Remcon became aware of any differing site conditions, nature of the differing site conditions and copies of the required written notice to the Contracting Officer.

500021

To date the NPS has only received copies of Extra Work Bills, Daily Extra Work Report Summary's and your "Request for Equitable Adjustment". None of this includes documentation or substantiation that this work is not included in and/or required by the Contract Documents.

2. Change in Character of the Work – The NPS is not aware of this situation and Remcon has not documented any work to date that would be considered a change in the character of the work.

3. The only significant change in quantity that the NPS is aware of is the material hauled out of the park. This has been addressed and will be resolved with the Remcon.

   Remcon needs to document and submit details for any other change(s) in quantity that they have experienced.

4. The NPS is not aware of any increases in the scope of work.

   Remcon needs to document and submit details for any other increase in the scope of work that they have experienced.

5. The only design changes that the NPS is aware of includes the adjustments of the Upper Sherman Tree Access Road centerline (2 locations) that were reviewed and adjusted with Remcon's concurrence, and the adjustment of the cut slope in the upper parking lot. These slope adjustments were made at the request of Remcon and resulted in a reduction for the excavation quantity.

The following is from your Request for Equitable Adjustment (REA) which was placed in our letter of March 28, 2002 and your response to it:

1. Your REA: During excavation for the access road, Remcon encountered granitic rock which clearly exceeded the seismic velocities reported in the Geotechnical Report.

- Our letter of March 28, 2002: Please provide test results that were used for the basis of your conclusion.

Your letter of April 3, 2002 stated that "The basis of conclusion is not geotechnical test results by whether a Cat D8 dozer/Ripper could productively excavate the material." and "it was clear that Remcon was not able to excavate this granitic rock by means of ripping as represented in the contract specifications."

- Our response: Remcon's "Contractor's Quality Control Daily Reports" (prepared by Remcon's QAQC Supervisor) make no reference to any attempts by Remcon to rip any of the rock encountered. In addition, Remcon has never requested that NPS representatives witness any attempts to rip the rock and the NPS representatives have never observed Remcon attempting to rip the rock with a CAT D-8.

2. Your REA: Remcon spent numerous hours attempting to rip this material with little to not results."

- Our letter of March 28, 2002: Please provide documentation of hours, dates, equipment used and the results obtained in your attempt to rip this material.

Your letter of April 3, 2002 that Remcon provided a detailed daily breakdown to the NPS of the amount of time the Cat D8 Dozer/Ripper operated as well as other units.

- Our response: The NPS has not received a detailed explanation from Remcon. To date the NPS has only received copies of Remcon's "Contractor's Quality Control Daily Reports" (prepared by Remcon's QAQC Supervisor), Extra Work Bills, Daily Extra Work Report Summary's and Remcon's "Request for Equitable Adjustment". None of the above includes a detailed explanation.

- Remcon's "Contractor's Quality Control Daily Reports" make no reference to any attempts by Remcon to rip any of the rock encountered. In addition, Remcon has never requested that NPS representatives witness any attempts to rip the rock and the NPS representatives have never observed Remcon attempting to rip the rock with a CAT D-8.

3. Your REA: In addition to the added cost of drilling and shooting the granitic rock, Remcon's cost for handling the rock greatly increased.

- Our letter of March 28, 2002: Please provide an explanation for Remcon's cost increase. Was the quantity of rock affected by blasting?

Your letter of April 3, 2002: "Remcon provide a complete narrative explaining Remcon's position with regard to the increased costs as it related to rock excavation.

- Our response: The quantity of rock has not changed. The only change is that Remcon elected to use a blasting operation instead of a ripping operation to fragment the rock. The NPS assumes that this was decision made by Remcon for their convenience.

4. Your REA: Remcon's cost for earthwork greatly increased as a result of these impacts. As well as causing significant delays to the project and extending the time estimated for completion of the project.

- Our letter of March 28, 2002: Please provide an explanation with backup for Remcon's cost and delays. What was the quantity of earthwork increased by the blasting operation? The NPS approved your request for construction of a temporary access road to allow you to by-pass the area where you were blasting. The purpose of this by-pass road was to prevent delays to your other work by allowing ingress and egress to the Upper Sherman Tree Parking area while your blaster was working on the Access Road.

