IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 03-2478C<br>(Judge Braden) |

**DECLARATION OF MICHAEL GILLER IN RESPONSE TO PLAINTIFF'PROPOSED FINDING OF UNCONTROVERTED FACTS**

1. On July, 1, 2002, I was assigned to be project manager for the Sherman Tree parking Project, SEKI 200Q.

2. When I started on the project, NPS's construction representatives on site were Robert Russell and Loren Mangrum. Within a day or two of being on the project, Mr. Russell advised me that he quit. Mr. Mangrum was available to speak me and discuss what had occurred on the project prior to my arrival.

3. On July 10, 2002, I walked the project site with Jack Vance (NPS), Loren Mangrum (Jacobs), Steve Christensen (Remcon), Luke Triplett (Remcon), Bob Reinhardt (Remcon), and Mark Penrose (Remcon). At the site, the parties discussed areas of concern. I took notes during the walk-through regarding the specific field adjustments for which the parties agreed. SA302-305. The discussion focused entirely on field adjustments related to the road embankment; trees, revetment, toe-of-slope, etc. We did not discuss realignment of the access road.

4. On or about July 15, 2002, using my notes of the walk-though, I drafted a letter to Bob Reinhardt, Remcon's QA/QC Supervisor, for Loren Mangrum's signature that memorialized what the parties had discussed during the walk-though.

5. When I started the project, in July, 2002, Remcon was performing a considerable amount of rework on the utility lines. Remcon's water line repeatedly failed pressure tests, Remcon's conduit was damaged in many places by Remcon and Southern California Edison found that the conduit was nonconforming.

6. Since the utility lines were installed under the access road, it was impossible for Remcon to lay aggregate base and asphalt before the utility rework was complete.

7. When I came on the project in July, 2002, Remcon had not completed work at the comfort station, the kiosk, the trail, parking lot or leach field. Remcon could have done work in these areas when I came on the project. When I started working on SEKI 200Q, the parking lot was close to rough-grade.

8. When I came on the project in 2002, some grading work had been done on the trail. While on the project, Remcon alleged that there was a lack of survey control on the trail. They provided no data or proof that the survey control was incorrect. Remcon requested spot elevations and consistently asked for additional information on how to construct the rail. Most contractors obtain all survey information from the plans, however, the Government agreed to help Remcon and provide this information.

9. On July 31, 2002, I learned from Russell Belknap, a construction representative on site, that all vertical and horizontal survey stakes were gone and that Remcon was laying out the road visually. See Mike Giller's notes of July 31, 2002, SA306. We agreed to revisit the issue after we got survey data from Remcon.

10. In August 2002, the Government issued letters to Remcon regarding work that did not meet contract requirements, including work on the electrical conduit and water line appurtenances.

11. September, 2002, when I was on the project, Remcon had to rework slopes that it contaminated by spreading asphalt debris.

12. On September 6, 2002, the Government forwarded survey data to Remcon with the intention of helping Remcon correct the road that it had unilaterally realigned.

13. In November, 2002, I reviewed Remcon's pay request and found that Remcon had overstated quantities placed and I also found that Remcon had requested funds for non-conforming work. I wrote a letter to Remcon advising them that their pay request would reflect work actually performed pursuant to the contract. SA143-44.

14. In 2003, Remcon failed to mobilize to the site for the third construction season.

15. Pursuant to Remcon's numerous claims, I had Psomas perform an as-built survey of Remcon's work. The Government's as-built survey does not support Plaintiff's claim that the original design was deficient.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Lakewood, Colorado, on August 17, 2005.

MICHAEL JOSEPH GILLER