IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 03-2478C<br>(Judge Braden) |

**DECLARATION OF RODNEY KEISCOME IN RESPONSE TO PLAINTIFF'PROPOSED FINDING OF UNCONTROVERTED FACTS**

1. I am the contracting officer for the 200Q SEKI project.

2. The Government issued the solicitation for the 200Q SEKI project on February 27, 2001. The NPS solicitation allowed 792 calendar days for completion of the project. SA152.

3. The Notice to Proceed was issued on June 11, 2001. The contract completion date was set as August 11, 2003. SA68-73

4. On June 14, 2001, I received an invoice from Remcon on pay estimate No. 1 in the amount of $56,320 for bond premium reimbursement. On June 29, 2001, I approved and signed off on the pay request. SA74-79.

5. On July 25, 2001, I received an invoice from Remcon on pay estimate No. 2 for work performed during the period of June 11, 2001 through June 30, 2001 in the amount of $338,403.00. On July 27, 2001, I approved and signed off on the pay request. SA74-79.

6. On August 2, 2001, I issued bilateral Modification No. 1 to compensate Remcon for option items (i.e., asphalt concrete paving, General's Highway stone

headwall, and telephone service to Correll Stub). Mr. Stephen B. Christensen, President of Remcon, signed Bilateral Modification No. 1 on July 24, 2001. The contract was increased by $317,850.00 and no additional contract days were allowed for the additional work. The contract completion date remained August 11, 2003. This was a bilateral modification with a signed statement of release. A3 – 6.

7. On August 2, 2001, I received an invoice from Remcon on pay estimate No. 3 for work performed during the period of July 1, 2001 through July 27, 2001 in the amount of $674,630.60. On August 6, 2001, I approved and signed off on the pay request. SA80-85.

8. On September 11, 2001, I received an invoice from Remcon on pay estimate No. 4 for work performed during the period of July 28, 2001 through August 31, 2001 in the amount of $316,978.75. On September 12, 2001, I approved and signed off on the pay request. SA86-91.

9. On October 9, 2001, I received an invoice from Remcon on pay estimate No. 5 for work performed during the period September 1, 2002 through September 30, 2001 in the amount of $179,943.32. On October 11, 2001, I approved and signed off on the pay request. SA92-97.

10. On November 21, 2001, I received an invoice from Remcon on pay estimate No. 6 for work performed during the period of October 1, 2001 through November 9, 2001 in the amount of $544,054.41. On November 27, 2001, I approved and signed off on the pay request. SA98-103.

11. On December 20, 2001, I received an invoice from Remcon on pay estimate No. 7 for work performed during the period of November 10 through November 30,

2001 in the amount of $101,301.34. On December 21, 2001, I approved and signed off on the pay request. SA104-109. Remcon was paid $115.17 in prompt payment interest because it received payment on this request after the contractually required 14 days. SA151.

12. On January 28, 2002, I issued bilateral Modification No. 2 to compensate Remcon for work related to a sewer force main from the dosing tank and electrical/telephone changes on the access road. Mr. Christensen signed bilateral Modification No. 2 on January 16, 2002. The contract was increased by $10,908.00 and no additional days were granted for the work since these items were not on the critical path. The contract completion date remained August 11, 2003. This was a bilateral modification with a signed statement of release. A7-11.

13. On July 12, 2002, I received an invoice from Remcon on pay estimate No. 8 for work performed during the period of December 1, 2001 through June 30, 2002 in the amount of $156,930.62. On December 21, 2001, I approved and signed off on the pay request. SA110-115. Remcon was paid $22.89 in prompt payment interest because it received payment on this request after the contractually required 14 days. SA151.

14. On August 12, 2002, I received an invoice from Remcon on pay estimate No. 9 for work performed during the period of July 1, 2002 through July 31, 2002 in the amount of $301,164.64. On August 20, 2002, I approved and signed off on the pay request. SA116-121. Remcon was paid $307.44 in prompt payment interest because it received payment on this request after the contractually required 14 days. SA151.

15. On August 21, 2002, I issued bilateral Modification No. 3 to compensate Remcon for work related to hauling miscellaneous material from the park. Mr. Christensen signed bilateral Modification No. 3 on August 20, 2002. The contract was increased by $345,209.92 and thirteen additional working days were allowed for the work related to this modification. The contract completion date was changed from August 11, 2003 to August 24, 2003. This was a bilateral modification with a signed statement of release. A3 – 6.

