# In the United States Court of Federal Claims

No. 03-2478C
Filed: September 30, 2005
**TO BE PUBLISHED**

| | |
|---|---|
| REMEDIATION CONSTRUCTORS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | Breach of Contract; Default Termination; Equitable Adjustment; Jurisdiction; Partial Summary Judgment; RCFC 56(c); RCFC 15(d); Supplemental Pleadings. |

**Michael Schoenfeld**, Murphy Austin Adams Schoenfeld LLP, Sacramento, California, counsel for Plaintiff.

**Richard Paul Schroeder**, United States Department of Justice, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PARTIAL SUMMARY JUDGMENT AND GRANTING MOTION TO FILE FIRST SUPPLEMENTAL COMPLAINT

**BRADEN, *Judge***

## RELEVANT FACTS[1]

On May 15, 2001, the United States ("the Government") entered into Contract No. 1443C80000100903 ("the Contract") with Remediation Constructors, Inc. ("Remcon") to perform certain construction work in Sequoia National Park in California. *See* Compl. ¶ 4; Pl. Findings Resp. ¶ 1. The Contract required: demolition of an existing comfort station, road, and parking area; the

[1] The facts recited herein were derived from: the October 21, 2003 Complaint ("Compl."); the United States ("Government")'s March 8, 2004 Answer ("Answer"); Government's June 24, 2005 Motion for Partial Summary Judgment ("Gov't Mot. S.J.") and Proposed Findings of Uncontroverted Fact ("Gov't PF"); Plaintiff's July 22, 2005 Response to Government's Motion ("Pl. Resp."), Plaintiff's July 22, 2005 Declaration of Stephen B. Christensen ("Christensen Decl."), Plaintiff's Response to Government's Proposed Findings of Uncontroverted Fact ("Pl. Findings Resp.") and Proposed Findings of Uncontroverted Fact ("Pl. PF"); and Government's September 2, 2005 Reply to Plaintiff's Opposition ("Gov't Reply).

construction of a new comfort station, access road, parking lot, pedestrian trail, and leach field; and the re-alignment of the General's Highway to incorporate roadside parking and site restoration. *See* Gov't Mot. S.J. at 2-3; Pl. PF ¶¶ 3-5. The Contract required Remcon to complete the project within 792 calendar days[2] at a price of $7,121,636.00. *See* Pl. Findings Resp. ¶¶ 1, 2.

Remcon asserts that performance was adversely affected because of omission, errors, and inconsistencies in the project design, coupled with mistakes and delays made by the National Park Service.[3] *See* Compl. ¶ 7; Pl. PF ¶¶ 2, 21, 23, 24, 28-33, 41-53, 56-61, 70-75, 77, 78,82-84, 86, 87, 93, 118, 134. Remcon also contends that the Government's actions caused multiple breaches of the Contract, thereby excusing Remcon from completing performance. *See* Pl. Findings Resp. ¶ 16. Remcon further asserts that these events also increased the cost of the project and that the Government failed to timely and fully pay Remcon for the work performed during the 2001 and 2002 construction seasons.[4] *Id.* ¶ 19. The Government denies responsibility for Remcon's failure to remain on schedule and within budget. *See* Answer ¶ 7.

On July 24, 2003, the Government issued a cure notice to Remcon because of the limited progress in completing the job and "fail[ure] to mobilize to the site for the 2003 construction season." Pl. Findings Resp. ¶¶ 17-21. The Government contends that neither Remcon, nor anyone on its behalf, responded to the July 24, 2003 cure notice; and, therefore, the Government terminated the Contract for default on August 13, 2003. *Id.* ¶¶ 25, 26. Remcon challenges the validity of the cure notice and justification for issuance. *Id.* ¶ 18. Remcon also disputes the Government's assertion that it never received a response to the cure notice, because Remcon allegedly provided multiple letters and a certified claim responding to the substance of the cure notice.[5] *Id.* ¶ 25.

## PROCEDURAL BACKGROUND

On October 21, 2003, Remcon filed a Complaint in the United States Court of Federal Claims alleging that the Government's failure to agree to an equitable adjustment of the contract

---

[2] It is undisputed that the construction season in Sequoia National Park runs from approximately early-June to October. *See* Gov't Mot. S.J. at 4; Pl. Resp. at 6.

[3] On June 28, 2003, Remcon submitted to the Contracting Officer a certified omnibus claim for $3,091,799.60 equitable adjustment of the Contract. *See* Pl. Findings Resp. ¶ 46; *see also* Christensen Decl. ¶ 56 (citing Ex. 28).

[4] Although the parties disagree about the underlying facts and their legal consequence, they do not dispute that Remcon performed no work at the construction site during the 2003 season. *See* Pl. Findings Resp. ¶ 16.

