IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REMEDIATION CONSTRUCTORS, INC., | ) | DOCKET NO. 03-2478C |
| Plaintiff, | ) | **DECLARATION OF CHRIS HICKEY IN LIEU OF LIVE DIRECT TESTIMONY** |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | (Judge Susan G. Braden) |
| Defendant. | ) | Trial Date: October 24, 2005 |

I, CHRIS HICKEY, declare

1. I make this declaration as my direct testimony pursuant to the Order of the Court. I have personal knowledge of all matters stated herein and, if called upon to do so, I could and would competently testify thereto.

2. I have over 19 years of construction related experience on heavy civil engineering projects. That experience includes contract management of multiple projects, individual project management, bid preparation, project scheduling, project costing, and contract negotiations and proposals.

3. I graduated from California State University at Fresno in 1988 with a BS in Civil Engineering.

4. I began work with Agee Construction Company ("Agee") in 1991 and I currently hold the position of Project Manager.

5. Prior to my employment with Agee I worked for El Camino Construction from 1986 – 1991.

6. Agee is the completion contractor on the General Sherman Tree Parking Project ("Project") pursuant to a contract with Great American Insurance Company ("GAIC").

7. Approximately 90% of Agee's work in the construction industry has, historically, been federal, state and local public works type projects.

8. Agee has performed other projects in the National Parks and the U.S. National Forest. The most notable of these projects include the General's Highway Project in the Sequoia National Park, Phases 1 and 3.

9. Agee was contacted by Sage Consulting ("Sage"), who was acting on behalf of GAIC, regarding Agee's interest in submitting a proposal for completing the Upper Sherman portion of the Project. On or about September 30, 2003 I conducted a site visit of the Project with representatives of the NPS and Sage to better understand the nature and scope of the work to be completed. The Upper Sherman portion of the Project was started, but not finished, by Remcon.

10. After review of the Project plans and specifications, a job walk, review of a list of non-conforming work prepared by the NPS and NPS prepared as-built surveys on the Upper Sherman Access Road, Upper Sherman Parking Area, and the Sherman Tree Trail, Agee provided a proposal to GAIC for completion of the work. Agee's proposal was for completion of the Upper Sherman portion of the project under a time and materials agreement.

11. After extensive negotiations between Agee and Sage, Agee entered into an Interim Completion Agreement with GAIC on February 3, 2004 to perform completion of the Upper Sherman work. Attached hereto as Exhibit A and by this reference made a part hereof is a true and correct copy of the Interim Completion Agreement.

12. In or about December 2003, I was advised by Sage that it was soliciting bids for completion of the Lower Sherman portion of the Project. A written Solicitation

for Offers was received from Sage. Attached hereto as Exhibit B is a true and correct copy of the solicitation which Agee received and by this reference is made a part hereof.

13. On or about December 17, 2003 Agee attended a site visit with representatives of Sage, the NPS and other potential bidders to understand the nature and scope of the Lower Sherman work. After reviewing pertinent information and documents, Agee provided a proposal to complete the Lower Sherman work under a unit price bid. Attached hereto as Exhibit C and by this reference made a part hereof is a true and correct copy of Agee's Section IV Proposal Form for the Lower Sherman unit price bid. In or about May 2004, Agee and GAIC entered into Amendment No. 1 to the Interim Completion Agreement to provide for completion of the Lower Sherman work. Amendment No. 1 to the Interim Completion Agreement is included as part of the Interim Completion Agreement, Exhibit A, and made a part hereof by this reference.

14. Agee began major construction work at the Project site in May 2004.

15. As of this date, Agee has completed the Upper Sherman Access Road, Upper Sherman Parking Area, and the Sherman Tree Trail, excluding some minor punch list work. Currently, this portion of the Project has been opened to the public and the NPS has taken beneficial occupancy.

16. Agee is almost complete with the Lower Sherman work, and currently expects to be complete by the first week of November 2005, pending no further delays and weather permitting.

**Non-Conforming Work**

17. Prior to beginning work on the Project, Agee was provided with a three page report entitled "Schedule of Non-Conforming Work" by the NPS. This report provided the location, description and station reference of the work in place by Remcon that the NPS alleged to be non-conforming and/or not in compliance with the contract documents. Attached hereto and made a part hereof as Exhibit D is a true and correct copy of the NPS' Schedule of Non-Conforming Work.

18. It was represented to me by Mike Giller and Russell Belknap that the work identified on Exhibit D did not conform and/or was not in compliance with the contract documents and that remediation was necessary prior to contract acceptance.

19. To the best of my knowledge the NPS has not made payment to GAIC, nor issued any time extensions to GAIC, for any of the corrective work performed by Agee.

20. Agee has billed GAIC approximately $965,376.06 for correcting and/or remediating the alleged non-conforming work. Attached hereto as Exhibit E and by this reference made a part hereof is a true and correct copy of a spreadsheet Steve Christensen created that breaks down the amount billed by Agee for completing the alleged non-conforming work.

21. I have been informed by Steve Christensen of Remcon that Remcon contends that many of the items on the Non-Conforming Work list, Exhibit D, were not the result of defective work by Remcon, but rather were a result of changes directed by the NPS, site conditions, incomplete contract work, and NPS actions and/or inaction. This includes work that Mr. Christensen contends the NPS directed Remcon to perform, had issued written direction, knew they had directed this change, and is now demanding further work by Agee to return it back to the original design. Attached hereto as Exhibit E is a spreadsheet, prepared by Mr. Christensen, that estimates the dispersal of costs incurred by Agee for correcting non-conforming work, by non-conforming work item.