Your letter of April 3, 2002: Under separate cover Remcon provided the NPS with a detailed explanation of Remcon's additional costs and delays.

- Our response: The NPS has not received a detailed explanation from Remcon. To date the NPS has only received copies of Remcon's "Contractor's Quality Control Daily Reports" (prepared by Remcon's QAQC Supervisor), Extra Work Bills, Daily Extra Work Report Summary's and Remcon's "Request for Equitable Adjustment". None of the above includes a detailed explanation.

- Remcon's "Contractor's Quality Control Daily Reports" make no reference to any attempts by Remcon to rip any of the rock encountered. In addition, Remcon has never requested the NPS representatives to witness any attempts to rip the rock and the NPS representatives have never observed Remcon attempting to rip the rock with a CAT D-8.

It is not the NPS's responsibility to detail the excavation quantities. The excavation limits, for measurement and payment are established by the Contract Documents. Excavation and grading was bid as "Lump Sum" and quantities (excavation and embankment) are not included in the Contract Documents. Cross sections are included in the Contract Documents so that the Contractor can performed their own calculations to determine the actual quantities.

The NPS has calculated excavation/embankment quantities for the access road and the parking lots with the results agreeing with the designer and the quantities submitted by Remcon. In addition, the NPS had the Psomas surveyors field check the Access Road and parking lot contours and verified that the topography and grades shown on the Contract Drawings are correct. Psomas also verified that the Access Road slopes have not been constructed per the Contract Drawings (fill slopes do not include the 3:1 slope rounding and in some cases are steeper than the required 2:1 slope).

The temporary access road that the NPS permitted Remcon to construct was used for access to the parking lot area when the Access Road was blocked by other operations (including the blasting operation). This road was by the Contractor's staff, as well as the NPS representatives, and was traversed by small pickups and cars.

5. Our letter March 28, 2002 states "In addition to the above, the NPS still has not received an acceptable project schedule for this project. Please refer to our letter dated March 4, 2002.

Your letter of April 3, 2002 stated that your are fully aware that the NPS has not received a final schedule and that you provided the NPS with two preliminary schedules and requested that the NPS review and provide Remcon with information regarding construction of the retaining wall along the Generals Highway. You stated: "To date we have not received the requested information."

Our response: The NPS responded on March 4, 2002 with detailed comments/requirements for the Project Schedule that Remcon submitted (schedule dated 2/6/02).

Sincerely,

Wm. H. DeOcampo
Contracting Officer's Respresentative

CS:TLang (Russell):tcl:04/08/02:2961:REA-response-2

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

09.18.02

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443CX8000010903

MILLER ACT RESPONSE

Dowling, Aaron & Keeler, Inc.
6051 North Fresno St., Ste 200
Fresno, California 93710-5280

Dear Mr. Weiland:

Reference: The Twining Laboratories, Inc v. Remediation Constructors, Inc. dba REMCON

Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443CX8000010903, Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Miller Act Response

This letter acknowledges your letter of August 30, 2002, issued on behalf of The Twining Laboratories, Inc, alleging nonpayment for work performed under the above referenced contract dated May 9, 2001, under which Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, California 95361, furnished a bond guaranteeing payment to persons supplying labor or material used in the prosecution of the work. The surety on the payment bond in this case is Great American Insurance Company, Mountlake Terrace, Washington 98043.

The contract does not authorize the Government to withhold payments from the contractor because of his failure to pay subcontractors or material suppliers for labor or material. By copy of this letter, we are advising the prime contractor and his surety of your claim.

Persons furnishing labor or material to the prime contractor for the work covered by the above-mentioned contract may file suit with the surety for payment on the payment bond after the expiration of 90 days from the date the labor or material was furnished, provided suit is filed within one year from such date. We are enclosing a circular containing the text of the Miller Act, which is the law requiring the contractor to furnish a payment bond, together with additional information concerning the protection afforded by the bond.

Neither this letter nor any advice or assistance which you may receive from any National Park Service office regarding procedures for establishing a claim under the Miller Act should be construed as a determination that your claim is of a character properly cognizable under the act.