16. By August, 2002, the NPS had met with Remcon on numerous occasions. These meetings included, but were not limited to, meetings on October 23, 2001, December 11, 2001; during the week of April 8, 2002; and a partnering meeting May 14 – 15, 2002. In late August, 2002, the parties met again in a concerted effort to work out all outstanding issues.

17. On September 12, 2002, I received an invoice from Remcon on pay estimate No. 10 for work performed during the period of August 1, 2002 through August 30, 2002 in the amount of $381,371.83. SA122-128. On September 12, 2002, I approved and signed off on the pay request. Remcon was paid $55.62 in prompt payment interest because it received payment on this request after the contractually required 14 days. SA151

18. On September 12, 2002, I issued bilateral modification No. 4 to compensate Remcon for hauling excess excavation, restaking the access road centerline, sorting and removal of buried debris in the upper parking lot and raising the finish grade in the upper parking lot. Mr. Christensen signed bilateral Modification No. 4 on September 11, 2002. The contract was increased by $95,120.36 and no additional

time extension was granted for the work because it was not shown to be on the critical path. The contract completion date remained August 24, 2003. This was a bilateral modification with a signed statement of release. A17-21; SA 154-160 (with justification).

19. The amount provided to Remcon under Modification No. 4 for "restaking the access road centerline," was to compensate Remcon for Guilianai & Kull's surveying work that occurred on June 16, 2001, when it aligned the access road to the Government's revised alignment. Id.

20. The amount given to Remcon under Modification No. 4 for "haul excess excavation," and for "raising finish grade of upper parking lot" was to compensate Remcon for the excess excavation that it encountered on site. Id.

21. On September 19, 2002, the Government sent Modification No. 5 to Remcon for its signature. Remcon refused to sign the modification.

22. On October 9, 2002, I received an invoice from Remcon on pay estimate No. 11 for work performed during the period of August 31, 2002 through September 30, 2002 in the amount of $609,481.73. On October 10, 2002, I approved and signed off on the pay request. SA129-135.

23. On October 16, 2002, Modification No. 5 was sent to Remcon with further clarifications.

24. October 20, 2002, Remcon sent a letter to the Government related to bilateral Modification No. 5. It advised the Government that it reserved its rights to seek "additional monetary compensation" related to Modification No. 5. The letter did not

advise the Government that it otherwise considered the Government to be in "material breach" of the contract.

25. On November 20, 2002, I issued bilateral Modification No. 5 to compensate Remcon for adjusting the Sherman Tree trail and to deduct some riprap and stone trench work associated with the trail. The contract was increased by $26,880.00 and four additional working days were granted due to the impact of the work on asphalt placement. The contract completion date was changed from August 24, 2003 to August 28, 2003. This was a bilateral modification with a signed statement of release. A22-25.

26. On November 20, 2002, I received an invoice from Remcon on pay estimate No. 12 for work performed during the period of September 31, 2002 through October 31, 2002 in the amount of $985,668.32. The invoice had been received by the Project Manager, Mike Giller, on November 4, 2002. Mr. Giller sent a letter to Remcon entitled, "Pay Estimate Quantity Corrections," noting that Remcon was over billing on some quantities, and charging for work that was incomplete or non-conforming. After the appropriate corrections were made, I approved and signed off for the corrected amount of $578,829.23 on November 20, 2002. SA136-144.

27. On January 17, 2003, I received an invoice from Remcon on pay estimate No. 13 for work progress performed during the period of November 1, 2002 through December 31, 2002, in the amount of $119,203.44. On January 17, 2003, I approved and signed off on the pay request. SA145-150.

28. On February 18, 2003, I issued unilateral modification No. 6 to compensate Remcon for differing site conditions, rock blasting and excavation. The contract was

increased by $84,170.00 and no additional working days were granted for the work. The contract completion date remained August 28, 2003. A26-29.

29. On March 3, 2003, I submitted Modification No. 7 to Remcon for its signature. This modification would have deleted work in the Lower Sherman area. The parties had discussed deleting the Lower Sherman work in a meeting held on August 22, 2002. At the time, the parties were in agreement regarding deletion of the work. SA161-167.

30. Remcon sent a letter on March 12, 2003 claiming that if the Government issued Modification No. 7, it would consider the Government in breach. SA356-362.

31. On April 1, 2003, I advised Remcon that, pursuant to Remcon's request, it would not issue Modification No. 7. SA365.

32. On July 15, 2003, I received Remcon's certified claim dated June 28, 2003. SA153.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Lakewood, Colorado, on August 16, 2005.

Rodney K. Keiscome

RODNEY K. KEISCOME