[5] In a July 31, 2003 letter, Remcon requested an extension to August 11, 2003 to respond to the agency's cure notice that the Government granted. *See* Pl. Findings Resp. ¶¶ 22-23. On August 11, 2003, Remcon advised the Government that a response would be forthcoming. *Id.* ¶ 24.

price and to remit other monies due breached the Contract. *See* Compl. ¶ 13. In addition, the Complaint alleges that the Government wrongfully terminated Remcon for default. *See* Compl. ¶ 14. The Government filed an Answer on March 8, 2004.

On March 18, 2005, Remcon filed a Motion to File and Serve First Supplemental Complaint regarding events that transpired after the Government terminated the Contract for default. The Government filed a response in opposition to this motion on April 29, 2005.

On June 24, 2005, the Government filed a Motion for Partial Summary Judgment regarding the Government's default termination. Remcon filed an opposition on July 22, 2005. The Government filed a reply on September 2, 2005.[6]

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976)). Therefore, to satisfy jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth* v. *United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

---

[6] At the request of the parties, the court has revised the pretrial schedule three times. On May 25, 2004, the court entered a scheduling order, setting a February 28, 2005 deadline for the filing of dispositive motions and a trial date of June 13-17, 2005. In response to Remcon's November 29, 2004 Consent Motion for Entry of a Revised Scheduling Order, the court convened a status conference with the parties on December 8, 2004 and entered a revised scheduling order on December 9, 2004, changing the dispositive motion deadline to May 27, 2005 and the trial date to October 24 - November 4, 2005. Remcon filed a Motion for Entry of a Revised Scheduling Order on March 30, 2005. The Court granted Remcon's Motion on April 5, 2005, extending the period for discovery. On April 28, 2005, the Government filed an unopposed Motion for Entry of a Revised Scheduling Order. The court granted the Government's Motion and entered a revised scheduling order on May 2, 2005, changing the dispositive motion deadline to July 15, 2005.

In this case, the United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, ("Contract Disputes Act") including a dispute concerning . . . rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2); *see Alliant Techsystems, Inc.* v. *United States*, 178 F.3d 1260, 1270 (Fed. Cir. 1999) (holding that "the Tucker Act grants the United States Court of Federal Claims jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms.").

Section 6 of the Contract Disputes Act provides that claims[7] relating to a contract by a contractor or the Government shall be submitted to the contracting officer for a decision and that the contracting officer's decision shall be in writing and furnished to the contractor, stating the reasons for the decision and informing the contractor of its rights thereunder. *See* 41 U.S.C. § 605(a); *see also Alliant Techsystems, Inc.*, 178 F.3d at 1267 (discussing the requirements set forth in § 605(a)). The Contract Disputes Act also provides that the "contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b).

The United States Court of Appeals for the Federal Circuit has enforced "the strict limits of the [Contract Disputes Act] as 'jurisdictional prerequisites to any appeal.'" *England* v. *The Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (citing *Sharman Co.* v. *United States*, 2 F.3d 1564, 1569 n.6 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc.* v. *Dalton*, 60 F.3d 1572 (Fed. Cir. 1995)). Accordingly, "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *England*, 353 F.3d at 1379; *see also James M. Ellett Constr. Co.* v. *United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996) ("Thus for the [United States Court of Federal Claims] to have jurisdiction under the [Contract Disputes Act], there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.").

---

[7]Although the Contract Disputes Act does not define "claim," that term has been defined in the Federal Acquisition Regulation as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. Therefore, for claims exceeding $100,000, the contractor must certify that: the claim is made in good faith; the supporting data is accurate and complete; and the amount requested accurately reflects the amount for which the contractor believes the Government is liable. *See* 41 U.S.C. § 605(c)(1). Government argues in this case that no certification is required. *See Placeway Constr. Corp.* v. *United States*, 920 F.2d 903, 906-07 (Fed. Cir. 1990) (holding that Government claim seeking incidental and consequential damages for plaintiff's alleged breach of contract did not require certification).

The Complaint states that the court has jurisdiction in this case, pursuant to 28 U.S.C. § 1491 and 42 U.S.C. § 609. *See* Compl. ¶ 3. The court, however, has identified inconsistencies in the Government's pleadings that raise jurisdictional issues. In the Answer, the Government "avers that the contracting officer's July 15, 2003 letter to Remcon did not contain a final decision upon Remcon's omnibus claim." Answer ¶ 11. The Government, however, references a final decision in the next paragraph. *See* Answer ¶ 12 (Admits the allegation contained in paragraph 12 of the complaint, that, "[w]ith respect to those portions of Remcon's certified omnibus claim that were not addressed by the Contracting Officer's July 15, 2003 final decision[.]"). In addition, in the parties' April 28, 2004 Joint Preliminary Status Report, the Government represented that it "is currently unaware of any reason why the Court lacks jurisdiction to entertain this action." *See* Joint Prelim. Status Rep. at 1. If the Government contends that the relevant contracting officer did not issue a final decision regarding Remcon's claim, a Motion to Dismiss should be filed within 10 days. If not, paragraph 11 of the Answer should be amended.