22. As to the non-conforming work issues, my observations in performing the completion work are as follows:

A. For the shuttle bus parking area, Agee incurred costs to separate out contaminated material, including trash, concrete and asphalt. Agee was provided with an as-built survey by the NPS, prepared by Psomas Engineering, which showed that 7,000 cubic yards of material in the shuttle bus parking area had to be removed to bring

the shuttle bus area to plan grades. Agee was required to screen the material to eliminate contamination.

B. Steve Christensen has informed me that Remcon was directed by the NPS to stockpile excess excavation material from the project site into the shuttle bus parking area. If Mr. Christensen's statements to me are true, the NPS failed to disclose to Agee that the NPS had directed Remcon to stockpile excess soil in this location.

C. The NPS directed Agee to haul the screened soil to a location within the Park known as the Doris Site. Agee hauled a total of 1521 cubic yards for which payment was made under Bid Item 27 at a contract unit price of $15.00 for a total contract increase of $22,815.00. To date the NPS has not issued a Contract Modification for this work.

D. The remaining material (asphalt, concrete, debris), was hauled off-site. To date Agee has hauled a total of 3694.78 tons of material from the Park. The NPS has not made payment for the entire tonnage. The NPS has, to date, paid for 921.8 tons at $93.86 per ton.

E. Agee was required to re-grade the trail. Some of the re-grading work performed by Agee could be the result of storm/weather damage, which occurred during the winters of 2002-2003 and 2003-2004.

23. I believe that GAIC and Agee are entitled to the issuance of modifications for work performed to correct and/or remedy items on the NPS non-conforming work list.

**Defective Design**

24. During my work on the Project, I have encountered errors, inconsistencies and ambiguities in the contract plans and specifications. As a result of these issues, Agee was required to ask for clarification in order to construct the Project. At times the NPS has delayed in responding to Agee's requests for clarification. The NPS delays have impacted Agee's ability to complete the project in the most timely manner.

25. The NPS rejected work performed by Remcon on the comfort station slab, as well as epoxy coating by Agee's subcontractor on the slab, citing non-compliance with Americans with Disabilities Act ("ADA") standards. The ADA standards cited by the NPS are not specified on the Project plans and specifications. Agee has requested a modification. The NPS has not responded.

26. Agee has not been provided with a re-design for the project or amended plans and specifications as to the ADA standards. Rather, Agee was provided with criteria for the correction and direction to make that correction.

27. The NPS did not provide Agee with detail on any agreed changes to the Upper Sherman access road, parking area and trail prior to Agee taking over the project for Great American Insurance Company. Steve Christensen has informed me that numerous changes exist.

28. Agee encountered design issues with regard to the Sherman Tree Trail. Once Agee evaluated the work, and staked it, we found conflicts with trees, rocks, and other issues. We brought these issues to the attention of the NPS.

29. Agee has experienced, and continues to experience, impacts in the construction of the Generals Highway in the Lower Sherman portion of the project as a result of issues with the plans and specifications, including conflicts and deficiencies. As an example, the retaining wall grades do not match the highway profile grades. This required field correction to make the highway design work. This impacted the paving of the highway.

30. In Agee's work on the Project it has encountered rock excavation that constitutes a differing site condition (DSC) per the NPS' Project Specifications and Geotechnical Report. At this time Agee has requested additional time and compensation for this DSC. The NPS has not responded.

31. On September 12, 2005, I received a letter from the NPS rejecting Agee's relocation of the Sequoia Slab. On September 15, 2005 I issued a letter to the NPS

disagreeing with their rejection of the work and detailing why Agee took this position. A true and correct copy of my September 15, 2005 letter is attached hereto as Exhibits G, and by this reference made a part hereof.

32. On September 16, 2005 I authored a letter addressing schedule impacts as they related to Modification No. 8 for pressure grouting. This letter put the NPS on notice of additional impacts as they related to the pressure grouting change. This included cost increases for aggregate base, increased costs for fuel, increased costs for asphalt, increased costs for trucking, labor cost increases, and delays to the overall project. A true and correct copy of my September 16, 2005 letter is attached hereto as Exhibit H and by this reference made a part hereof.

**NPS Administration**

33. In my experience on this Project, the NPS has failed to respond to issues requiring direction by the NPS in a timely manner, and in some instances, has provided incomplete responses. This conduct impacted Agee's ability to complete the project in the most timely manner and it has caused additional time and extra costs to be incurred.

34. During Agee's work on this Project, the NPS has used at least five different on-site construction managers.

35. Agee is entitled to a contract modification for pressure grouting on the Generals Highway. The NPS delayed in issuing the modification for over one year, and the modification is still pending.

36. The NPS has been late in issuing progress payments to GAIC, which in turn has delayed payment to Agee.

37. The NPS has not issued any time extensions to Agee even though time extensions are warranted and appropriate.

I declare under penalty of perjury under the laws of the State of California and the United States of American that the foregoing it true and accurate.

Executed on October 13, 2005 in Clovis, California.

CHRIS HICKEY