Sincerely,

Rodney K. Keiscome
Contracting Officer

Enclosure



318

cc:
Great American Insurance Company, 6912 220[th] St., SW, Suite 315, Mountlake Terrace, WA 98043
Bond No. 5435816

Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, CA 95361

The Twining Laboratories, Inc., 2527 No. Fresno St., Fresno, CA 93703

bcc: (all w/o enc.)
Reg.Dir., Pacific West Region
Supt., SEKI-200Q
DSC-PM, Giller

CS:TLang:tma:6746:9/17/02:MillerResponse.doc

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443CX8000010903

FEB 22 2001

MILLER ACT RESPONSE

Bergeson Eliopoulos, LLP
Attn: William T. Eliopoulos
55 Almaden Boulevard, Suite 400
San Jose, California 95113

Dear Mr. Eliopoulos:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443CX8000010903, Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Miller Act Response

This acknowledges your letter of February 13, 2002, on behalf of your client, California Drilling & Blasting Co., Inc., alleging nonpayment for work performed under the above referenced contract dated May 9, 2001, under which Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, California 95361, furnished a bond guaranteeing payment to persons supplying labor or material used in the prosecution of the work. The surety on the payment bond in this case is Great American Insurance Company, Mountlake Terrace, Washington 98043.

The contract does not authorize the Government to withhold payments from the contractor because of his failure to pay subcontractors or material suppliers for labor or material. By copy of this letter, we are advising the prime contractor and his surety of your claim.

Persons furnishing labor or material to the prime contractor for the work covered by the above-mentioned contract may file suit with the surety for payment on the payment bond after the expiration of 90 days from the date the labor or material was furnished, provided suit is filed within one year from such date. We are enclosing a circular containing the text of the Miller Act, which is the law requiring the contractor to furnish a payment bond, together with additional information concerning the protection afforded by the bond.

Neither this letter nor any advice or assistance which you may receive from any National Park Service office regarding procedures for establishing a claim under the Miller Act should be construed as a determination that your claim is of a character properly cognizable under the act.

Sincerely,

Rodney Keiscome

Rodney K. Keiscome
Contracting Officer

Enclosure

cc:

California Drilling and Blasting Co., Inc., P.O. Box 4607, El Monte, CA 91734-0607
Great American Insurance Company, 6912 220th St., SW, Suite 315, Mountlake Terrace, WA 98043, Bond No. 5435816
Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, CA 95361

bcc: (all w/o enc.)
Reg. Dir., Pacific West Region
Supt., SEKI
DSC-PM, Todd

CS:TLang:jj:2170:2/22/02:MillerResponse2

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443CX8000010903

AUG 0 9 2002

MILLER ACT RESPONSE

Kenneth H. Smith, Jr., President
Ken Smith Masonry, Inc.
40365 Brickyard Drive, No. 101
Madera, California 93638

Dear Mr. Smith:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443CX8000010903, Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Miller Act Response

This acknowledges your letter of August 9, 2002, alleging nonpayment for work performed under the above referenced contract dated May 9, 2001, under which Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, California 95361, furnished a bond guaranteeing payment to persons supplying labor or material used in the prosecution of the work. The surety on the payment bond in this case is Great American Insurance Company, Mountlake Terrace, Washington 98043.

The contract does not authorize the Government to withhold payments from the contractor because of his failure to pay subcontractors or material suppliers for labor or material. By copy of this letter, we are advising the prime contractor and his surety of your claim.

Persons furnishing labor or material to the prime contractor for the work covered by the above-mentioned contract may file suit with the surety for payment on the payment bond after the expiration of 90 days from the date the labor or material was furnished, provided suit is filed within one year from such date. We are enclosing a circular containing the text of the Miller Act, which is the law requiring the contractor to furnish a payment bond, together with additional information concerning the protection afforded by the bond.

Neither this letter nor any advice or assistance which you may receive from any National Park Service office regarding procedures for establishing a claim under the Miller Act should be construed as a determination that your claim is of a character properly cognizable under the act.