**B. Standing.**

Remcon is a party to the Contract and, therefore, has standing to bring an action in the United States Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491 and the Contract Disputes Act, 41 U.S.C. § 609(a).

**C. The Court's Resolution Of The Government's Motion For Partial Summary Judgment**.

The Complaint sets forth three factual bases for breach of the Contract. The Government requests summary judgment on only one of these bases, *i.e.*, whether termination of the Contract for default was justified.

The Government makes three arguments to justify the default termination. *See* Gov't Mot. S.J. at 11. First, the Government contends that Remcon repudiated the Contract by failing to respond to a valid cure notice. *See* Gov't Mot. S.J. at 12-19. Second, the Government argues that Remcon demonstrated a lack of diligence that left the Government without adequate assurance of timely completion. *See* Gov't Mot. S.J. at 18-25. In addition, the Government argues that Remcon was in breach for failing to continue diligent performance, as mandated by the Contract's dispute clause. *See* Gov't Mot. S.J. at 25-30.

Summary judgment is appropriate "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *American Pelagic Fishing Co.* v. *United States*, 379 F.3d 1363, 1370-71 (Fed. Cir. 2004); *see also* RCFC 56(c). The trial court, however, may exercise its discretion and deny a motion for summary judgment where "there is reason to believe that the better course would be to proceed to a full trial." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Kennedy* v. *Silas Mason Co.*, 334 U.S. 249 (1948)); *see also Confederated Tribes of the Colville Reservation* v. *United States*, 964 F.2d 1102, 1109 (Fed. Cir. 1992) ("[C]ourts have discretion to deny summary judgment on issues in which it might otherwise be appropriate").

The underlying facts regarding the default termination, however, are in dispute.[8] For this reason, the jurisdictional issue previously discussed, the limited scope of the Government's Motion for Partial Summary Judgment, and the fact that a trial is scheduled to commence on October 24, 2005, a piecemeal approach to resolving this action is not an efficient use of judicial resources. *See*, *e.g., Powell* v. *Radkins*, 506 F.2d 763, 765 (5th Cir. 1995) (citation omitted) ("A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation."); *Taylor* v. *Rederi A/S Volo*, 374 F.2d 545, 549 (3rd Cir. 1967) (citations omitted) ("The trial court may exercise its discretion in denying summary judgment where a part of an action may be ripe for summary judgment but it is intertwined with another claim that must be tried."); *Toyoshima Corp. of California* v. *Gen. Footwear, Inc.*, 88 F.R.D. 559, 561 (S.D.N.Y. 1980) (exercising discretion to deny a motion for partial summary judgment "will not relieve the parties from appearing at and participating in the trial").

## D. The Court's Resolution Of Plaintiff's Motion To File A First Supplemental Complaint.

Remcon seeks to file a supplemental complaint concerning monetary claims against the Government arising from this action that have been incurred after the Complaint was filed. Apparently, the Government entered into an agreement with Remcon's performance and payment bond surety to complete the project. As a consequence, Remcon claims that it is responsible for reimbursing the surety for the excess completion costs that it seeks to recover from the Government.

Rule 15(d) of the United States Court of Federal Claims, which is identical to its counterpart in the Federal Rules of Civil Procedure, provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." RCFC 15(d). The United States Court of Appeals for the Federal Circuit has held that:

> Rule 15(d) unequivocally allows supplementing a complaint with a count based on later events. Where the supplemental pleading with respect to such later events relates to the same cause of action originally pleaded, the Supreme court held . . . that it would be an abuse of discretion to deny the amendment. There the Court specifically stated that [Rule 15(d)] 'plainly permits supplemental amendments to cover events happening after suit.'

*Intrepid* v. *Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990) (quoting *Griffin* v. *School Board,* 377 U.S. 218, 227 (1964)); *see also United Partition Systems, Inc.* v. *United States*, 59 Fed. Cl. 627, 644 (Fed.

---

[8] For example, Remcon asserts that "the root causes of [Remcon]'s alleged failure to adequately respond to the cure notice or to make progress on the Project" arise from the Government's failure to agree to an equitable adjustment and remit other monies to Remcon. *See* Pl. Resp. at 1.

Cl. 2004) (quoting the Advisory Committee's note to 1963 Amendment to illustrate that Fed. R. Civ. P. 15(d) provides the trial court with broad discretion to allow a supplemental pleading).

The court has determined that the transaction and events concerning excess completion costs relate to the same cause of action pled in this case. Therefore, granting Plaintiff's Motion to File a First Supplemental Complaint will promote judicial economy and will not prejudice the Government.

## CONCLUSION

For these reasons, the Government's Motion for Partial Summary Judgment is **DENIED**. Plaintiff's Motion to File First Supplemental Complaint is **GRANTED**. Remcon is instructed to file a supplemental complaint within 7 days. The Government is granted 10 days within which to file a Motion to Dismiss or amend the Answer as directed herein.

**IT IS SO ORDERED**.

**/s Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**