Sincerely,

Rodney K. Keiscome
Contracting Officer

Enclosure



322

cc:

Great American Insurance Company, 6912 220th St., SW, Suite 315, Mountlake Terrace, WA 98043, Bond No. 5435816

Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, CA 95361

bcc: (all w/o enc.)
Reg. Dir., Pacific West Region
Supt., SEKI
DSC-PM, Giller
DSC-FDC-Construction DeOCampo (COR)

CS:RKeiscome:rkk:2048:8/9/02:MillerResponse3

# United States Department of the Interior

NATIONAL PARK SERVICE
DENVER SERVICE CENTER
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287

T. Lang 06.02.03

IN REPLY REFER TO:
D5217 (DSC-CS)
SEKI-200Q
1443CX8000010903

JUN 0 2003

MILLER ACT RESPONSE

Industrial Waste and Salvage
Orange Avenue Disposal
3280 South Orange
P.O. Box 446
Fresno, California 93709

Dear Mr. Caglia:

Reference: Sequoia and Kings Canyon National Parks, Tulare County, California, Contract No. 1443CX8000010903, Giant Forest, Sherman Tree Parking Area, Package No. SEKI-200Q

Subject: Miller Act Response

This letter acknowledges your letter of May 27, 2003, alleging nonpayment for work performed under the above referenced contract dated May 9, 2001, under which Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, California 95361, furnished a bond guaranteeing payment to persons supplying labor or material used in the prosecution of the work. The surety on the payment bond in this case is Great American Insurance Company, 6912 220th St., SW, Suite 315, Mountlake Terrace, Washington 98043.

The contract does not authorize the Government to withhold payments from the contractor because of his failure to pay subcontractors or material suppliers for labor or material. By copy of this letter, we are advising the prime contractor and his surety of your claim.

Persons furnishing labor or material to the prime contractor for the work covered by the above-mentioned contract may file suit with the surety for payment on the payment bond after the expiration of 90 days from the date the labor or material was furnished, provided suit is filed within one year from such date. We are enclosing a circular containing the text of the Miller Act, which is the law requiring the contractor to furnish a payment bond, together with additional information concerning the protection afforded by the bond.

Neither this letter nor any advice or assistance which you may receive from any National Park Service office regarding procedures for establishing a claim under the Miller Act should be construed as a determination that your claim is of a character properly cognizable under the act.

Sincerely,

Rodney K. Keiscome
Contracting Officer

Enclosure

cc: (all w/o enc.)
Great American Insurance Company, 6912 220th St., SW, Suite 315, Mountlake Terrace, WA 98043
Bond No. 5435816
Remcon, Inc., P.O. Box 758, 751 Wakefield Court, Oakdale, CA 95361

bcc: (all w/o enc.)
Reg. Dir., Pacific West Region
Supt., SEKI-200Q
DSC-PM, Giller
DSC-PDS, DeoCampo

CS:TLang:jp:2046:5/30/03:MillerResponse.doc



325

EX. 69
PENROSE 326

# DAILY LOG OF CONSTRUCTION

M T W Th F Pkg. No. SEKI-200Q

PROJECT: Giant Forest Site Restoration and Facilities

| | |
|---|---|
| RK<br>quoia and Kings Canyon National Parks | CONTRACT NO.<br>1443CX800010903 |
| | DATE<br>June 1, 2001 |
| NTRACTOR<br>emcon | CONTRACTOR REPRESENTATIVE ON JOB<br>Greg Kasparek |
| WEATHER *(Rain, Snow, Cloudy, Windy, etc.)*<br>Warm, clear | TEMP. High / Low |
| GROUND *CONDITIONS (Dry, Damp, Wet, Frozen)*<br>Dry | |

NO. CONTRACTOR'S MEN BY JOB CATEGORIES

NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES

| EQUIPMENT ON JOB<br>Brief description of size | No. Units | Working Yes | No |
|---|---|---|---|
| | | | |
| | | | |

MATERIALS DELIVERED

OFFICIAL VISITORS TO JOB SITE

STATUS OF WORK

ITEM NO. Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken.

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

Marked trees for removal in Upper Sherman area, as shown on sheets US1 through US8. Trees to be moved are marked with blue paint. As agreed during the preconstruction conference, only those trees arked on drawings are to be removed. Once survey is staked out, the remaining trees within the grading limits will be evaluated for removal (Steve of Remcon didn't want to layout survey prior to tree removal). I had told Remcon at the precon, and reminded them today, that tree protection (with the exception of lumber barricades, of which there aren't any to install in Upper Sherman) must be installed prior to any demolition or tree removal activities. A survey of existing damage to trees must also be completed prior to start of work.

A few trees shown for removal appear to be outside the disturbance limits—we will check the grading around these trees and see if they could be potential "save trees." Only about 252 of total of 270 trees for removal were found on the drawings, and several of the trees shown on the drawings can't be found in the field, so fewer than the total of 270 will probably be removed.

Greg and Mark helped mark trees from 1030-1230. They did not return after lunch, so I continued on my own. At the end of the day, sheets US6 and 7 were completely marked, and half of US5 and US8 were marked.

SAFETY COMMENTS

DIFFICULTIES WITH CONTRACTOR OR REPRESENTATIVE

UNFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)*

| SIGNATURE | Title<br>Ecologist |
|---|---|

FORM QCA-01A

# DAILY LOG OF CONSTRUCTION

M T W Th _F_ Pkg. No. SEKI-200Q

PROJECT: Giant Forest Site Restoration and Facilities

| | | |
|---|---|---|
| [PA]RK<br>[Se]quoia and Kings Canyon National Parks | CONTRACT NO.<br>1443CX800010903 | DATE<br>June 4, 2001 |
| [CO]NTRACTOR<br>[K]emcon | CONTRACTOR REPRESENTATIVE ON JOB<br>Greg Kasparek | |

| WEATHER *(Rain, Snow, Cloudy, Windy, etc.)* | TEMP. High | TEMP. Low | GROUND CONDITIONS *(Dry, Damp, Wet, Frozen)* |
|---|---|---|---|
| Warm, clear | | | Dry |

| NO. CONTRACTOR'S MEN BY JOB CATEGORIES | NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES |
|---|---|
| | |

| EQUIPMENT ON JOB<br>Brief description of size | No. Units | Working Yes | Working No | MATERIALS DELIVERED |
|---|---|---|---|---|
| | | | | |
| | | | | OFFICIAL VISITORS TO JOB SITE |

## STATUS OF WORK

| ITEM NO. | Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken. |
|---|---|
| | |

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

[C]ompleted marking trees for removal in Upper Sherman site, as shown on US1 through US8. Mark informed [m]e that the arrival of the logging sub was delayed for a week since they hadn't received their notice to [pr]oceed yet. I reminded him that in addition to this, tree protection must be in place and a survey of existing damage to trees must be completed prior to logging. He said they have laborers and orange fencing arriving Wednesday, and we will schedule the existing damage survey for this week (probably Thursday) with the project inspector.

SAFETY COMMENTS

DIFFICULTIES WITH CONTRACTOR OR REPRESENTATIVE

UNFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)*

| SIGNATURE | Title<br>Ecologist |
|---|---|

FORM QCA-01A

# DAILY LOG OF CONSTRUCTION

M T W Th F    Pkg. No. SEKI-200Q    328

PROJECT: Giant Forest Site Restoration and Facilities

| | | |
|---|---|---|
| ?K<br>?quoia and Kings Canyon National Parks | CONTRACT NO.<br>1443CX800010903 | DATE<br>June 7, 2001 |
| ?NTRACTOR<br>?emcon | CONTRACTOR REPRESENTATIVE ON JOB<br>Steve Christensen | |

| WEATHER (Rain, Snow, Cloudy, Windy, etc.) | TEMP. High | TEMP. Low | GROUND CONDITIONS (Dry, Damp, Wet, Frozen) |
|---|---|---|---|
| Warm, clear | | | Dry |

| NO. CONTRACTOR'S MEN BY JOB CATEGORIES | NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES |
|---|---|
| 5 laborers | |

| EQUIPMENT ON JOB Brief description of size | No. Units | Working Yes | Working No | MATERIALS DELIVERED |
|---|---|---|---|---|
| | | | | |
| | | | | OFFICIAL VISITORS TO JOB SITE |

## STATUS OF WORK

ITEM NO. Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken.

Began placing tree protection (orange construction fencing) in US parking lot area.

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

/alked site with Bob Russell and Steve Christensen to conduct the plant condition inventory as required in ?351. Damage was noted on 6 trees to be retained. Tree protection was identified and marked. I had ?arked trees shown on the drawings for removal with blue paint last week. Steve also painted some ?dditional trees (less than 12" diameter and not shown on drawings) for removal that were obviously within the extent of new asphalt. A few additional trees were marked that were greater than 12" diameter but were not shown on the drawings, or had died in the past year. The following summarizes the trees marked for removal:

US1—10 trees, 6 stumps/snags. Three trees along sight line not yet marked (the two trees just west of the entrance shown for removal were not in sight line).

US2—19 trees, 9 stumps/snags (1 deleted as good wildlife snag, well off road, not a hazard).

US3—19 trees, 9 stumps/snags (1 tree shown on drawing not found, 1 additional snag leaning over road).

US4—33 trees, 7 stumps/snags (1 additional tree, died in the past year).

US5—50 trees, 18 stumps/snags (2 additional trees:1 dead in past year, 1 marked as a hazard).

US6—42 trees, 10 stumps/snags (2 additional trees not shown on drawing; 1 additional stump not shown on drawing; 1 tree shown for removal is well within island and can be saved).

US7—13 trees, 1 snag/stump (1 additional tree not shown on drawing).

US8—66 trees, 19 snags/stump (1 additional tree not shown on drawing; 1 additional snag not shown on drawing; 2 trees not yet marked to consider for saving).

Total trees marked on US1 through US8: 252. Total snags/stumps marked on US1 through US8: 79.

?or sheets T1 and T2, there was one additional tree that recently died, so we marked a total of 1 tree to ?move and 5 stumps/snags to remove.

? contacted Andrea Gregor at DHM Design to see if three trees in the lower parking lot island could be saved. ?wo are possibilites—she will discuss with Willie DeoCampo to see if design can accommodate without too

much difficulty.

SAFETY COMMENTS

FICULTIES WITH CONTRACTOR OR REPRESENTATIVE

NFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)*

| SIGNATURE | Title |
|---|---|
| | Ecologist |

FORM QCA-01A

# DAILY LOG OF CONSTRUCTION

M T W Th F Pkg. No. SEKI-200Q 330

PROJECT: Giant Forest Site Restoration and Facilities

| | |
|---|---|
| ...K<br>...quoia and Kings Canyon National Parks | CONTRACT NO.<br>1443CX800010903 |
| | DATE<br>June 11, 2001 |
| ...NTRACTOR<br>...emcon | CONTRACTOR REPRESENTATIVE ON JOB<br>Mark Tedrose |
| WEATHER (Rain, Snow, Cloudy, Windy, etc.)<br>Warm, clear | TEMP. High / Low |
| GROUND CONDITIONS (Dry, Damp, Wet, Frozen)<br>Dry | |

| NO. CONTRACTOR'S MEN BY JOB CATEGORIES | NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES |
|---|---|
| 4 laborers<br>1 operator (Terry)<br>1 foreman (Mark, 2 hours) | Sierra Resource Management:<br>2 fellers (Richard, David), 1 sawyer (?),<br>2 operators (Carl, ?), 1 laborer (Ross)<br>4 independent truckers |

| EQUIPMENT ON JOB<br>Brief description of size | No. Units | Working Yes | Working No | MATERIALS DELIVERED |
|---|---|---|---|---|
| Remcon: Cat 928F loader | 1 | x | | |
| water truck | 1 | | x | |
| SRM: skidder | 1 | x | | |
| loader | 1 | x | | OFFICIAL VISITORS TO JOB SITE |

## STATUS OF WORK

| ...EM ...O. | Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken. |
|---|---|
| ..., 3 | Continued placing tree protection and orange construction fencing in US entrance road area. |
| ...26 | Began removing contaminated wood chips from park—4 truck loads. |
| 32 | Began cutting, skidding, and decking trees marked for removal. Contractor had about an hour's delay this morning because they hadn't brought Borax to the site, and immediate treatment of cut stumps with Borax is required in the specs. I called down to Tom Warner (SEKI Forester) who said he would bring a couple of bags up to get them started. In the meantime, he said they could continue work as long as the stumps were treated today. I returned to the site, and told them they could continue work. |

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

Completed marking trees for removal, based on input from COR and designers on which trees could be saved, and on finding a few more hazards that should be removed prior to construction. Following are the updated quantities:

US1—12 trees, 6 stumps/snags. Two trees on east sight line marked today (one shown on drawings for removal, one not shown)

US2—19 trees, 9 stumps/snags

US3—19 trees, 9 stumps/snags

US4—33 trees, 7 stumps/snags

US5—52 trees, 18 stumps/snags. Two hazard trees marked today (not shown on dwgs for removal).

US6—42 trees, 10 stumps/snags

...JS7—13 trees, 1 snag/stump

...S8—68 trees, 16 snags/stumps. Two trees marked today (one considered for saving and rejected; one not ...hown on drawing but within asphalt area). Three snags/stumps in pit no longer present.

...otal trees marked on US1 through US8: 258. Total snags/stumps marked on US1 through US8: 76.

SAFETY COMMENTS

| DIFFICULTIES WITH CONTRACTOR OR REPRESENTATIVE | |
|---|---|
| | |
| UNFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)* | |
| ...gging contractor didn't bring Borax to job (see item 32 above) | |
| SIGNATURE | Title<br>Ecologist |

FORM QCA-01A

# DAILY LOG OF CONSTRUCTION

M T W Th F Pkg. No. SEKI-200Q 332

PROJECT: Giant Forest Site Restoration and Facilities

| | | |
|---|---|---|
| ƎK<br>quoia and Kings Canyon National Parks | CONTRACT NO.<br>1443CX800010903 | DATE<br>June 12, 2001 |
| )NTRACTOR<br>emcon | CONTRACTOR REPRESENTATIVE ON JOB<br>Mark Tedrose | |
| WEATHER *(Rain, Snow, Cloudy, Windy, etc.)*<br>Warm, clear | TEMP. High / Low | GROUND *CONDITIONS (Dry, Damp, Wet, Frozen)*<br>Dry |

| NO. CONTRACTOR'S MEN BY JOB CATEGORIES | NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES |
|---|---|
| | Sierra Resource Management:<br>2 fallers (Richard, David), 1 sawyer (Saul),<br>2 operators (Carl, Kurt), 1 laborer (Ross, morning)<br>4 independent truckers |

| EQUIPMENT ON JOB<br>Brief description of size | No. Units | Working Yes | Working No | MATERIALS DELIVERED |
|---|---|---|---|---|
| Remcon: Cat 928F loader | 1 | x | | |
| water truck | 1 | | x | |
| SRM: skidder | 1 | x | | |
| Dozer with winch | 1 | x | | |
| loader | 1 | x | | OFFICIAL VISITORS TO JOB SITE |

## STATUS OF WORK

| ITEM NO. | Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken. |
|---|---|
| 32 | Continued cutting, skidding, and decking trees marked for removal, and began trucking from park (8 loads). Contractor had their own Borax on site today. One tree was damaged—a small (approximately 6" dbh) sugar pine—during falling. More than 30% of the tree canopy was removed, and the tree also sustained bark damage around more than 20% of the trunk circumference. I will have the SEKI Forester, Tom Warner, assess the tree his next time up the hill. Otherwise work is proceeding fine. |

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

Three more trees marked today. The two trees shown for removal just west of the entrance road were not marked because they were not actually in the sight line, but Bob Russell realized they were in the culvert alignment. One additional white fir was marked on US8—it had been part of a tight grouping, and when others were removed it was apparent that it had a crooked top and would be subject to wind damage. Revised total: 261 trees, 76 snags/stumps.

SAFETY COMMENTS

Met with all Remcon employees today to talk about bears, safety, and natural resource protection.

DIFFICULTIES WITH CONTRACTOR OR REPRESENTATIVE

UNFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)*

| SIGNATURE | Title<br>Ecologist |
|---|---|

FORM QCA-01A

# DAILY LOG OF CONSTRUCTION

M T W Th F Pkg. No. SEKI-200Q 333

PROJECT: Giant Forest Site Restoration and Facilities

| RK | CONTRACT NO. | DATE |
|---|---|---|
| quoia and Kings Canyon National Parks | 1443CX800010903 | June 13, 2001 |

| NTRACTOR | CONTRACTOR REPRESENTATIVE ON JOB |
|---|---|
| emcon | Mark Tedrose |

| WEATHER *(Rain, Snow, Cloudy, Windy, etc.)* | TEMP. High | TEMP. Low | GROUND CONDITIONS *(Dry, Damp, Wet, Frozen)* |
|---|---|---|---|
| Warm, clear | | | Dry |

| NO. CONTRACTOR'S MEN BY JOB CATEGORIES | NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES |
|---|---|
| | Sierra Resource Management:<br>2 fallers (Richard, David), 1 sawyer (Saul),<br>2 operators (Carl, Kurt)<br>independent truckers |

| EQUIPMENT ON JOB Brief description of size | No. Units | Working Yes | Working No | MATERIALS DELIVERED |
|---|---|---|---|---|
| Remcon: Cat 928F loader | 1 | x | | |
| water truck | 1 | | x | |
| SRM: skidder | 1 | x | | |
| Dozer with winch | 1 | x | | |
| loader | 1 | x | | OFFICIAL VISITORS TO JOB SITE |

## STATUS OF WORK

| EM O. | Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken. |
|---|---|
| 32 | Continued cutting, skidding, and decking trees marked for removal. Continued trucking from park (14 loads). Several large trees removed today that required use of the hydraulic jack. Also two large snags were felled to the outside of the unit, because they had significant leans in that direction and could not be felled safely against their lean. I looked at them with Carl—the butt log only of the first one will be chained and winced out, which will leave only sections with natural breaks. The second will need two logs skidded out because it didn't break until higher up the tree. We will probably use the skidder to remove the logs rather than the winch to avoid deep soil trenching. Carl said they will dress up the area after skidding to cover up any tracks or disturbance. I will discuss with Tom Warner and Bob Russell and give him a decision tomorrow. |

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

SAFETY COMMENTS

DIFFICULTIES WITH CONTRACTOR OR REPRESENTATIVE

UNFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)*

| SIGNATURE | Title |
|---|---|
| | Ecologist |

FORM QCA-01A

# DAILY LOG OF CONSTRUCTION

M T W Th F Pkg. No. SEKI-200Q 334

PROJECT: Giant Forest Site Restoration and Facilities

| ?RK | CONTRACT NO. | DATE |
|---|---|---|
| ?equoia and Kings Canyon National Parks | 1443CX800010903 | June 14, 2001 |

| ?ONTRACTOR | CONTRACTOR REPRESENTATIVE ON JOB |
|---|---|
| ?emcon | Mark Tedrose |

| WEATHER *(Rain, Snow, Cloudy, Windy, etc.)* | TEMP. High | TEMP. Low | GROUND CONDITIONS *(Dry, Damp, Wet, Frozen)* |
|---|---|---|---|
| Warm, clear | | | Dry |

| NO. CONTRACTOR'S MEN BY JOB CATEGORIES | NO. SUBCONTRACTOR'S MEN BY JOB CATEGORIES |
|---|---|
| | Sierra Resource Management:<br>2 fallers (Richard, David), 1 sawyer (Saul),<br>2 operators (Carl, Kurt)<br>independent truckers |

| EQUIPMENT ON JOB Brief description of size | No. Units | Working Yes | Working No | MATERIALS DELIVERED |
|---|---|---|---|---|
| Remcon: Cat 928F loader | 1 | x | | |
| water truck | 1 | | x | |
| SRM: skidder | 1 | x | | |
| Dozer with winch | 1 | x | | |
| loader | 1 | x | | OFFICIAL VISITORS TO JOB SITE |

## STATUS OF WORK

| ?TEM ?IO. | Brief description of work in progress, questionable performance, unforeseen developments on job etc. Include tests made and samples taken. |
|---|---|
| ?32 | Continued cutting, skidding, and decking trees marked for removal. Continued trucking from park . Began removing trees along the entrance road. Several snags are leaning away from the unit and will have to be dropped to the outside. |

STATUS of GOVERNMENT FURNISHED SERVICES AND/OR SUPPLIES

SAFETY COMMENTS

Fallers not working with sufficient spotters or warning signs (just an orange cone in the road). Bob Russell spoke with the fallers, Carl, and Mark.

DIFFICULTIES WITH CONTRACTOR OR REPRESENTATIVE

UNFORESEEN DEVELOPMENTS ON JOB CONTINUED *(Describe conditions, action taken; person contacted, recommended actions)*

| SIGNATURE | Title |
|---|---|
| | Ecologist |

FORM QCA-01A

334